UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Dr. A, Nurse A., Dr. C., Nurse D., Dr. F., Dr. G., Therapist I., Dr. J., Nurse J., Dr. M., Nurse N., Dr. O., Dr. P., Technologist P., Dr. S., Nurse S., and Physician Liaison X.,

|  |  |
|---|---|
| *Plaintiffs*, | 1:21-CV-1009 |
| -against- | (DNH)(ML) |

KATHY HOCHUL, Governor of the State of New York, in his official capacity, DR. HOWARD A. ZUCKER, Commissioner of the New York State Department of Health, in his official capacity, and LETITIA JAMES, Attorney General of the State of New York, in her official capacity,

*Defendants*.

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

Ryan W. Hickey
Assistant Attorney General
Bar Roll No. 519090
Telephone:  (518) 776-2616
Fax:  (518) 915-7738 (Not for service of papers)

Date: September 22, 2021

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

PROCEDURAL HISTORY AND THE INSTANT MOTION ..................................... 7

STANDARD OF REVIEW ....................................................................................... 9

ARGUMENT ........................................................................................................... 10

POINT I ................................................................................................................... 10

       PLAINTIFFS FAIL TO ESTABLISH THAT THEY ARE LIKELY TO
       SUCCEED ON THE MERITS OF THEIR CLAIMS ...................................... 10

POINT II .................................................................................................................. 22

       PLAINTIFFS FAIL TO ESTABLISH THAT THEY WILL SUFFER
       IRREPARABLE HARM .................................................................................. 22

POINT III ................................................................................................................ 24

       THE EQUITIES BALANCE IN FAVOR OF THE STATE'S EFFORTS TO
       PROTECT THE PUBLIC HEALTH DURING THE EXISTING PANDEMIC,
       AND ISSUANCE OF A PRELIMINARY INJUNCTION IS NOT IN THE
       PUBLIC INTEREST ...................................................................................... 24

POINT IV ................................................................................................................ 25

       PLAINTIFFS SHOULD NOT BE GRANTED AN INJUNCTION PENDING
       APPEAL ......................................................................................................... 25

CONCLUSION ........................................................................................................ 27

Defendants Kathy Hochul, in her official capacity as Governor of the State of New York, Dr. Howard A. Zucker, in his official capacity as Commissioner of the New York State Department of Health, and Letitia James, in her official capacity as Attorney General of the State of New York (collectively, "Defendants"), respectfully submit this memorandum of law, together with the accompanying Declaration of Dr. Elizabeth Rausch-Phung and its attached exhibits, in opposition to Plaintiffs' motion for a preliminary injunction.

## PRELIMINARY STATEMENT

The State of New York, along with the rest of the world, continues to confront the greatest public health crisis in living memory. On August 26, 2021, the Public Health and Health Planning Council (PHHPC) of the New York State Department of Health ("DOH" or "Department") promulgated amendments to the Department's regulations, codified at N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021) ("Section 2.61") stating that covered entities including general hospitals, nursing homes, diagnostic and treatment centers, home health agencies, hospices, and adult care facilities must require their personnel to be fully vaccinated against COVID-19. [1] Under Section 2.61, current personnel at hospitals and nursing homes must receive the first dose of the COVID-19 vaccine by September 27, 2021, while current personnel at other covered entities must receive the first dose by October 7, 2021. *See* 10 N.Y.C.R.R. § 2.61(c). Section 2.61 permits covered entities to provide medical exemptions to this requirement, but not religious exemptions.

Plaintiffs are seventeen medical professions employed in the State of New York who object to receiving the COVID-19 vaccine on religious grounds.[2] Plaintiffs bring this action pursuant to

---

[1] As defined by 10 N.Y.C.R.R. § 2.61(a)(1), "personnel" are "all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."

[2] Plaintiffs requested permission to proceed under pseudonyms in this action. ECF No. 5-1 at p. 21. By letter dated September 17, 2021 [ECF No. 13], Defendants advised the Court they do not object to this request.

42 U.S.C. § 1983 alleging that the Section 2.61 violates their rights under federal and state law because it does not permit their employers to provide a religious exemption to the vaccine requirement.  Plaintiffs allege that the lack of religious exemption violates the Supremacy Clause of the United States Constitution, the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment.  Compl. ¶¶ 192 – 237, ECF No. 1.  Plaintiffs seek a preliminary and permanent injunction prohibiting Defendants from enforcing any requirement that covered entities deny (or otherwise interfere with) religious exemptions to the COVID-19 vaccine.  *Id.*, "Prayer for Relief."  Plaintiffs also seek a declaration that the Section 2.61 is unconstitutional and unlawful.  *Id.*

Plaintiffs fail to satisfy their heavy burden to establish a clear or substantial likelihood of success on the merits.  *First*, Plaintiffs cannot show a likelihood of success on their claims under the First and Fourteenth Amendments.  The State is under no constitutional obligation to include a religious exemption in Section 2.61.  For over a century, courts have upheld similar mandatory vaccination laws under the Free Exercise Clause and Equal Protection Clause.

*Second*, it is well-established that the Supremacy Clause does not provide a private right of action.  Moreover, Title VII of the Civil Rights Act of 1964 does not preempt the State's authority to require vaccinations of health care workers under Section 2.61.

*Third*, Plaintiffs have not shown that they will suffer irreparable injury absent the requested preliminary injunction.  Although Plaintiffs allege that they may face loss of employment or hospital admitting privileges if they do not receive the vaccine, these alleged consequences do not, as a matter of law, constitute "irreparable harm" justifying the extraordinary remedy of a preliminary injunction.  Even if Plaintiffs could establish a violation of their rights, which they

cannot, their alleged harm, potential loss of employment, is wholly remediable by money damages and thus does not support preliminary injunctive relief.

*Fourth*, Plaintiffs do not establish that the balance of the equities weighs in their favor. The requested injunction would gravely undermine the State's ongoing efforts to protect public health by controlling the COVID-19 pandemic.

*Fifth*, Plaintiffs fail to show that the requested injunction is in the public interest.  The State's efforts to promote widespread vaccination, especially of healthcare workers, in is the public interest and Plaintiffs cannot reasonably argue otherwise.

*Finally*, Plaintiffs' request for an injunction pending appeal should be denied.  The requirements for obtaining an injunction pending appeal mirror those of a preliminary injunction. Because Plaintiffs cannot establish that they are entitled to a preliminary injunction, their request for an injunction pending appeal should also be denied.

Accordingly, Plaintiffs' motion for a preliminary injunction should be denied, and no injunction pending an appeal from such denial should be issued.

## STATEMENT OF FACTS

### A.  The Continued Threat of COVID-19 and the Vital Importance of Vaccinations

The COVID-19 pandemic is not over.  Despite the significant progress New York has made, COVID-19 remains a present and grave threat to the health of New Yorkers, particularly with the emergence of the Delta variant.  Declaration of Elizabeth Rausch-Phung, M.D., M.P.H ("Rausch-Phung Decl.") ¶ 8.  Since early July 2021, the number of COVID cases has risen tenfold, with the Delta variant accounting for the vast majority of the new cases in New York.  *Id.* at ¶ 7. According to Centers for Disease Control and Prevention ("CDC"), the Delta variant is twice as

transmissible as the original SARS-CoV-2 strain and may cause more severe illness than previous variants in unvaccinated people.  *Id.* at ¶ 12.

Vaccination is a critical tool in the fight against COVID-19.  There is a safe, effective, and widely available COVID-19 vaccine, which has received full approval from the United States Food and Drug Administration for persons aged sixteen and older.  *Id.* at ¶ 33.[3]  To date, more than 380 million doses of COVID-19 vaccine have been administered in the Unites States.  *Id.* at ¶ 65. Despite this large number of vaccinations, serious side effects have been extremely rare.  *Id.*

Fully vaccinated individuals are less likely to spread infectious diseases to other people, including people who cannot get vaccinated because they are too young, or they have a weakened immune system.  *Id.* at ¶ 22.  Healthcare professionals have higher rates of infection with COVID, and, once infected, have higher incidence of admission to the hospital.  *Id.* at ¶¶ 53-54.  Further, healthcare professions care for those who are already particularly vulnerable, including the elderly, immunocompromised, or those who cannot be vaccinated due to medical contraindications.  *Id*. at ¶ 55.

Vaccinating healthcare workers protects those vulnerable populations, because COVID-19 vaccinations result in fewer overall infections with COVID-19 and a lower risk of transmission. *Id.*  This is why more than fifty health care professional organizations, including American Medical Association, American Nurses Association, American Academy of Pediatrics, Association of American Medical Colleges, and National Association for Home Care and Hospice", as well as the American Academy of PAs, American Pharmacists Association, the National Hispanic Medical Association, the American Public Health Association, American

---

[3] Previously, COVID-19 vaccinations were administered under an emergency use authorization.  As of August 23, 2021, the FDA has approved Pfizer-BioNTech COVID-19 Vaccine for persons 16 years of age and older.  The vaccine continues to be made available for persons aged 12 to 15 under an emergency use authorization.

Academy of Child and Adolescent Psychiatry and the Infectious Diseases Society of America, have called for all health care employers to require their employees to be vaccinated against COVID-19.  *Id.* at ¶ 56.

Dr. Audiey Kao, MD, PhD, the American Medical Association's Vice President of Ethics, has called upon all healthcare workers to be vaccinated as a matter of ethical obligation to their patients, stating "Do no harm is a core ethic for all those who care for the sick and injured. . . . [A]ll those working in the health care system have a fundamental obligation to patients by getting vaccinated for preventable diseases such as COVID-19."  *Id.* at ¶ 57.  In addition to preventing harm to patients, vaccinations also reduce burdens on healthcare workers.  The American Association of Nurse Anesthesiology, the American Association of Critical-Care Nurses, the National Association of Neonatal Nurses, and the American College of Occupational and Environmental Medicine have stated that vaccinations to health care team members will not only reduce the burden of this disease on acute and critical -care units and communities, but will prevent further harm to front line workers.  *Id.* at ¶ 58.  Healthcare workers and their employers benefit from required vaccinations because "COVID-19 is more disruptive to the workforce and hospital/health care operations than any disease encountered in the last century due to required quarantining and potential length of illness."  *Id.*

Further, partial vaccination of staff provides insufficient protection. *Id.* at ¶ 62.  For example, in Kentucky, an outbreak occurred in a skilled nursing facility with 90.4% of its residents vaccinated, after introduction from "an unvaccinated, symptomatic" healthcare provider.[4] *Id.* The CDC's study found that "[a]ttack rates were three to four times as high among unvaccinated residents and HCP as among those who were vaccinated; vaccinated persons were significantly

---

[4] https://www.cdc.gov/mmwr/volumes/70/wr/mm7017e2.htm?s_cid=mm7017e2_w

less likely to experience symptoms or require hospitalization."  *Id.*  Ultimately, 46 residents and health care personnel were infected.  *Id.*

### B.  The Department of Health Promulgates an Emergency Regulation Requiring Vaccination of Healthcare Workers

Reducing the number of unvaccinated personnel who can expose vulnerable patients to the potentially deadly disease in the healthcare setting is of utmost importance.  Time is of the essence. *Id.* at ¶ 63.  As the fall and winter seasons approach, during which the weather becomes colder and people gather indoors, the likelihood of spread of the highly-contagious Delta variant increases. *Id.* Additionally, as cold and flu season has arrived, the varying symptoms of COVID-19 (e.g., cough, fever, fatigue, muscle or body aches, headache, sore throat, congestion or runny nose, among others) could easily be mistaken for a cold or the flu.  *Id.* Again, this will increase the likelihood the people with COVID-19 will go untreated for longer and in the interim, potentially spread the disease to others. *Id.*

In light of these concerns, on August 26, 2021, the PHHPC adopted an emergency regulation under which hospitals, nursing homes, and other "covered entities" must require their personnel to be fully vaccinated against COVID-19.  *Prevention of COVID-19 Transmission by Covered Entities*, N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021).[5]  Under Section 2.61, "[c]overed entities shall continuously require personnel to be fully vaccinated against COVID-19, with the first doses for current personnel received by September 27, 2021 for general hospitals and nursing homes, and by October 7, 2021 for all other covered entities absent receipt of an exemption as allowed below."  10 N.Y.C.R.R. § 2.61(c). The regulation provides that personnel are exempt

---

[5] Public Health Law §§ 225(5), 2800, 2803(2), 3612, and 4010(4) and Social Services Law § 461 authorize the Department (through the PHHPC) to issue and amend regulations pertaining to any matters affecting the security of life or health or the preservation and improvement of public health in the state of New York, including designation and control of communicable diseases and ensuring infection control at healthcare facilities and any other premises.

from these requirements "[i]f any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of a member of a covered entity's personnel, based upon a pre-existing health condition, the requirements of [Section 2.61] relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health." *Id.* at § 2.61(d)(1). Section 2.61 does not contain a religious exemption from the vaccine requirement.

A requirement that healthcare workers be vaccinated against COVID-19 is consistent with longstanding vaccination requirements for other healthcare professionals. Indeed, existing New York regulations require all persons who work at hospitals, nursing homes, diagnostic and treatment centers, home health agencies and programs, assisted living residences, and hospices be vaccinated for measles and rubella. Rausch-Phung Decl. ¶ 47. Similar to Section 2.61, the regulations requiring measles and rubella vaccinations contain a medical exemption, but do not contain a religious exemption. *Id.* Likewise, there is no religious exemption from the requirement that children obtain vaccinations to attend school. *Id.* at ¶¶ 50-51. Section 2.61 is consistent with these pre-existing regulations.

## PROCEDURAL HISTORY AND THE INSTANT MOTION

On September 13, 2021, Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983 alleging that the vaccination requirement contained in Section 2.61 violates their rights under the Supremacy Clause, the First Amendment, and the Fourteenth Amendment. Compl., *generally*. The Complaint raises three claims. *First*, Plaintiffs allege that Section 2.61 violates the Free Exercise Clause of the First Amendment by requiring them to receive the COVID-19 vaccine despite their alleged "sincerely held religious beliefs that compel them to refuse vaccination with abortion-connected vaccines." *Id.* at ¶ 194. *Second*, Plaintiffs allege that Section 2.61 violates the

Supremacy Clause of the United States Constitution because it "compels employers of health care workers in the State of New York to disregard Title VII's protection against employment discrimination on account of religion.  *Id.* at ¶ 212.  *Third*, Plaintiffs allege that Section 2.61 violates the Equal Protection Clause of the Fourteenth Amendment in that it "specifically targets Plaintiffs' sincerely held religious beliefs for discriminatory and unequal treatment as compared with the medical exemptions" allowed by the regulation and "permits the State to treat Plaintiffs differently from similarly situated healthcare workers solely on the basis of Plaintiff's sincerely held religious beliefs." *Id.* at ¶ 222.

Plaintiffs seek injunctive relief in the form of an order enjoining the defendants from enforcing any requirement that employers deny religious exemptions from COVID-19 vaccination, revoking any religious exemptions previously granted, or otherwise interfering with the granting of religious exemptions.  *Id.*, "Wherefore" clause.  Plaintiffs also ask the court to enjoin Defendants from taking any action "against the licensure, certification, residency, admitting privileges or other professional status or qualification of the Plaintiffs on account of their having obtained a religious exemption." *Id.*  Finally, Plaintiffs seek a declaration that Section 2.61 violates the Free Exercise Clause, the Supremacy Clause, and the Equal Protection Clause, and therefore is "unconstitutional, unlawful, and unenforceable." *Id.*

Simultaneously with the filing of the Complaint, Plaintiffs moved, pursuant to Federal Rule of Civil Procedure 65, for a temporary restraining order and preliminary injunction pending the resolution of their request for a permanent injunction.  Pls.' Mot. TRO and Prelim. Inj., ECF No. 5.  By Order dated September 14, 2021, the Court granted Plaintiffs' request for a temporary restraining order.  Order, ECF No. 7.  Under the September 14, 2021 Order, the Department is "barred from enforcing any requirement that employers deny religious exemptions from COVID-

19 vaccination or that they revoke any exemptions employers already granted before the vaccine mandate issues." Order 2-3. The Department is also barred from otherwise interfering with the granting of religious exemptions for the COVID-19, and from taking any action against licensure, certification, or other action affecting professional status or qualification of the Plaintiffs on account of their having obtained a religious exemption. *Id.*

## STANDARD OF REVIEW

Injunctive relief, such as the preliminary injunction sought by plaintiffs here, is "an extraordinary remedy *never* awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (emphasis added). Specifically, the movant bears the burden of establishing, by clear and convincing evidence, that (a) it is likely to succeed on the merits; (b) it is likely to suffer irreparable harm in the absence of preliminary relief; (c) the balance of equities tips in its favor; and (d) an injunction is in the public interest. *See Winter*, 555 U.S. at 20. The final two factors—the balance of equities and the public interest—"merge when the Government is the opposing party." *L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. N.Y.*, 2018 WL 2390125, *13 (E.D.N.Y. May 25, 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

In addition, the Second Circuit has "held the movant to a heightened standard" where (i) an injunction is "mandatory" (i.e., altering the status quo, rather than maintaining it), or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). In such cases, the movant must show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm, in addition to showing that the preliminary injunction is in the public interest. *See id*. (quoting *Beal v. Stern*,

184 F.3d 117, 123 (2d Cir. 1999) and *Doe v. New York University*, 666 F.2d 761, 773 (2d Cir. 1981)).

## ARGUMENT

### POINT I

### PLAINTIFFS FAIL TO ESTABLISH THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

#### A. The State Is Not Required to Include Religious Exemptions in Mandatory Vaccination Laws.

For over a century, courts have held that mandatory vaccination laws constitute a valid exercise of the States' police powers, and such laws have withstood challenges on various constitutional grounds.  In 1905, the Supreme Court held that mandatory vaccination laws do not offend "any right given or secured by the Constitution," and the States' police powers allow imposition of "restraints to which every person is necessarily subject for the common good." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25-27 (1905). And in 1922, the Court reaffirmed that settled law allowed States to use their police powers to impose mandatory vaccination. *See Zucht v. King*, 260 U.S. 174, 176 (1922).

Courts have specifically recognized that generally applicable vaccination requirements do not infringe on religious liberties. As the Supreme Court held over seventy years ago, the right to practice one's religion freely "does not include liberty to expose the community . . . to communicable disease." *Prince v. Massachusetts*, 321 U.S. 158, 166-67 & n.12 (1944). More recently, the Court identified "compulsory vaccination laws" as among the neutral, generally applicable laws that did not require religious exemptions under the First Amendment.  *Employment Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 889 (1990).

As recently as 2015, the Second Circuit explained that mandatory vaccination "does not violate the Free Exercise Clause." *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015). In rejecting the plaintiffs' First Amendment claim, this Court reasoned that "New York could constitutionally require that all children be vaccinated in order to attend public school" without any religious exemption at all. *Id.*

Accordingly, plaintiffs cannot demonstrate a likelihood of success because the State has no constitutional obligation to include a religious exemption in Section 2.61.

## B. Plaintiffs Fail to Demonstrate a Likelihood of Success on Their Supremacy Clause Claim.

Ignoring the above dispositive authority, Plaintiffs assert that Section 2.61 violates the Supremacy Clause, Title VII of the Civil Rights Act of 1964, the Free Exercise Clause, and the Equal Protection Clause.

Plaintiffs have not shown and cannot show that they are likely to succeed on their claim based on the Supremacy Clause. That is because (i) there is no private right of action under the Supremacy Clause, and (ii) Title VII does not preempt Section 2.61.

### 1. *The Supremacy Clause does not create a cause of action.*

The Supremacy Clause is not "the source of any federal rights" or any private cause of action, but a "rule of decision" that courts should not give effect to state laws that conflict with federal law. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989)). Thus, as the Supreme Court held in *Armstrong*, the Supremacy Clause "certainly does not create a cause of action." 575 U.S. at 325. The Court reasoned in *Armstrong* that reading a private right of action into the Supremacy Clause would be "strange" given the Constitution's "silen[ce] regarding who may enforce federal laws in

court, and in what circumstances they may do so," and that the result of permitting a private right of action would be to "significantly curtail [Congress's] ability to guide the implementation of federal law." *Id.* at 325–26.  Thus, as the Second Circuit concluded, the Supremacy Clause "does not create a private right of action." *Davis* v. *Shah*, 821 F.3d 231, 245 (2d Cir. 2016) (stating, in light of *Armstrong*, that there is no "implied right of action arising out of the Supremacy Clause."). Plaintiffs' claim under the Supremacy Clause fails for this reason alone.

### 2.  *Title VII does not preempt Section 2.61.*

Apparently anticipating that the lack of any implied right of action under the Supremacy Clause is fatal to their case, Plaintiffs argue that the Court may nonetheless exercise its equitable powers to enjoin the enforcement of Section 2.61 because it is preempted by federal law under Title VII.  However, this theory also fails  because Title VII does not preempt Section 2.61.  Federal law preempts state law (1) where Congress "preempt[s] state law by so stating in express terms"; (2) where "the scheme of federal regulation is sufficiently comprehensive to make the reasonable inference that Congress 'left no room' for supplementary state regulation"; and (3) only where there is an actual conflict between the two because compliance with both is "a physical impossibility" or because state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *California Fed. Sav. & Loan Ass'n* v. *Guerra*, 479 U.S. 272, 280 (1987).  In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause, the court's "sole task" is to "ascertain the intent of Congress." *Id.* (citations omitted). "Pre-emption is not to be lightly presumed." *Id.* (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).  Moreover, it is presumed that the State's regulation "of matters related to health and safety" are valid under the Supremacy Clause. *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 715 (1985).

12

Title VII does not preempt Section 2.61.  First, Title VII does not express an intent to "occupy the field" of regulation encompassed by Section 2.61.  42 U.S.C. § 2000h-4 ("Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field . . . nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.").

Second, Section 2.61 does not expressly sanction a practice that is unlawful under Title VII or is inconsistent with the purpose of Title VII. *See California Fed. Sav. & Loan Ass'n*, 479 U.S. 272 at 284 (Title VII preempts "only those state laws that expressly sanction a practice unlawful" under the statute).  Title VII requires employers to accommodate religious beliefs, practices, or observances only to the extent that doing so would not impose "undue hardship" on the employer. *See* 42 U.S.C. § 2000e(j) ("religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.").  As previously noted, Plaintiffs seek a religious exemption, which is distinct from an accommodation under Title VII.  To the extent Plaintiffs seek an accommodation, Section 2.61 is silent and does not implicate Title VII at all, as discussed below.

Third, there is no "actual conflict" between Title VII and Section 2.61.  Compliance with both Title VII and Section 2.61 is not a "physical impossibility," nor does Section 2.61 pose any obstacle to accomplishing the objectives of Congress in enacting Title VII.  "An accommodation is said to cause an undue hardship whenever it results in 'more than a de minimis cost' to the employer." *Baker v. The Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006) (quoting *Trans World*

13

*Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)).  Failure to accommodate an employee's sincerely held religious beliefs is not a *per se* violation of Title VII.

Section 2.61 requires vaccinations for all "personnel" of the covered entities.  As defined by the regulation, "personnel" are those persons "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."  10 N.Y.C.R.R. § 2.61(a)(2).  Section 2.61 does not require covered entities to deny reasonable *accommodation* requests under Title VII, including those based on sincerely held religious beliefs.  However, as stated above, an employer is not required, under Title VII, to provide a religious accommodation when doing so would cause an undue hardship.  Section 2.61 does not bar an employer from providing a reasonable accommodation to covered personnel by, for example, modifying their work activities so that they do not potentially expose other covered personnel, patients, and residents to the disease.  Nor does Title VII require that an employer provide a blanket religious exemption without regard to the hardships faced by the employer.  *See Robinson* v. *Children's Hospital Boston*, No. 14-CV-10263, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016) (rejecting employee's failure to accommodate claim under Title VII where religious exemption to influenza vaccination would "cause or increase safety risks or the risk of legal liability for the employer").  Title VII does not entitle employees to a religious exemption—it only requires that employers make reasonable accommodation so long as it can be provided by the employer without undue hardship.  Section 2.61 does not conflict with Title VII.

### C. Plaintiffs Fail to Demonstrate a Likelihood of Success on Their Free Exercise Clause Claim.

Plaintiffs are not likely to succeed on the merits of their Free Exercise Clause claim.  The Free Exercise Clause states: "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I.  To "state a free exercise claim, a plaintiff generally must establish

that 'the object of [the challenged] law is to infringe upon or restrict practices because of [its] religious motivation,' or that the law's 'purpose…is the suppression of religion or religious conduct.'" *Congregation of Rabbinical College of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 619 (S.D.N.Y. 2013) (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533 (1993)).

> **1. *Section 2.61 is a neutral law of general applicability and is supported by a rational basis.***

The right of the free exercise of religion does not relieve an individual or entity of the obligation to comply with a "valid and neutral law of general applicability." *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990). As a result, where an alleged limitation on the exercise of religion "is not the object ... but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." *Id.* at 878. *See also Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg*, 111 F. Supp. 3d 459, 484 (S.D.N.Y. 2015) (stating that a "law or regulation that is neutral and of general applicability is constitutional even if it has an incidental effect on religion"). Therefore, a law that only incidentally imposes a burden on the exercise of religion need only be supported by a rational basis. *WTC Families for a Proper Burial, Inc. v. City of New York*, 567 F. Supp. 2d 529, 539-540 (S.D.N.Y. 2008) (quoting *Leebart v. Harrington*, 332 F.3d 134, 143 (2d Cir. 2003)).

To determine neutrality, courts look first to the text of the law in question. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id.* The text of Section 2.61 is neutral and of general applicability. It contains no reference to religion, and applies to every employee of the covered entities who could "potentially expose other covered personnel, patients or residents to" COVID-19 if infected, unless

the employee falls under a limited exemption for individuals for whom a vaccine would be detrimental to their health. 10 N.Y.C.R.R. § 2.61(a)(2), (d).

Further, Section 2.61 is neutral because its object is not to limit or restrict the exercise of religion.  Rather, its object is to protect public health and safety by reducing the incidence of COVID-19, and its method of doing so is to vaccinate New Yorkers working in healthcare facilities and thereby protect them, their colleagues, the vulnerable populations that they serve, and the general public.  Vaccination ensures that healthcare workers themselves are protected, prevents staffing shortages that could follow an outbreak among staff, and protects the vulnerable populations that they serve from infection.

2. ***Though the regulation would pass heightened scrutiny, any attempt to invoke that scrutiny would be misplaced.***

Plaintiffs' motion attempts to invoke heightened scrutiny, based on their assertion  that by omitting an exemption for those with religious objections to vaccination, DOH targeted religion, rendering the regulation not neutral. But *Smith* forecloses any argument that the omission of a religious exemption necessarily constitutes the improper targeting of religion. *See Smith*, 494 U.S. at 879.

Plaintiffs are likewise incorrect to argue that Section 2.61 is not generally applicable because it allows for medical exemptions. Courts have held that a non-religious exemption requires a matching religious exemption only when the non-religious exemption itself runs counter to the purpose of the underlying restriction; under those circumstances, it would be improper to deny a religious exemption on the ground that it undermines the underlying purpose given that the non-religious exemption does so as well. For example, the policy at issue in *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) prohibited police officers from wearing beards in order to maintain uniform appearance. The Third Circuit reasoned that

16

because a medical exemption from the "no beard" policy undermined the defendants' proffered interest in uniformity, there was no basis to deny a religious exemption. *See id*. at 365-66.

Similar reasoning appears in recent Supreme Court orders striking down policies that imposed capacity limitations to reduce the spread of COVID-19. Those policies were found to impose more stringent restrictions on religious services than on similar, secular activities in a manner that allowed secular business, but not religious institutions, to undermine the stated purpose of the policies. For example, the Supreme Court noted that a store in Brooklyn could have "hundreds of people" shopping there while "a nearby church or synagogue would be prohibited from allowing more than 10 or 25 people inside for a worship service." *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 66-67 (quotation marks omitted); *see Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

Here, by contrast, DOH's medical exemption furthers its stated interest in promoting the health of (among others) healthcare workers by exempting those for whom a "COVID-19 vaccine is detrimental to" their health. 10 N.Y.C.R.R. § 2.61(d)(1). A contrary rule—requiring individuals to take a vaccine that is harmful to their health—would exacerbate one of the very risks that DOH is attempting to address. And Section 2.61 protects those who are medically unable to receive a COVID-19 vaccine by ensuring that their colleagues who can be vaccinated do so, thereby reducing the risk of transmission to those who fall under the medical exemption. Accordingly, because the "single exception for medical exemptions" furthers the same policy as the vaccination requirement, DOH had no obligation to provide a religious exemption that would undermine that policy. *See W.D. v. Rockland County*, No. 19-civ-2066, 2021 WL 707065, at *26-30 (S.D.N.Y. Feb. 22, 2021); *F.F. v. State*, 194 A.D.3d 80, 84-88 (3d Dep't 2021).

Plaintiffs' reliance on *Fulton v. City of Philadelphia* is misplaced. *See* 141 S. Ct. 1868 (2021). As the Sixth Circuit recently observed, that narrow decision rested on a contract provision that gave a city official authority to "grant exemptions to [a] non-discrimination clause in her sole discretion." *Resurrection School v. Hertel*, No. 20-2256, 2021 WL 3721475, at *14 (6th Cir. Aug. 23, 2021) (quotation marks omitted). That "unfettered discretion meant that the non-discrimination clause was not neutral and of general applicability." *Id.* Here, by contrast, DOH provides specific criteria for qualifying for a medical exemption: namely, a showing that the "COVID-19 vaccine is detrimental to" an individual's health "based upon a pre-existing health condition." 10 N.Y.C.R.R. § 2.61(d)(1).

In any event, even if some form of heightened scrutiny did apply here—and it does not—Section 2.61 would satisfy it. As the Supreme Court has made clear, promoting public health by preventing the spread of COVID-19 is "unquestionably a compelling interest." *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 141 S. Ct. 63, 67 (2020).

Moreover, the Section 2.61 is narrowly tailored to that end. *Id.* First, there is "a very direct connection" between vaccination requirements and "the preservation of health and safety." *Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 612 (2018). DOH specifically noted that the COVID-19 vaccines are safe and effective, and unvaccinated individuals have eleven times the risk of being hospitalized with COVID-19. Rausch-Phung Decl. ¶ 5, *see* Exhibit A.

Second, Section 2.61 focuses on a discrete sector where COVID-19 transmission poses heightened and unacceptable risks: employees in healthcare settings. Transmission of COVID-19 by healthcare workers risks (1) their own personal safety; (2) the safety of their colleagues; (3) the safety of the vulnerable populations they serve; and (4) the safety of the public at large that could

18

be threatened by staffing shortages at healthcare facilities. *Id.* The rule does not apply to individuals working outside of enumerated entities in the healthcare sector, and it does not apply to employees who pose no risk of exposing colleagues or patients to COVID-19. 10 N.Y.C.R.R. § 2.61(a)(2). These limitations mirror longstanding regulations governing mandatory measles and rubella vaccinations for healthcare workers, which also do not contain a religious exemption. *See* 10 N.Y.C.R.R. § 405.3(10)(i), (ii).

Third, DOH considered but rejected alternative approaches because they would not adequately achieve DOH's goal to promote public health by preventing COVID-19 transmission in healthcare settings. DOH concluded that a testing requirement, for example, would be impracticable due to its expense and create an unreasonable burden by requiring testing of every person in a healthcare facility every day.  It is also limited in effect because healthcare personnel could contract and spread COVID-19 between tests. And a masking requirement, while "helpful to reduce transmission [would] not prevent transmission." Rausch-Phung Decl. ¶ 5, Exhibit A thereto.

Accordingly, Section 2.61 is narrowly tailored to promote public health, and would therefore withstand strict scrutiny even if such analysis applied.

### D.  Plaintiffs Fail to Demonstrate A Likelihood of Success on Their Equal Protection Clause Claim.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., Amend. XIV. This command is essentially a direction that all persons similarly situated should be treated alike.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

Plaintiffs allege that Section 2.61 violates the Equal Protection Clause of the Fourteenth Amendment in that it "specifically targets plaintiffs' sincerely held religious beliefs for

discriminatory and unequal treatment as compared with the medical exemptions" allowed by the regulation and "permits the State to treat Plaintiffs differently from similarly situated healthcare workers solely on the basis of Plaintiff's sincerely held religious beliefs." Compl. ¶ 222.  As stated above, Section 2.61 imposes the same vaccination requirement on all covered employees not medically exempted.  Plaintiffs essentially are arguing that by creating a medical exemption, but not a religious exemption, Plaintiffs are being targeted, which defies basic logic and the test under the Equal Protection Clause.

To reconcile the requirements of the Equal Protection Clause with the practical reality that most legislation classifies for one purpose or another, the Court has stated that it will uphold a law that neither burdens a fundamental right nor targets a suspect class so long as the legislative classification bears a rational relation to some independent and legitimate legislative end. *Romer v. Evans*, 517 US 620, 623 (1996) (citing *Heller v. Doe*, 509 U.S. 312, 319-320 (1993)).

Plaintiffs argument that Section 2.61 makes classifications on the basis of religion is not supported by the facts or prevailing caselaw.  Section 2.61 does not categorize individuals on the basis of religion, nor did DOH's decision to repeal the non-medical exemption target religion. Rather, the regulation, as amended, simply places all personnel at covered entities without a medical exemption on equal footing, a result that does not offend equal protection. *See Princ*e, 321 U.S. at 171 ("And there is no denial of equal protection in excluding [Jehovah's Witnesses'] children from doing what no other children may do."); *Zucht*, 260 U.S. at 176-77 (no equal protection violation where child prohibited from attending school without vaccinations, and explained that "in the exercise of the police power reasonable classification may be freely applied, and that regulation is not violative of the equal protection clause merely because it is not all-embracing").

20

The Supreme Court has repeatedly found that a rational basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993); *see also*, *e.g.*, *Dandridge v. Williams*, 397 U.S. 471, 486 (1970). Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (*per curiam*).  For these reasons, a classification that neither burdens a fundamental right nor targets a suspect class is accorded a strong presumption of validity.  *See, e. g., Beach Communications,* 508 U.S. at 314-15; *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 462 (1988); *Hodel v. Indiana*, 452 U.S. 314, 331-332 (1981); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314 (1976) (*per curiam*).

Such a classification does not violate the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *See Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992).  Here, the mandatory vaccination requirement, and the decision to repeal the non-medical exemption with the goal of achieving higher immunization rates in response to a public health crisis, rationally further legitimate state interests.  Under Section 2.61, similarly situated people are treated similarly, and the classifications are rational.  Personnel at covered entities who cannot receive vaccinations for medical reasons are not similarly situated to those for whom that is not true.   It is rational to exclude those personnel whose physicians have determined that vaccination would be detrimental to their health from a mandate aimed at furthering public health.

Accordingly, Plaintiffs fail to demonstrate a likelihood of success on their Equal Protection Clause claim.

## POINT II

## PLAINTIFFS FAIL TO ESTABLISH THEY WILL SUFFER IRREPARABLE HARM

Plaintiffs' application also should be denied because they have not established, and cannot establish, that they will suffer irreparable harm in the absence of injunctive relief, which is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (per curiam) (alteration in original) (quoting *Bell & Howell: Mamiya Co.* v. *Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)). To meet their burden, plaintiffs "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted).

Here, Plaintiffs argue that the have been irreparably harmed because they face termination or "damage to their licensure and credentialed status" if not permitted to seek a religious exemption from the vaccine requirement. Pls.' Mem. of Law, ECF No. 5-1 at p. 19. However, it is well established that neither the loss of employment nor financial loss constitute "irreparable harm" for purposes of determining whether injunctive relief is warranted. *Sampson* v. *Murray*, 415 U.S. 61, 90–92 (1974); *Hyde v. KLS Pro. Advisors Grp., LLC*, 500 F. App'x 24, 25 (2d Cir. 2012); *Savage v. Gorski*, 850 F.2d 64, 67 (2d Cir. 1988). That is because a loss of employment is remediable by other means at the conclusion of the litigation, should any remedy be warranted. *Hyde*, 500 F. App'x at 25; *Savage*, 850 F.2d at 68.

This failure, in of itself, is fatal to Plaintiffs' motion for a preliminary injunction. Moreover, even if Plaintiffs could establish that a loss of employment constitutes irreparable harm—and they cannot—that prospect is remote. Plaintiffs' suggestion that their employer may

terminate them is a dispute between plaintiffs and their private employers, entities that have not been named as defendants in this suit.  Moreover, plaintiffs have not show that immediate termination or loss of their licenses is a necessary consequence of their decision not to be vaccinated.[6]  As discussed above, Section 2.61 would not, for example, prohibit a covered entity from offering an accommodation to an employee so long as the employee does not "engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." 10 N.Y.C.R.R. § 2.61(a)(1).

Further, Plaintiffs cannot rely on the mere fact they have alleged a "loss of First Amendment freedoms" to establish irreparable harm.  "Although 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,'" courts "have not consistently presumed irreparable harm in cases involving allegations of the abridgment of First Amendment rights[.]" *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also CompassCare v. Cuomo*, 2020 U.S. Dist. LEXIS 98930, *30 (N.D.N.Y. June 5, 2020).  A movant is entitled to the presumption that a loss of First Amendment freedoms constituted irreparable harm only when he or she "alleges injury from a rule or regulation that *directly limits*" a First Amendment right. *Bronx Household of Faith*, 331 F.3d at 349 (emphasis added).

Here, Section 2.61's vaccine requirement does not  directly limit a First Amendment right as it does not compel plaintiffs to be vaccinated for COVID-19.  Rather, plaintiffs may freely elect not to be vaccinated, but in doing so may not be permitted to perform work activities "such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."  10 N.Y.C.R.R. § 2.61(a)(1).

---

[6] The Department of Education, not the Department of Health, regulates the licensure and certification of medical professionals.  *See, e.g.*, 8 N.Y.C.R.R. §§ 60, 63, 64.

## POINT III

## THE EQUITIES BALANCE IN FAVOR OF THE STATE'S EFFORTS TO PROTECT THE PUBLIC HEALTH DURING THE EXISTING PANDEMIC, AND ISSUANCE OF A PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST

Because Plaintiffs cannot establish the likelihood of success on the merits of their claims, or irreparable harm, the court need not consider "the public's interests in a temporary restraining order or the balance of the equities." *Amato v. Elicker*, 2020 U.S. Dist. LEXIS 87758,  at **38-39  (D. Conn. May 19, 2020).

In any event, Plaintiffs' request for a preliminary injunction must be denied because the equities balance in favor of continuing the State's vaccination requirement under Section 2.61.  It is well-established that a  "preliminary injunction may not issue unless the movant clearly shows that the balance of equities favors the movant" *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 401–02 (S.D.N.Y. 2011) (citation omitted).  As discussed above, Plaintiffs have not established that they will suffer irreparable harm if the Court denies the requested injunction.  In light of Plaintiffs' failure to show irreparable harm, the balance of the equities plainly weigh in favor of denying interim equitable relief. *See Winter*, 555 U.S. at 20.

Likewise, the public interest favors the continuation of the State's vaccination requirement under Section 2.61 with a religious exemption.  As discussed above, this emergency regulation was promulgated as part of the State's ongoing efforts to curb the spread of the deadly COVID-19 virus, which continues to pose a significant public health threat.  Increasing the number of people, particularly health care workers, who receive the vaccine undoubtedly serves that vital objective. According to the CDC, to date, 557,585 health care personnel have contracted COVID-19, and 1,768 have died of COVID-19.  Rausch-Phung Dec. ¶ 54.  Patient-facing healthcare workers, like those covered by Section 2.61, have a threefold risk of hospital admission if they contract COVID-19, and their family members have a twofold risk.  *Id.*  The spread of COVID-19 among healthcare

workers also imposes staffing burdens on already strained hospital and healthcare operations due to quarantining requirements and potential length of illness when healthcare workers become infected.  *Id.* ¶ 58.

Moreover, widespread vaccination protects the vulnerable patient populations served by healthcare workers, including the elderly and the immunocompromised.  *Id.* ¶ 55.  Vaccinating healthcare workers also protects unvaccinated patients, as COVID-19 vaccines are associated with fewer infections overall and less risk of transmission.  *Id.* ¶ 56.

In short, "[s]temming the spread of COVID-19 is unquestionably a compelling interest," *Hopkins Hawley LLC v. Cuomo*, 518 F. Supp. 3d 705, 717 (S.D.N.Y. 2021) (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020));  *see also Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y. 3d 601, 612 (2018) ("Undisputedly," there is a "very direct connection" between vaccination rules and "the preservation of health and safety."); *F.F. ex rel. Y.F. v. State*, 65 Misc. 3d 616, 633 (Sup. Ct. Albany Cty. 2019) ("Protecting public health" through the use of vaccines "has long been recognized as the gold standard for preventing the spread of contagious diseases" and "is unquestionably a compelling [public] interest"), *aff'd*, 194 A.D.3d 80 (3d Dep't 2021).

## POINT IV

## PLAINTIFFS SHOULD NOT BE GRANTED AN INJUNCTION PENDING APPEAL

Plaintiffs request that, in the event their request for a preliminary injunction is denied by this Court, they should be granted an injunction pending appeal.  Pls.' Memo. of Law, ECF No. 5-1 at p. 22.  Under Federal Rule of Appellate Procedure 8(a), a party must "move first in the district court for" an order "granting an injunction while an appeal is pending" before seeking such relief

in the Court of Appeals.  Fed. R. App. P. 8(a)(1)(c); *see also Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 179 (2d Cir. 2020).

The granting of an injunction pending appeal is an "an extraordinary remedy never awarded as of right." *Agudath Israel of Am.*, 979 F.3d at 179-80 (internal quotations and citations omitted). The requirements for an injunction pending appeal mirror those of a preliminary injunction.  *Id.* The movant must show: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.  *Id.*  Moreover, a request for an injunction pending appeal "demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (quotation marks omitted).

Here, as discussed above, Plaintiffs do not satisfy any of the requirements for a preliminary injunction.  For this same reason, their request for an injunction pending appeal must be denied.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion for preliminary injunctive relief should

be denied in its entirety.

Dated: Albany, New York
September 22, 2021

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York  12224

By: *s/ Ryan W. Hickey*
Ryan W. Hickey
Assistant Attorney General
Bar Roll No. 519020
Telephone:  (518) 776-2616
Fax: (518) 915-7738 (Not for service of papers)
Email: Ryan.Hickey@ag.ny.gov

By: *s/ Kasey K. Hildonen*
Kasey K. Hildonen
Assistant Attorney General, of Counsel
Bar Roll No. 520351
Telephone: (518) 776-2590
Fax: (518) 915-7740 (Not for service of papers)
Email: kasey.hildonen@ag.ny.gov

TO:   Christopher A. Ferrara, Esq. (*via ECF*)
148-29 Cross Island Parkway
Whitestone, NY  11357

Michael McHale, Esq. (*via ECF*)
10506 Burt Circle
Ste 110
Omaha, NE 68114