UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DR. A., NURSE A., DR. C.,
NURSE D., DR. F., DR. G.,
THERAPIST I., DR. J.,
NURSE J., DR. M.,
NURSE N., DR. O., DR. P.,
TECHNOLOGIST P.,
DR. S., NURSE S., and
PHYSICIAN LIAISON X.,

     Plaintiffs,

    -v-       1:21-CV-1009

KATHY HOCHUL, Governor
of the State of New York, in
her official capacity, DR.
HOWARD A. ZUCKER,
Commissioner of the New York
State Department of Health, in
his official capacity, and
LETITIA JAMES, Attorney
General of the State of New
York, in her official capacity,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:     OF COUNSEL:

THOMAS MORE SOCIETY   CHRISTOPHER FERRARA, ESQ.
Attorneys for Plaintiffs
148-29 Cross Island Parkway
Whitestone, NY 11357

THOMAS MORE SOCIETY                     MICHAEL MCHALE, ESQ.
Attorneys for Plaintiffs
10506 Burt Circle, Suite 110
Omaha, NE 68114


HON. LETITIA JAMES                      KASEY K. HILDONEN, ESQ.
New York State Attorney General         RYAN W. HICKEY, ESQ.
Attorneys for Defendants                Ass't Attorneys General
The Capitol
Albany, NY 12224


DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On August 26, 2021, the New York State Department of Health adopted an emergency regulation that required most healthcare workers to be vaccinated against COVID-19 within the next thirty days.  N.Y. COMP. CODES R. & REGS. tit. 10, § 2.61(c) (2021).  As relevant here, § 2.61 eliminated a religious exemption included in the first iteration of this mandate.

On September 13, 2021, seventeen healthcare workers employed in New York State ("plaintiffs"), all of whom object to the existing COVID-19 vaccines on religious grounds, filed this official-capacity 42 U.S.C. § 1983 action against New York State Governor Kathy Hochul ("Hochul"), New York State Health Commissioner Howard A. Zucker ("Zucker"), and New York State Attorney General Letitia James ("James") (collectively "defendants").

Plaintiffs' three-count verified complaint alleges that § 2.61 violates their constitutional rights because it effectively forbids employers from considering workplace religious accommodations under processes guaranteed by federal law.  Plaintiffs sought to enjoin defendants from, *inter alia*, enforcing § 2.61 "to the extent it categorically requires health care employers to deny or revoke religious exemptions from COVID-19 vaccination mandates."

On September 14, 2021, the Court issued a temporary restraining order ("TRO") to that effect, *Dr. A. v. Hochul*, 2021 WL 4189533 (N.D.N.Y.), and ordered briefing on whether the TRO should be converted to a preliminary injunction pending a resolution of the merits of plaintiffs' constitutional claims seeking a permanent injunction.  The TRO was extended for good cause to this date, October 12, 2021.  Dkt. No. 15.  The motion has been fully briefed and will be decided on the basis of the submissions without oral argument.

## II.  **BACKGROUND**[1]

On June 25, 2021, then-Governor Andrew Cuomo rescinded the COVID-19 public health emergency declaration that had been in effect across New York

---

[1] The facts are taken from plaintiffs' verified complaint, Dkt. No. 1, which is tantamount to an affidavit, *see* 28 U.S.C. § 1746, and from the declaration of Elizabeth Rausch-Phung, M.D., M.P.H., Dkt. No. 16.  A review of these submissions did not reveal any genuine disputes over the essential facts necessary to decide the motion.  *See, e.g.*, *In re Defend H20 v. Town Bd. of Town of E. Hampton*, 147 F. Supp. 3d 80, 96–97 (E.D.N.Y. 2015) (discussing circumstances in which an evidentiary hearing on a preliminary injunction is unnecessary).

- 3 -

State for the previous eighteen months.  Compl. ¶ 16; N.Y. Exec. Order 210 (June 24, 2021).  As defendants explain, Cuomo's decision was based on "declining hospitalization and [rates of COVID-19] positivity statewide, as well as success in vaccination rates."  Rausch-Phung Decl., Dkt. No. 16 ¶ 19.

However, the end of the emergency declaration did not bring an end to defendants' exercise of their emergency powers.[2]  Compl. ¶ 17.  On August 18, 2021, Health Commissioner Zucker issued an "Order for Summary Action" that required general hospitals and nursing homes to "continuously require all covered personnel to be fully vaccinated against COVID-19."  Ex. B to Compl. at 95–101 (the "August 18 Order").  The August 18 Order included a medical exemption as well as an explicit religious exemption:

> Religious exemption.  Covered entities shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the employer.

*Id.*; *see also* Compl. ¶ 20.

Just five days later, on August 23, 2021, New York State's Public Health & Health Planning Council (the "Health Council"), acting on a summary basis pursuant to its statutory authority under the Public Health

---

[2]  The New York legislature has curbed the executive's authority to issue new COVID-related orders.  *See* N.Y. Sess. Laws ch. 71 § 4.

Law, published a proposed emergency regulation that would quickly be adopted as § 2.61.[3]  *Id.* ¶¶ 4–5.  This proposal expanded the vaccination requirement set forth in the August 18 Order to reach personnel in other healthcare settings.  Rausch-Phung Decl. ¶ 5.  This proposal also eliminated the religious exemption found in Zucker's August 18 Order.  *See id.*

On August 26, 2021, three days after its publication, the Health Council adopted § 2.61, which superseded the August 18 Order and became effective immediately.  Rausch-Phung Decl. ¶ 5.  According to defendants, the Health Council's emergency action was a necessary measure to control the continued spread of Delta and other SARS-CoV-2 variants.  *Id.* ¶¶ 8–21.

The seventeen plaintiffs are "practicing doctors, M.D.s fulfilling their residency requirement, nurses, a nuclear medicine technologist, a cognitive rehabilitation therapist and a physician's liaison."  Compl. ¶ 36; *see also id.* ¶¶ 38, 47, 56, 66, 74, 84, 91, 98, 108, 117, 128, 140, 149, 161, 171, 181, 188.  They are employed by hospitals, nursing homes, and other New York State entities that are subject to § 2.61.  *See id.* ¶ 10.

Plaintiffs hold the sincere religious belief that they "cannot consent to be inoculated . . . with vaccines that were tested, developed or produced with fetal cell[ ] line[s] derived from procured abortions."  Compl. ¶ 35; *see also*

---

[3]  August 23 is also the date on which Cuomo resigned from office, Compl. ¶ 14, and when the Food & Drug Administration ("FDA") granted approval to the first COVID-19 vaccine for those age sixteen and older, Rausch-Phung Decl. ¶ 33.  Hochul has since assumed the governorship.

*id.* ¶ 37 (detailing beliefs held in common by plaintiffs).  According to

plaintiffs, the COVID-19 vaccines that are currently available violate these

sincere religious beliefs "because they all employ fetal cell lines derived from

procured abortion in testing, development or production."  *Id.* ¶¶ 9, 36; *see*

*also* Rausch-Phung Decl. ¶¶ 35–45 (acknowledging that fetal cell lines are

widely used in pharmaceutical development and were used in the testing and

production of current COVID-19 vaccines).

The complaint alleges that each plaintiff has been denied a religious

exemption, or had an existing religious exemption revoked, on the basis of

their employers' application of § 2.61.  Compl. ¶¶ 39–42, 49–51, 58–60, 67–68,

77–78, 85, 92–94, 102, 111–12, 118–23, 129–31, 142–43, 154–56, 162–63,

173–74, 183–85, 189.  The complaint further alleges that each plaintiff has

been threatened with professional discipline, loss of licensure, admitting

privileges, reputational harm, and/or the imminent termination of their

employment as a result of their refusal to comply with § 2.61.  *Id.* ¶¶ 43–46,

52–55, 61–65, 69–73, 79–83, 86–90, 95–97, 103–07, 113–16, 124–27, 135–39,

144–48, 157–60, 164–65, 168–70, 176–80, 186–87, 190–91.

## III. <u>LEGAL STANDARD</u>

"A preliminary injunction is an extraordinary remedy never awarded as of

right."  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  To win

relief, the movant must ordinarily demonstrate: (1) a likelihood of irreparable

harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest.  *Page v. Cuomo*, 478 F. Supp. 3d 355, 362–63 (N.D.N.Y. 2020).

However, in cases like this one, where the movants seek to enjoin government action taken in the public interest pursuant to a statutory or regulatory scheme, the less rigorous "serious questions" component of this legal standard is unavailable.  *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014).  As the Second Circuit has explained, "[t]his exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly."  *Id.* (citation omitted).

Defendants' opposition memorandum invokes a second exception to the general rules governing preliminary injunctive relief.  Defs.' Opp'n, Dkt. No. 16-50 at 4, 11.[4]  As defendants correctly note, a heightened standard can also apply when the requested injunction (1) is "mandatory"; *i.e.*, it will alter the status quo by compelling some positive action; or (2) "will provide the movant

---

[4]  Pagination corresponds to CM/ECF.

with substantially all of the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Page*, 478 F. Supp. 3d at 363.  When either condition is met, the movant must make a "clear" or "substantial" showing of a likelihood of success on the merits, and must also make a "strong showing" of irreparable harm.  *Id*.

Upon review, however, it is not clear why this heightened requirement should apply to plaintiffs' request for preliminary injunctive relief.  "An injunction that enjoins a defendant from enforcing a regulation clearly prohibits, rather than compels, government action by enjoining the future enforcement." *Hund v. Cuomo*, 501 F. Supp. 3d 185, 207 (W.D.N.Y. 2020) (cleaned up).  Nor have defendants articulated how this heightened standard has been triggered.  *See generally* Defs.' Opp'n.  Accordingly, the ordinary rules applicable to "prohibitory" injunctions will be applied.  *See, e.g.*, *Hund*, 501 F. Supp. 3d at 207 (rejecting application of heightened standard where plaintiff sought to enjoin application of COVID-19 Executive Order).

## IV.  **DISCUSSION**[5]

Since its ratification in 1791, the First Amendment has protected religious practitioners from government action that "discriminates against some or all

---

[5]  Although Eleventh Amendment immunity sometimes poses a bar to § 1983 relief against state officials, the doctrine of *Ex parte Young* permits an official-capacity claim for prospective injunctive relief to remedy an ongoing violation of federal constitutional law.  *See, e.g.*, *Avitabile v. Beach*, 277 F. Supp. 3d 326, 332 (N.D.N.Y. 2017).

religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993).  And since Congress amended the statute in 1972, Title VII of the Civil Rights Act of 1964 has explicitly required most employers to reasonably accommodate an employee's religious beliefs absent evidence that doing so would pose an undue hardship.  42 U.S.C. § 2000e(j).

Plaintiffs contend that § 2.61 conflicts with these longstanding federal protections.  In plaintiffs' view, § 2.61 "flagrantly disallows the religious protections required by federal employment law and specifically deletes its own prior offering of religious exemptions for covered health care workers."  Pls.' Mem., Dkt. No. 5-1 at 13.  As plaintiffs explain, § 2.61 "forbids each of their employers from even considering requests for religious exemptions notwithstanding the contrary requirements of Title VII."  *Id*. at 10 (emphases omitted).  According to plaintiffs, "the specific events leading to [§ 2.61's] final version show that it effectively targets religious opposition to the available COVID-19 vaccines."  *Id*. at 12.

### A. Likelihood of Success & Irreparable Harm[6]

Plaintiffs have asserted § 1983 claims under the Free Exercise Clause, Compl. ¶¶ 192–209, the Supremacy Clause, *id.* ¶¶ 210–19, and the Equal Protection Clause, *id.* ¶¶ 220–37.  To warrant preliminary injunctive relief, plaintiffs must show a likelihood of success on the merits of at least one of these constitutional claims.  *See, e.g.*, *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018).[7]

As an initial matter, however, the parties dispute whether a presumption of irreparable harm should attach to these claims.  Plaintiffs argue the Supreme Court has recognized that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Pls.' Mem. at 19 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).  Defendants respond that the Second Circuit has not "consistently presumed irreparable harm in cases involving allegations of the

---

[6] Defendants' threshold invocation of *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), *Zucht v. King*, 260 U.S. 174 (1922), and *Prince v. Massachusetts*, 321 U.S. 158 (1944) is misplaced.  Defs.' Mem. at 12–13.  The Second Circuit has previously relied on this line of precedent to reject a Free Exercise Clause challenge to vaccination requirements for schoolchildren.  *Phillips v. City of N.Y.*, 775 F.3d 538 (2d Cir. 2015).  And early in the COVID-19 pandemic a number of district courts, including this one, relied on *Jacobson* to reject constitutional challenges to various COVID-19 emergency restrictions.  *See, e.g.*, *Page v. Cuomo*, 478 F. Supp. 3d 355 (N.D.N.Y. 2020).  More recently, however, the Supreme Court and the Second Circuit have both cautioned that courts should not rely on *Jacobson* or its progeny to grant "special deference to the executive when the exercise of emergency powers infringes on constitutional rights."  *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 635 (2d Cir. 2020).

[7] Because plaintiffs are likely to succeed on the merits of their Free Exercise and Supremacy Clause claims, the Court declines to reach the merits of the Equal Protection Claim.  *See* Defs.' Mem. at 18–19.

abridgement of First Amendment rights" unless the injury flows from "a rule or regulation that directly limits speech." Defs.' Opp'n at 25 (quoting *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342, 349 (2d Cir. 2003)).

To be sure, the existing precedent in this area of law is less than perfectly clear. The question seems to arise most frequently in free speech cases, but the Second Circuit has also applied the presumption in other constitutional contexts. *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (identifying dispute over applicability of the presumption).

In short, as the Second Circuit explained in *Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996), the favorable presumption of irreparable harm arises only *after* a plaintiff has shown a likelihood of success on the merits of a constitutional claim. *Id.* at 482 (characterizing the presumption as one that "flows from a violation of constitutional rights").

"Thus, when a plaintiff seeks injunctive relief based on an alleged constitutional deprivation, 'the two prongs of the preliminary injunction threshold merge into one . . . in order to show irreparable injury, plaintiff must show a likelihood of success on the merits.'" *Page*, 478 F. Supp. 3d at 364 (quoting *Turley v. Guiliani*, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000)).

### 1.  The Supremacy Clause & Title VII

The Supremacy Clause declares that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. Art. VI, cl 2.  Although it "is not the source of any federal rights and certainly does not create a cause of action," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (cleaned up), the Supreme Court has long recognized that, "if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted," *id.* at 326 (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)).

Plaintiffs contend that § 2.61 runs afoul of the Supremacy Clause because it is preempted by Title VII, which prohibits discrimination in employment on the basis of "religion."  42 U.S.C. § 2000e-2(a)(1)–(2).  Under Title VII, "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [ ] an employee's . . . religious observance or practice without undue hardship on the . . . employer's business."  § 2000e(j).

This protection for religious belief means that "[a]n employer may not take an adverse employment action against an applicant or employee because of any aspect of that individual's religious observance or practice unless the employer demonstrates that it is unable to reasonably accommodate that

observance or practice without undue hardship." *Equal Emp. Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 776 (2015) (Alito, J., concurring).  Importantly, however, "Title VII does not demand mere neutrality with regard to religious practices . . . . [r]ather, it gives them favored treatment." *Id*. at 775 (majority opinion).  Thus, under certain circumstances, Title VII "requires otherwise-neutral policies to give way to the need for an accommodation." *Id*.

Plaintiffs argue that § 2.61 conflicts[8] with Title VII's religious protections because it "conspicuously eliminates (and thereby forbids) any opportunity for covered employees to even attempt to secure a reasonable accommodation for their sincerely held religious objections to the currently available COVID-19 vaccines."  Pl.'s Mem. at 7.  Defendants respond that there is a distinction between a so-called "religious exemption" and a "reasonable accommodation."  Defs.' Opp'n at 15–16.  According to defendants, "Title VII does not entitle employees to a religious exemption—it only requires employers to make reasonable accommodation so long as it can be provided by the employer without undue hardship." *Id*. at 16.

---

[8]  "In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *N.Y. SMS Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (cleaned up).

Upon review, plaintiffs have established at this early stage of the litigation that they are likely to succeed on the merits of this constitutional claim.  Of course, defendants are correct that there is a substantial difference between a blanket "religious exemption" from a vaccination requirement and the "reasonable accommodation" for religious beliefs imposed on employers by Title VII.  But defendants' assertion that § 2.61 "does not implicate Title VII at all" and "does not require covered entities to deny reasonable accommodation requests" fails to grapple with how the broad scope of the Health Council's mandate has allegedly impacted plaintiffs.

The plain terms of § 2.61 do not make room for "covered entities" to consider requests for reasonable religious accommodations.  Instead, § 2.61 obligates all covered entities to "continuously require personnel to be fully vaccinated against COVID-19."  And "personnel" is defined broadly, sweeping in "all persons employed or affiliated with a covered entity, whether paid or unpaid . . . who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."

Plaintiffs allege that some of their employers have revoked existing religious exemptions and/or religious accommodations by pointing to the State's adoption of § 2.61.  *See, e.g.*, Compl. ¶¶ 39–40, 77.  Plaintiffs also allege that some of their employers have refused to consider exemption or

accommodation requests because of § 2.61.  *See, e.g.*, *id.* ¶ 49.  Although Title
VII certainly does not require an employer in all cases to "accommodate" an
employee by necessarily granting them an "exemption," the statute does
require employers to entertain requests for religious accommodations and to
"reasonably" accommodate those requests absent a showing of undue
hardship.  According to plaintiffs, their employers have refused to engage in
that process because of § 2.61.

Defendants also argue that § 2.61's elimination of the religious exemption
language found in the August 18 Order brings it more in line with healthcare
workplace immunization requirements for measles and rubella.  Although
fetal cell lines were used in the development of the rubella vaccine, there is
no religious exemption in the State regulations that require workers to be
immunized against this pathogen.  Rausch-Phung Decl. ¶¶ 44, 47–48.

However, this argument conflates the merits of plaintiffs' present
constitutional claims with a hypothetical Title VII anti-discrimination claim
for a religious accommodation.  What matters here is not whether a religious
practitioner would win or lose a future Title VII lawsuit.  What matters is
that plaintiffs' current showing establishes that § 2.61 has effectively
foreclosed the pathway to seeking a religious accommodation that is
guaranteed under Title VII.

In any event, plaintiffs have not alleged a religious objection to other workplace vaccination requirements.  Nor have defendants explained why the State's approach to immunization against measles and rubella necessarily justifies an identical approach to SARS-CoV-2.[9]  In sum, plaintiffs have established that § 2.61 stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987).  Accordingly, plaintiffs are likely to succeed on the merits of this claim.

### 2.  <u>The First Amendment & The Free Exercise Clause</u>

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I.  The "free exercise" component of this First Amendment guarantee has been incorporated against the States through the Fourteenth Amendment.  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

"The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Emp. Div., Dep't of*

---

[9]  The State's healthcare regulatory framework is not monolithic when it comes to workplace immunization requirements.  Although it may not be an explicit "religious exemption," the relevant regulation for "influenza season" only requires covered entities to "ensure that all personnel not vaccinated against influenza for the current influenza season wear a surgical or procedure mask while in areas where patients or residents are typically present."  N.Y. COMP. CODES R. & REGS. tit. 10, § 2.59(d) (2014).  It may be true that a hypothetical healthcare worker who sought a Title VII religious accommodation from immunization against rubella would be rebuffed by their employer on the basis of "undue hardship."  But the same hypothetical worker who objected on religious grounds to vaccination against influenza—a respiratory disease broadly similar to COVID-19—could be "reasonably accommodated" with a surgical mask.

*Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990).  Accordingly, "religious

beliefs need not be acceptable, logical, consistent, or comprehensible to others

in order to merit First Amendment protection." *Thomas*, 450 U.S. at 714.

To that end, the Free Exercise Clause "protect[s] religious observers

against unequal treatment" and against "laws that impose special disabilities

on the basis of religious status." *Espinoza v. Mont. Dep't of Revenue*, 140 S.

Ct. 2246, 2254 (2020) (citation omitted).  However, the Free Exercise Clause

"does not relieve an individual of the obligation to comply with a valid and

neutral law of general applicability on the ground that the law proscribes (or

prescribes) conduct that his religion prescribes (or proscribes)." *Smith*, 763

F.3d at 877 (citation omitted).

A neutral and generally applicable law is subject to rational basis

review.  *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir.

2020).  Under that standard, the law "is presumed to be valid and will be

sustained if the [burden imposed] by the statute is rationally related to a

legitimate state interest." *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y. City

Dep't of Health & Mental Hygiene*, 763 F.3d 183, 186 n.2 (2d Cir. 2014)

(citation omitted).  "A law burdening religious conduct that is *not* both

neutral and generally applicable, however, is subject to strict scrutiny." *Id.*

at 193.  Under that standard, the government must establish that the law is

"justified by a compelling interest" and "narrowly tailored to advance that

interest." *Id*. at 186 n.2 (citation omitted).  "Neutrality and general applicability are interrelated, and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied." *City of Hialeah*, 508 U.S. at 531.

A law is not neutral if it is "specifically directed at [a] religious practice." *Cent. Rabbinical Cong.*, 763 F.3d at 193 (citation omitted).  To determine whether a law is neutral, the court begins with the text, "for the minimum requirement of neutrality is that a law not discriminate on its face." *City of Hialeah*, 508 U.S. at 533.  A law discriminates on its face "if it refers to a religious practice without a secular meaning discernable from the language or context." *Id*.  Importantly, though, even a facially neutral law may trigger heightened scrutiny if it "targets religious conduct for distinctive treatment." *Id*. at 534.  Likewise, "[t]he general applicability requirement prohibits the government from 'in a selective manner impos[ing] burdens only on conduct motivated by religious belief." *Cent. Rabbinical Cong.*, 763 F.3d at 196 (citation omitted).  Although "[a]ll laws are selective to some extent, . . . categories of selection are of paramount concern when a law has the incidental effect of burdening religious practice." *Id*. at 197 (citation omitted).

Plaintiffs contend that § 2.61 "effectively targets religious opposition to the available COVID-19 vaccines." Pls.' Mem. at 12.  In plaintiffs' view, the

vaccination requirement "flagrantly disallows the religious protections required by federal employment law and specifically deletes its own prior offering of religious exemptions for covered health care workers." *Id*. at 13. Defendants respond that § 2.61 is facially neutral because it "contains no reference to religion" and "applies to every employee of the covered entities." Defs.' Opp'n at 17. According to defendants, the "object" of the vaccination requirement "is to protect public health and safety by reducing the incidence of COVID-19." *Id*. at 18.

Upon review, plaintiffs have established at this early stage of the litigation that § 2.61 is not a neutral law. As the Supreme Court has explained, "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history" are all relevant circumstantial evidence in detecting a lack of neutrality. *City of Hialeah*, 508 U.S. at 540.

Zucker's August 18 Order, which was imposed on a summary basis, included medical *and* religious exemptions to COVID-19 vaccination. The Health Council's adoption of § 2.61, which was imposed on a similar summary basis just eight days later, amended the vaccination mandate to eliminate the religious exemption. This intentional change in language is the kind of "religious gerrymander" that triggers heightened scrutiny.

Plaintiffs have also established at this early stage of the litigation that § 2.61 is not generally applicable.  A law is "not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it." *Cent. Rabbinical Cong.*, 763 F.3d at 197; *see also Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004) ("A law fails the general applicability requirement if it burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated.").

Section 2.61's regulatory impact statement claims that "[u]nvaccinated personnel in [healthcare] settings have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients or residents, exacerbating staffing shortages, and causing unacceptably high risk of complications."  Ex. A to Compl. at 78.

But as plaintiffs point out, the medical exemption that remains in the current iteration of the State's vaccine mandate expressly accepts this "unacceptable" risk for a non-zero segment of healthcare workers.  Pls.' Mem. at 13.  Although defendants claim that they expect the number of people in need of a medical exemption to be low, Rausch-Phung Decl. ¶¶ 65–66, the

Supreme Court has recently emphasized that "[c]omparability is concerned with the risks various activities pose," not the reasons for which they are undertaken. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). Thus, absent further factual development the Court cannot conclude that § 2.61 satisfies the requirement of "general applicability."

Finally, plaintiffs have established at this early stage of the litigation that § 2.61 is likely to fail strict scrutiny. To satisfy strict scrutiny, defendants must show that the challenged law advances "interests of the highest order" and is "narrowly tailored" to achieve those interests. *Fulton v. City of Phila., Pa.*, 141 S. Ct. 1868, 1881 (2021) (quoting *City of Hialeah*, 508 U.S. at 546). "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Id.*

Defendants have satisfied the first component of this analysis. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest."). However, they have failed to establish that § 2.61—and in particular, its intentional omission of a religious exemption—is narrowly tailored to address that public health concern.

"Narrow tailoring requires the government to demonstrate that a policy is the 'least restrictive means' of achieving its objective." *Agudath Israel of Am.*, 983 F.3d at 633 (quoting *Thomas*, 450 U.S. at 718). The asserted justification

"must be genuine, not hypothesized or invented *post hoc* in response to litigation." *United States v. Virginia*, 518 U.S. 515, 533 (1996). "And the government must show that it 'seriously undertook to address the problem with less intrusive tools readily available to it.'" *Agudath Israel of Am.*, 983 F.3d at 633 (quoting *McCullen v. Coakley*, 573 U.S. 464, 494 (2014)).

Defendants have not made this showing. According to the "alternative approaches" component of § 2.61's regulatory impact statement, the Health Council considered two alternatives: (1) daily testing before each shift; and (2) wearing appropriately fitted N95 face masks at all times. Ex. A to Compl. at 81; *see also* Defs.' Opp'n at 21.

However, there is no adequate explanation from defendants about why the "reasonable accommodation" that must be extended to a medically exempt healthcare worker under § 2.61 could not similarly be extended to a healthcare worker with a sincere religious objection. *Fulton*, 141 S. Ct. at 1881 (cautioning courts to "scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants").

Nor have defendants explained why they chose to depart from similar healthcare vaccination mandates issued in other jurisdictions that include the kind of religious exemption that was originally present in the August 18 Order. Pl.'s Mem. at 17 (citing Illinois and California COVID-19 regulations that include religious exemption language); *see also Roman Catholic Diocese*

*of Brooklyn*, 141 S. Ct. at 67 (finding tailoring requirement unsatisfied where, *inter alia*, the challenged restriction was "much tighter than those adopted by many other jurisdictions hard-hit by the pandemic"); *Mast v. Fillmore Cty., Minn.*, 141 S. Ct. 2430, 2433 (2021) (Gorsuch, J., concurring) ("It is the government's burden to show this alternative won't work; not the [challenger's] to show it will.").

In sum, "[t]o meet the requirement of narrow tailoring, the government must demonstrate that alternative measures imposing lesser burdens on religious liberty would fail to achieve the government's interests, not simply that the chosen route was easier." *Agudath Israel of Am.*, 983 F.3d at 633 (cleaned up).  Defendants have not done so.  Accordingly, plaintiffs are likely to succeed on the merits of this constitutional claim.

## B. <u>The Balance of Hardships & The Public Interest</u>

Plaintiffs have also satisfied the remaining elements necessary to warrant preliminary injunctive relief.  Where, as here, a governmental defendant is the party opposing relief, "balancing of the equities merges into [the court's] consideration of the public interest." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021).

<u>First</u>, the public interest lies with enforcing the guarantees enshrined in the Constitution and federal anti-discrimination law. *See, e.g.*, *Paykina ex rel. E.L. v. Lewin*, 387 F. Supp. 3d 225, 245 (N.D.N.Y. 2019) ("The public

interest generally supports granting a preliminary injunction where . . . a plaintiff has established a clear likelihood of success on the merits and made a showing of irreparable harm.").

Second, the balance of hardships clearly favors plaintiffs.  Defendants argue that a preliminary injunction will hinder its "ongoing efforts to curb the spread" of SARS-CoV-2.  Defs.' Opp'n at 26.  According to defendants, the spread of SARS-CoV-2 among health care workers "imposes staffing burdens on already strained hospital and healthcare operations due to quarantining requirements and potential length of illness when healthcare workers become infected."  *Id*. at 26–27.

However, defendants acknowledge that § 2.61 still includes a medical exemption that requires covered entities to make a "reasonable accommodation."  As plaintiffs point out, defendants have not shown that granting the same benefit to religious practitioners that was originally included in the August 18 Order "would impose any more harm—especially when Plaintiffs have been on the front lines of stopping COVID for the past 18 months while donning PPE and exercising other proper protocols in effectively slowing the spread of the disease."  Pls.' Mem. at 20.

## V.  **CONCLUSION**[10]

The question presented by this case is not whether plaintiffs and other individuals are entitled to a religious exemption from the State's workplace vaccination requirement.  Instead, the question is whether the State's summary imposition of § 2.61 conflicts with plaintiffs' and other individuals' federally protected right to seek a religious accommodation from their individual employers.

The answer to this question is clearly yes.  Plaintiffs have established that § 2.61 conflicts with longstanding federal protections for religious beliefs and that they and others will suffer irreparable harm in the absence of injunctive relief.  *Tandon*, 141 S. Ct. at 1297 (finding irreparable harm from loss of free exercise rights for even minimal periods of time).  Plaintiffs have also satisfied the remaining elements necessary to obtain preliminary relief.

To reiterate, these conclusions have nothing to do with how an individual employer should handle an individual employee's religious objection to a workplace vaccination requirement.  But they have everything to do with the proper division of federal and state power.  *Cf. Arizona v. United States*, 567 U.S. 387, 398 (2012) ("Federalism, central to the constitutional design, adopts

---

[10]  The bond requirement is waived.  *See* FED. R. CIV. P. 65(c).

the principle that both the National and State Governments have elements of sovereignty the other is bound to respect.").

In granting a preliminary injunction, the Court recognizes that it may not have the final word.  Under 28 U.S.C. § 1292(a)(1), "Congress permits, as an exception to the general rule, an immediate appeal from an interlocutory order that either grants or denies a preliminary injunction."  *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989).  Because the issues in dispute are of exceptional importance to the health and the religious freedoms of our citizens, an appeal may very well be appropriate.

Therefore, it is

ORDERED that

1.  Plaintiffs' motion to proceed pseudonymously is GRANTED[11];

2.  Plaintiffs' motion for a preliminary injunction is GRANTED;

3.  Defendants, their officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them, are preliminarily ENJOINED from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with § 2.61 such that:

---

[11]  Plaintiffs requested leave to proceed pseudonymously.  Compl. ¶¶ 26–34.  Defendants do not oppose.  Defs.' Opp'n at 3 n.2.

(a) Section 2.61 is suspended in operation to the extent that the

Department of Health is barred from enforcing any requirement that

employers deny religious exemptions from COVID-19 vaccination or

that they revoke any exemptions employers already granted

before § 2.61 issued;

(b) The Department of Health is barred from interfering in any way

with the granting of religious exemptions from COVID-19 vaccination

going forward, or with the operation of exemptions already granted;

and

(c) The Department of Health is barred from taking any action,

disciplinary or otherwise, against the licensure, certification, residency,

admitting privileges or other professional status or qualification of any

of the plaintiffs on account of their seeking or having obtained a

religious exemption from mandatory COVID-19 vaccination.

   IT IS SO ORDERED.


Dated:  October 12, 2021
         Utica, New York.

David N. Hurd
U.S. District Judge