

*A national public interest law firm defending life, family and religious liberty*

---

January 18, 2022

**Via Electronic Filing (CM/ECF)**
Honorable David N. Hurd, Senior U.S. District Judge
United States District Court for the Northern District of New York
Alexander Pirnie Federal Bldg. and U.S. Courthouse
10 Broad Street Utica, New York 13501

    Re:    **Dr. A. et al., v. Hochul et al., No. 1:21-cv-1009 (DNH) (ML)**
              **Detailed Status Report pursuant to Text Order #34**

Dear Judge Hurd:

    Pursuant to your Text Order of December 13, 2021 (Text Order #34), the following is Plaintiffs' detailed status report providing the following: (A) the status of all current appeals in this case; (B) a general summary of Plaintiffs' current employment and vaccination status; (C) key changes in the legal and factual landscape in recent weeks; and (D) Plaintiffs' intended course of action in light of these legal and factual changes.

    By way of summary, 15 of the 17 Plaintiffs intend to expeditiously file a renewed Motion for Temporary Restraining Order and Preliminary Injunction given that the new federal COVID-19 vaccine mandate for healthcare workers, as issued on November 5, 2021, and **upheld by the U.S. Supreme Court just last week**, expressly **requires** that covered healthcare staff be afforded the opportunity for "religious **exemptions**" from COVID-19 vaccination. That federal requirement directly supersedes the Second Circuit's earlier-in-time decision that federal law requires only the opportunity to seek religious "accommodations" but *not* "exemptions." If Plaintiffs do not prevail on this motion, they intend to proceed to discovery on factual issues that remain material to this case (including those expressly acknowledged by the Second Circuit as potentially dispositive in Plaintiffs' favor upon further development) in continuing to pursue a permanent injunction.

**A. <u>Status of Appeals.</u>**

    1. <u>**Second Circuit panel decision**</u>**:**

    On October 29, 2021, the U.S. Court of Appeals for the Second Circuit vacated this Court's grant of Plaintiffs' motion for preliminary injunction against Rule 2.61's refusal to authorize religious exemptions from New York's healthcare COVID-19 vaccine mandate and remanded for further proceedings consistent with its forthcoming opinion. *See We the Patriots*

*USA, Inc. et al./Dr. A. et al., v. Hochul*, Nos. 21-2179, 21-2566 (2d Cir. Oct. 29, 2021). On November 4, 2021, the Second Circuit issued the opinion supporting its order, emphasizing that "**we do not now decide the ultimate merits of Plaintiffs' legal claims** . . . [but rather] make **a limited determination** with respect to preliminary relief based on the **limited factual record before this Court**." *We the Patriots USA, Inc. et al. v. Hochul*, 17 F.4th 266, 273 (2d Cir. 2021).

Notably, the Second Circuit disagreed that Rule 2.61 is non-generally applicable under the Free Exercise Clause, in essential part because Plaintiffs were allegedly required to account for the *total* "number of people seeking exemptions" for both religious and medical reasons, in order to determine whether religious and medical exemptions are "comparable" under *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). *Id.* at 287. Thus the Second Circuit concluded that "**[w]ith a record as undeveloped on the issue of comparability as that presented here, we cannot conclude that the above vaccination requirements are *per se* not generally applicable**." *Id.*; *see also id.* ("**The record before the district court was sparse**.").

Critically, the Second Circuit also disagreed that Rule 2.61 violates the Supremacy Clause because it held that Title VII of the 1964 Civil Rights Act requires the opportunity to seek only religious **accommodations**—which the Second Circuit believed available at least to a limited extent—but Title VII allegedly affords no opportunity to seek religious **exemptions** (which the Second Circuit acknowledged are **categorically forbidden** by Rule 2.61). As the Second Circuit put it exactly:

> Section 2.61 does not require employers to violate Title VII because, **although it bars an employer from granting a religious *exemption* from the vaccination requirement**, it does not prevent employees from seeking a religious *accommodation* allowing them to continue working consistent with the Rule, while avoiding the vaccination requirement.

*Id.* at 292 (emphasis in original).

The Second Circuit also noted that as to the question of irreparable harm, "this case raises difficult, apparently unusual questions" because "it is not at all clear who would pay" lost wages, since the state has sovereign immunity and Plaintiffs' private employers are arguably shielded by Rule 2.61. *Id.* at 295. Thus the Second Circuit held that "we do not place any weight on the issue of remediation of Plaintiffs' financial losses as this preliminary injunction stage," and the "**district court can consider this issue . . . upon further factual development and findings**" at the permanent injunction stage. *Id.*

The Second Circuit also held the public interest and balance of harms weighed *against* granting a preliminary injunction, allegedly because of the "strain" imposed on healthcare workers as a result of *healthcare workers* becoming infected with COVID-19 and needing corresponding time off to recover. *Id.* at 296. However, the Second Circuit emphasized that "[w]hether this issue will ultimately carry any weight when the district courts decide **Plaintiffs' entitlement to a permanent injunction on remand**, **we need not and do not decide**." *Id.*

2. **<u>Supreme Court emergency review</u>:**

On November 12, 2021, Plaintiffs filed an emergency application in the U.S. Supreme Court seeking an injunction pending appeal under the All Writs Act, 28 U.S.C. §1651. *See Dr. A. v. Hochul*, No. 21A145.

On December 13, 2021, the Supreme Court denied Plaintiffs' emergency application by a 6-3 vote. *See Dr. A. v. Hochul*, No. 21A145 (U.S. Dec. 13, 2021). Notably, while none of the majority Justices explained their vote, their decision followed a similar 6-3 denial of an emergency application in *John Does 1-3 v. Mills*, No. 21A90 (U.S. Oct. 29, 2021), which presented an essentially identical Free Exercise claim against the State of Maine's similar refusal to allow religious exemptions from COVID-19 vaccination in healthcare facilities. And there, Justice Barrett, joined by Justice Kavanaugh, wrote a separate concurrence explaining that her decision to deny relief did not hinge "*only* on an assessment of the underlying merits," but "also [on] a *discretionary judgment* about whether the Court should grant review in this case"—considering that it would be doing so "on a short fuse without benefit of full briefing and oral argument," and that it "is the first to address the questions presented." *Id.*, 21A90, slip op. at 1 (Barrett, J., concurring) (emphasis added). Thus, in considering the Justices' subsequent votes in *Dr. A.*, it is reasonable to presume that Justices Barrett and Kavanaugh joined the majority for similar *non*-merits based reasons there, as well.

Meanwhile, Justice Gorsuch, joined by Justice Alito, authored a searing and thoughtful 14-page dissent in which he specifically acknowledged Your Honor by name, *see id.*, slip op. at 5 (Gorsuch, J., dissenting) and adopted your Free Exercise analysis as the exact manner by which to resolve this case. Specifically, Justice Gorsuch agreed that New York *intentionally* targeted religion for disfavored treatment by specifically removing previously authorized religious exemptions in Rule 2.61 from its earlier promulgated August 18th Order. *Id.* at 8 (Gorsuch, J., dissenting); *accord Dr. A. v. Hochul*, 2021 WL 4734404, at *8 (N.D.N.Y. Oct. 12, 2021). Justice Gorsuch also agreed that allowing a healthcare worker to be unvaccinated for medical reasons (which Rule 2.61 allows) is exactly comparable to allowing a healthcare worker to be unvaccinated for religious reasons (which Rule 2.61 forbids)—and that general applicability "doesn't turn on th[e] kind of numbers game" adopted by the Second Circuit decision, since "rights belong to individuals" and "the relevant question here involves a one-to-one comparison between the individual seeking a religious exemption and one benefiting from a secular exemption." *Id.* at 8-9 (Gorsuch, J., dissenting); *accord Dr. A.*, 2021 WL 4734404, at *8 (noting Rule 2.61 "expressly accepts" the alleged "unacceptable risk" of non-vaccination "for a *non-zero* segment of healthcare workers" in need of a medical exemption) (emphasis added).

Justice Gorsuch also agreed Rule 2.61 fails strict scrutiny given "how unique it is," since "nearly every other State has found that it can satisfy its COVID-19 public health goals without

coercing religious objectors to accept a vaccine." *Id*. at 10 (Gorsuch, J., dissenting); *accord Dr. A.*, 2021 WL 4734404, at *9 ("Nor have defendants explained why they chose to depart from similar healthcare vaccination mandates issued in other jurisdictions that include the kind of religious exemption that was originally present in the August 18 Order.").

In the end, Justice Gorsuch lamented that "[t]oday, we do not just fail the applicants," "[w]e fail ourselves," since the right to the free exercise of even unpopular religious beliefs "is among our Nation's proudest boasts." *Id*. at 11 (Gorsuch, J., dissenting). He concluded by noting the Supreme Court's denial is not the last word on this matter—expressly "hop[ing] today's ruling **will not be the final chapter** in this grim story." *Id*. at 14 (Gorsuch, J., dissenting).

Justice Gorsuch's hope that the *Dr. A.* plaintiffs ultimately prevail is consistent with the blackletter principle that a denial of an emergency stay or injunction is "not a decision on the merits of the underlying legal issues," *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 960 (2009) (per curiam), particularly where Justices Barrett and Kavanaugh's rationale is ostensibly based on their discretionary view of whether, at this point, they would grant a writ of certiorari. *See U.S. v. Carver*, 260 U.S. 482, 490 (1923) ("[D]enial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times.").

3. **Second Circuit en banc review:**

On December 2, 2021, while the aforementioned emergency application before the U.S. Supreme Court was still pending, Plaintiffs filed a petition for rehearing and rehearing en banc with the Second Circuit to comply with the applicable deadline for doing so. On January 11, 2022—nearly one month after the Supreme Court's denial of Plaintiffs' emergency application—the Second Circuit summarily denied Plaintiffs' petition in a two-sentence order without indicating whether there had been an internal vote. *See Dr. A. v. Hochul*, No. 21-2566 (2d Cir. Jan. 11, 2021) (Dkt. # 103).

4. **Additional Supreme Court review:**

As a matter of full disclosure, Plaintiffs now intend to file a regular petition for a writ of certiorari with the U.S. Supreme Court as soon as practicable. Plaintiffs do not propose to delay these proceedings on that account; they wish to move ahead expeditiously.

B. **Current Status of Plaintiffs.**

All 17 Plaintiffs remain unconstitutionally aggrieved by Rule 2.61's violation of their fundamental right to the free exercise of religion under the First Amendment, as aptly explained

by this Court and Justice Gorsuch's opinions on October 14 and December 13, 2021, respectively.

Before the Second Circuit vacated this Court's injunction, most Plaintiffs had been granted or restored religious exemptions by their employers as a result of this Court's temporary restraining order on September 14, 2021. *See Appellees' Brief* in 21-2566, Doc. 38, Br. at 33 (citing A 211). However, after the Second Circuit's vacatur on October 29, 2021, every Plaintiff except one (who received a medical exemption) suffered termination or forced resignation by the employer.

Most Plaintiffs remain out of full-time work and in need of immediate relief. However, one Plaintiff has since moved out of state and no longer seeks to provide healthcare in New York as a result of Rule 2.61 ("Technologist P"). As noted, another Plaintiff successfully obtained a medical exemption from her employer ("Dr. D."). Four of the seventeen Plaintiffs submitted under duress to initial COVID-19 vaccination cocktails in direct violation of their religious beliefs, but in order to preserve their livelihoods. But they remain religiously opposed to future mandatory COVID-19 "booster" vaccination (which is already being required) developed through testing or production using aborted fetal stem cells. Thus, all but two of the original Plaintiffs stand in the same need of an injunction today as when they filed this suit on September 13, 2021.

Accordingly, 15 of 17 Plaintiffs remain entitled to immediate relief even under the Second Circuit's decision, as discussed below.

C.  **Changed Circumstances**.

The legal and factual landscape has changed decisively in Plaintiffs' favor since both this Court's issuance of a preliminary injunction on October 14, 2021, and since the Second Circuit's vacatur and supporting opinion on October 29 and November 4, 2021, respectively.

1. **Changed law:**

On November 5, 2021, the Biden Administration issued its COVID-19 vaccine mandate for healthcare workers ("CMS Mandate") and it expressly required the availability of religious "*exemptions*." 86 Fed. Reg. 61572 (emphasis added) (requiring that covered healthcare facilities "establish and implement a process by which staff may request an *exemption* from COVID-19 vaccination requirements based on applicable Federal law," and that "religious beliefs . . . may provide grounds for *exemption* [under] Title VII of the Civil Rights Act" (emphasis added)).

As of last week, the CMS Mandate is now the law of the land—including New York—under the Supreme Court's ruling in *Biden v. Missouri*, 595 U.S. __, Nos. 21A240, 21A241 (Jan. 13, 2022). As the Supreme Court itself expressly acknowledged, in order for a covered healthcare facility to continue receiving Medicare and Medicaid funding, it must require COVID vaccination by their staff "*unless **exempt** for medical or **religious** reasons*." *Biden*, 595 U.S. ___, Nos. 21A240, 21A241, slip op. at 1 (emphasis added). The Supreme Court further stated "[t]he rule *requires providers to offer medical and **religious exemptions***." *Id.*, slip op. at 3.[1]

Although "whether federal regulations preempt state law depends on whether the agency . . . meant to pre-empt [state] law," *Drake v. Lab. Corp. of America Holdings*, 458 F.3d 48, 56 (2d Cir. 2006), here the CMS Mandate clearly intends to preempt conflicting state law insofar as it expressly provides that, "consistent with the Supremacy Clause of the Constitution, **the agency intends that this rule preempts State and local laws** to the extent the State and local laws conflict with this rule." 86 Fed Reg. 61568; *see also id.* ("We intend, consistent with the Supremacy Clause of the United States Constitution, that this nationwide regulation preempts inconsistent State and local laws as applied to Medicare- and Medicaid-certified providers and suppliers.").

Thus, by mandating the process of considering religious **exemptions,** the CMS Rule explicitly, intentionally, and directly preempts New York's Rule 2.61, which the Second Circuit held "bars an employer from granting a religious **exemption**." *We the Patriots*, 17 F.4th at 292.[2]

**2. Changed factual landscape:**

It is now clearer than ever that New York's COVID-19 vaccine mandate is utterly ineffective and manifestly counterproductive. Having provoked the firing of 37,000 healthcare

---

[1] Indeed, in defending the now-invalidated OSHA COVID-19 vaccine mandate during oral argument earlier this month, U.S. Solicitor General Elizabeth Prelogar acknowledged that, pursuant to the OSHA Mandate's incorporation of superseding Title VII statutory law, "some people have deeply held religious beliefs and are entitled to *religious exemptions*." Supreme Court of the United States, Oral Argument Transcript, *NFIB v. Department of Labor*, *Ohio v. Department of Labor*, Nos. 21A244, 21A247, at 110:7-9 (emphasis added).

[2] Additionally, approximately two weeks after Plaintiffs filed their Complaint in this case, New York announced that employees terminated for declining vaccination would be ineligible for unemployment insurance. While unemployment benefits are generally "reviewed on a case-by-case basis," COVID-vaccination holdouts are categorically "ineligible" for such benefits. *See* N.Y. State Governor's Office, *Governor Hochul Releases Comprehensive Plan to Address Preventable Health Care Staffing Shortage* (Sept. 25, 2021), Perma | In Preparation for Monday Vaccination Deadline, Governor Hochul Releases Comprehensive Plan to Address Preventable Health Care Staffing Shortage. This change showed further evidence of Governor Hochul's crusade against COVID vaccine religious objectors and also provides the basis for an additional First Amendment claim as this litigation proceeds.

workers in the state who declined to be coerced into vaccination,[3] Governor Hochul has now acknowledged there is a statewide crisis in healthcare staffing, which religious exemptions would obviously help to ameliorate. And the prevailing science now shows that COVID-19 vaccination does not prevent healthcare workers from getting or transmitting the virus—especially the now-dominant Omicron variant. Thus merely allowing healthcare facilities to consider religious exemptions (pursuant to their explicit obligations under the CMS Mandate) would now unquestionably not harm public health, and indeed would only help the sick and the dying better access the healthcare services they so desperately need.

Indeed, the CDC has recently announced new guidance to address COVID-related staffing shortages under which **even unvaccinated healthcare workers may return to work and continue to provide patient services *even* if they are COVID-infected**, including five days after being infected if their employer is in a "contingency" situation (as long as they are asymptomatic or mildly symptomatic), or **anytime**, **even with symptoms**, if their employer is in a "crisis" situation and prioritizes asymptomatic and "mildly symptomatic" workers over others.[4]

After Rule 2.61 forced 37,000 healthcare workers out of their jobs because they would not submit to vaccination, on January 5, 2022, Governor Hochul announced an unprecedented program of direct payments to New York healthcare workers, including $3,000 retention payments to full-time healthcare staff, in order to "stop the current hemorrhaging of healthcare workers."[5] Governor Hochul is also pursuing legislation to allow doctors and nurses to relocate to New York from out of state while using their existing licenses.[6] That is, anything but admitting that the mass firing of unvaccinated health care workers—now authorized to return to work by the CDC itself—was a mistake.

And, of course, the Omicron variant is now the dominant COVID variant throughout the country (including New York[7]), and it has become a matter of public knowledge that Omicron spreads rampantly even among the vaccinated. Indeed, it is now widely acknowledged that current COVID vaccination cocktails are wholly ineffective at preventing infection or

---

[3] *See* https://www.nytimes.com/2021/12/13/us/politics/supreme-court-vaccine-mandate-new-york-healthcare.html

[4] https://www.cdc.gov/coronavirus/2019-ncov/hcp/guidance-risk-assesment-hcp.html.

[5] Governor Kathy Hochul, "Governor Hochul Announces Direct Payments to Healthcare Workers as Part of $10 Billion Healthcare Plan," Jan. 5, 2022, https://www.governor.ny.gov/news/governor-hochul-announces-direct-payments-healthcare-workers-part-10-billion-healthcare-plan.

[6] *Id.*

[7] *See, e.g.*, Emily Davenport, "New Health Department report finds that Omicron became NYC's dominant variant in just five weeks," amNY, Jan. 14, 2022, https://www.amny.com/lifestyle/health/coronavirus/new-health-department-report-finds-that-omicron-became-nycs-dominant-variant-in-just-five-weeks/.

7

transmission of the virus—the very problems that force healthcare workers to quarantine and exacerbate the staffing crisis, *and* that supposedly necessitated the firing of all unvaccinated healthcare workers in New York (even assuming, arguendo, COVID vaccination still helps reduce the severity of infection).[8]

As the CEO of Pfizer recently acknowledged: "We know that the two doses of the vaccine **have very limited protection, if any**." "The three doses, with the booster, offer reasonable protection against hospitalization," he added, although he failed to define "reasonable protection" and did not deny that even three-shot cocktails are not preventing infection and transmission and thus the same staff quarantines that firing unvaccinated workers was supposed to avoid.[9]

Bill Gates himself acknowledged last week that COVID vaccines "are missing two key things… First, they still allow infections ('breakthrough') and [Second] the duration appears to be limited. **We need vaccines that prevent re-infection have many years of duration**."[10]

Thus, it is now all but indisputable that not only does the public interest not support Rule 2.61's denial of all religious exemptions in direct conflict with federal law, the public interest cries out for the eradication of that rule, as the most vulnerable across New York currently go without sufficient healthcare as a result of Governor Hochul's crusade against the "unvaxed." It is not too much to say that Hochul's vaccine mandate for healthcare workers has proven to be a total debacle. Again, even the CDC is now calling for the rehiring of unvaccinated and symptomatic health care staff due to the staffing crisis.

For these reasons, the new factual and legal landscape favor injunctive relief for Plaintiffs more than ever.

**D. Intended Course of Action.**

In light of the foregoing, Plaintiffs intend to carry out the following two-pronged, contingent course of action. (Accordingly, Plaintiffs oppose any effort by Defendants to initiate Motion-to-Dismiss proceedings at this time.)

First, Plaintiffs intend to file expeditiously a renewed motion for a Temporary Restraining Order and Preliminary Injunction based on the fact the CMS Mandate—as upheld by

---

[8] *See, e.g.*, WION News, "'Omicron strain infecting vaccinated,' WHO issues warning on Covid-19 variant," Dec. 21, 2021, https://www.youtube.com/watch?v=iVPTdibFhN8.
[9] Cf. https://www.ncregister.com/blog/pfizer-and-the-vatican
[10] @BillGates (Verified Account), Twitter.com, Jan. 11, 2022, 12:20 p.m., https://twitter.com/BillGates/status/1480967846607736832.

the Supreme Court just last week—expressly preempts Rule 2.61 and requires that Plaintiffs be afforded access to "religious exemptions" and not just religious "accommodations." In doing so, Plaintiffs would delay seeking discovery on the total number of religious versus secular exemptions and on other factual issues relevant to this Court's analysis of Plaintiffs' motion for a *permanent* injunction under the Second Circuit's remand.

Plaintiffs' motion will seek an injunction preventing New York from applying Rule 2.61 in any manner that interferes with Plaintiffs' (former) healthcare facilities' obligation under the CMS Mandate to offer religious "exemptions"—and thus reinstatement to lost positions—to those with sincere religious objections to COVID vaccination, including the terminated plaintiffs still residing in New York. Because the CMS Mandate is clearly preemptive of Rule 2.61, it warrants temporary and preliminary relief even under the Second Circuit's November 4th opinion, which the Court was at pains to note was not a decision on the ultimate merits of plaintiffs' claims.

Second, if Plaintiffs fail to obtain an injunction on the renewed motion, they would proceed to permanent injunction proceedings—as contemplated by the Second Circuit—under both the First Amendment and Supremacy Clause prongs of their Complaint. Plaintiffs would seek limited, expedited (30 days) discovery on the factual issues left open for development by the Second Circuit, noted above.

Again, accordingly, Plaintiffs strongly oppose any effort by Defendants to move immediately to dismiss the Complaint.

We thank Your Honor for the Court's time and attention to this matter.

Respectfully submitted,

| | |
|---|---|
| s/Michael G. McHale | s/Christopher A. Ferrara |
| Michael G. McHale, Esq. | Christopher A. Ferrara, Esq. |
| (N.D.N.Y. Bar No. 701887) | (N.D.N.Y. Bar No. 51198) |
| THOMAS MORE SOCIETY | THOMAS MORE SOCIETY |
| Counsel | Special Counsel |
| 10506 Burt Circle, Ste. 110 | 148-29 Cross Island Parkway |
| Omaha, NE 68114 | Whitestone, Queens, New York  11357 |
| Telephone: 402-501-8586 | Telephone: 718-357-1040 |
| mmchale@thomasmoresociety.org | cferrara@thomasmoresociety.org |

c: All counsel of record (via ECF)