## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DR. A., NURSE A., DR. C., NURSE D., DR. F., DR. G, THERAPIST I., DR. J., NURSE J., DR. M., NURSE N., DR. O., DR. P.,  DR. S., NURSE S.** and **PHYSICIAN LIAISON X.**, <br><br> Plaintiffs, <br><br> v. <br><br> **KATHY HOCHUL**, Governor of the State of New York, in her official capacity; **MARY T. BASSETT**, Commissioner of the New York State Department of Health, in her official capacity; and **LETITIA JAMES**, Attorney General of the State of New York, in her official capacity, <br><br> Defendants. | Case  No. 1:21-cv-1009 (DNH) (ML) |

## FIRST AMENDED VERIFIED COMPLAINT

The remaining Plaintiffs herein[1], proceeding under pseudonyms[2], complain of the Defendants as follows:

## NATURE OF ACTION

1. This action seeks injunctive and declaratory relief from a New York State Department of Health ("DOH") regulation ("Rule 2.61"), promulgated August 26, 2021, that purports to nullify Title VII and a recently promulgated regulation of the federal Department of Health and Human Services (HHS) ("the CMS Mandate"), upheld by the United States

---

[1] Technologist P, who moved to FL after her termination, has elected not to continue in the lawsuit.

[2] Plaintiffs were granted leave to proceed pseudonymously by this Court's Order dated October 12, 2021, ECF No. 22.

Supreme Court, which, like Title VII, requires a process for considering employee requests for exemptions from COVID-19 vaccine mandates based on federal law, including exemptions for "sincerely held **religious beliefs**…" pursuant to "Title VII…" 86 Fed. Reg. 61555, 61572 (2021).

2.   This action also seeks declaratory and injunctive relief against a New York State policy, announced by defendant Governor Hochul, denying unemployment benefits to those healthcare professionals, including plaintiffs, whose employment is terminated on account of their refusal to be injected with COVID-19 vaccines under Rule 2.61.

3.   Rule 2.61, promulgated almost three months after the former Governor of New York **ended** the COVID-related "state disaster emergency" and rescinded all his pertinent executive orders, negates even the protection for sincere religious beliefs in a prior DOH regulation promulgated only days before, when the former Governor was still in office.

## JURISDICTION AND VENUE

4.   This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under federal statutory laws, namely 42 U.S.C. § 1985(3) and 42 U.S.C. § 2000e-2.

5.   This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because two of the defendants reside in this District and a  substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

6.   This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, implemented through Rule 57 of the Federal Rules of CivilProcedure.

7.  This Court is authorized to grant Plaintiffs' prayer for temporary, preliminary, and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of CivilProcedure.

8.  This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## THE PARTIES

### Plaintiffs

9.   As more particularly alleged below, the plaintiffs herein are medical professionals whose sincere religious beliefs compel them to refuse vaccination with the available COVID-19 vaccines, all of which employ aborted fetus cell lines in their testing, development, or production.

10.  All the plaintiffs are or were employed by entities with 15 or more employees covered by Title VII, which mandates reasonable accommodation of sincere religious beliefs by **exemption** from COVID-19 vaccination unless exemption would pose an undue hardship to the employer.

11.  Eight of the sixteen remaining plaintiffs reside and work in this District, while the others reside and/or work variously in the Southern, Eastern and Western Districts.

12.   All plaintiffs are or were employed by, or associated with for purposes of admitting privileges, hospitals or other entities that receive Medicare or Medicaid funding. All plaintiffs are thus covered by the CMS Mandate recently upheld by the United States Supreme Court, mandating a process for employer consideration of religious exemption from COVID-19 vaccination in keeping with the requirements of Title VII, as more particularly pleaded below.

### Defendants

13.  Defendant Kathy Hochul ("Hochul") is Governor of the State of New York who, as

the State's chief executive, is responsible for the execution of its laws and regulations, including the challenged Rule 2.61 and the related unemployment benefit disqualification policy, and for approval of all executive branch policies and directives, including those of the DOH pertaining to Rule 2.61 and New York State Department of Labor's "guidance" pertaining to disqualification of vaccine recusants from unemployment benefits. At all pertinent times Hochul has acted and will act under color of state law. Defendant Hochul's principal place of business is located at the State Capitol Building, Albany, New York.  She is sued in her official capacity.

14. Defendant Mary T. Bassett ("Bassett") is Commissioner of Health for the DOH. She is responsible for the promulgation of rules and guidance documents regarding enforcement of the challenged Rule 2.61, issued by her predecessor, Howard Zucker.  At all pertinent times Bassett has acted and will act under color of state law.  Defendant Bassett's principal place of business is located at 3959 Broadway, New York, NY 10032. She is sued in her official capacity.

15. Defendant Letitia James ("James") is the Attorney General for the State of New York, the State's highest-ranking law enforcement officer charged with overall supervision of the enforcement of the challenged Rule 2.61 and other laws of the State of New York.  At all times relevant to this Complaint, James is and was acting under color of State law. Defendant James' principal place of business is located at the State Capitol Building, Albany, New York. She is sued in her official capacity.

## BACKGROUND

"*No one should be forced to be vaccinated against their will* both because of *the constitutional right to refuse treatment*, and pragmatically because forced vaccination will deter at least some people from seeking medical help when they need it."

4

"Following this flawed logic, several state-based proposals have sought to address any 'public health emergency,' … [by] resort[ing] to *punitive, police-state tactics*, such as forced examinations*, vaccination* and treatment, and criminal sanctions for those individuals who did not follow the rules."

-The American Civil Liberties Union in 2008
(before it became the Anti-Civil Liberties Union)

### The Cuomo Administration and the
### "Public Health Emergency" Come to an End

16.  On August 23, 2021, the People of the State of New York were definitively rescued from the nearly eighteen-month-long medical dictatorship of ex-Governor Cuomo, who resigned in disgrace and forfeited the Emmy Award for his press conference "performances" as the savior of New York from the coronavirus.[3]

17. The legacy of Cuomo's medical dictatorship was the second highest COVID death rate per 100,000 in the country at the time of his resignation—with New Jersey then in first place under the equally draconian and still-ongoing medical dictatorship of Governor Murphy.[4] The official concealment of the 15,000 COVID deaths caused by Cuomo's order to return COVID-positive patients to nursing homes after their discharge from the hospital led to state and federal investigations, both of which have been dropped since the original Complaint was filed.[5]

---

[3] *See* Nick Niedzwiaek, "Cuomo Loses Emmy following scandal, resignation," POLITICO, August 24, 2021, https://www.politico.com/states/new-york/albany/story/2021/08/24/cuomo-loses-emmy-following-scandal-resignation-1390423.

[4] *See* https://www.statista.com/statistics/1109011/coronavirus-covid19-death-rates-us-by-state/. New York has since then "improved" to only the seventh-worst death rate in the nation—substantially worse than 18th place Florida, which has no vaccine mandate and has prohibited vaccine mandates by law.

[5] *See* Michael Gold and Ed Shanahan, "What We Know About Cuomo's Nursing Home Scandal," August 4, 2021, https://www.nytimes.com/article/andrew-cuomo-nursing-home-deaths.html

18.    On June 25, 2021, two months before his last day in office, Cuomo finally rescinded his declaration of a "State disaster emergency"—fifteen months after it was issued—along with all the executive orders that followed. There was no longer a public health emergency in the State of New York.  Despite the incessant media fearmongering over the "Delta variant" and now the "Omicron variant," on January 26, 2022, only 229 deaths out of a state population of almost 20,000,000 could be attributed (however loosely) to the virus.[6]

### Rule 2.61
### Supersedes the Prior Health Order

19.    The end of the Cuomo administration, however, was not accompanied by any institutional awareness of the failure of his policies to improve the lot of New Yorkers during the pandemic as compared to virtually every other State in the Union.  On the contrary, Defendant Health Commissioner, Howard A. Zucker, and Cuomo's successor as Governor, Defendant Hochul, continued to behave as if the "disaster emergency" had never ended—and never will end.

20.    Solely on the pretext of what the DOH's Public Health and Health Planning Council ("the Health Council") deemed at the time "a concerning national trend of increasing circulation of the SARS-CoV-2 Delta variant," Zucker and the DOH, with the assistance of defendant Attorney General Letitia James and the approval of Hochul as the State's chief executive, began enforcing the Health Council's proposed COVID-19 "emergency" regulation on August 26, 2021, over five months ago.

21.    Rule 2.61 orders the COVID-19 vaccination of the "personnel" of all "covered entities" in the field of medical and health services, including the Plaintiffs and all the hospitals, clinics, or private practices with which they are or were associated.  *See* **Exhibit A** to this

---

[6] *See* https://www.worldometers.info/coronavirus/usa/new-york/.

Complaint and NYCRR, Title 10, Part 2, § 2.61.

22.   Rule 2.61 excludes any religious exemption from COVID-19 vaccination but permits medical exemptions.  Yet, only days before, the superseded Public Health Order issued in the waning days of the Cuomo administration (the "prior Health Order")—one of the few things he got right—provided a broad and indeed constitutionally required religious exemption:

> Religious exemption. Covered entities *shall grant a religious exemption* for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the employer. Covered entities shall document such exemptions and such reasonable accommodations in personnel records or other appropriate records in accordance with applicable privacy laws by September 27, 2021, and continuously, as needed, thereafter.

*See* **Exhibit B** to this Complaint (emphasis added).

23.   Rule 2.61 declares that "Covered entities shall *continuously* require personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021 for general hospitals and nursing homes, and by October 7, 2021 for other covered entities absent receipt of an exemption."  Mandate at 2.61 (c) (emphasis added).

24.   Ominously enough, by "continuously… fully vaccinated" Rule 2.61 contemplates however many "booster shots" of COVID vaccine federal and state health bureaucrats demand: "'Fully vaccinated,' for the purposes of this section, shall be determined by the Department in accordance with applicable federal guidelines and recommendations." *Id*. at § 3.

25.   As more particularly pleaded below, as the COVID vaccines manifestly fail to achieve **the only stated purpose** of Rule 2.61—"Prevention of COVID-19 transmission by covered entities"—the DOH is now indeed demanding a "booster" shot as a condition of employment in the New York State health care sector, also under penalty of termination and ineligibility for unemployment benefits.

7

26.   In Israel, where COVID vaccines failed massively to "contain the virus," government health advisors have announced that "fully vaccinated" should now mean *four* shots.[7]

27. The failure of the COVID vaccines to "contain the virus," particularly the currently dominant Omicron variant, is now a worldwide phenomenon.  *See* **Supporting Declaration of Richard Scott French, M.D., ¶¶ 17-57** ("French Decl.")

28.   As pleaded more particularly below, Rule 2.61 purports to override federal protections under Title VII, commanding employers to deny religious exemptions based on sincere religious objections to vaccination—a blatant violation of the Supremacy Clause as well as the Free Exercise Clause.

29.   As more particularly pleaded below, Rule 2.61 is also in direct conflict with the CMS Mandate, recently upheld by the Supreme Court, under which there must be a process for considering requests for religious exemption from COVID vaccination consistently with Title VII.

30.   Days after the prior Health Order declared "Covered entities *shall* grant a religious exemption" in recognition of federal and state law, Rule 2.61 effectively declared that "covered entitles **shall not** grant a religious exemption.  The targeting of religious objectors to mandatory vaccination among health professionals, who are very knowledgeable on this subject—and comprise least 20% of the healthcare workforce in New York[8]—is plainly evident. Yet any college student is entitled to a religious exemption from a panoply of other

---

[7] "Israeli experts recommend offering a fourth vaccine dose to people age 18 and over," Isabel Kershner, New York Times, January 25, 2022, available at https://www.nytimes.com/2022/01/25/world/europe/israel-fourth-covid-dose.html

[8] *See* letter to defendants Zucker and Hochul from numerous members of the State Assembly at https://www.scribd.com/document/523955400/COVID-Vaccination-Letter#from_embed.

vaccinations if "he/she objects to immunization due to his/her religious beliefs." *See* Public Health Law § 2165.

**Plaintiffs' Common Religious Beliefs Opposing
Compulsory COVID-19 Vaccination**

31. The following allegations detail Plaintiffs' sincere religious conviction that they cannot consent to be inoculated, "continuously" or otherwise, with vaccines that were tested, developed or produced with fetal cells line derived from procured abortions, and the drastic consequences they now face absent emergency injunctive relief.

32. The sixteen remaining plaintiffs in this action—practicing doctors, M.D.s fulfilling their residency requirement, nurses, a certified brain injury specialist, and a physician's liaison—are united in their conscientious religious objection as Christians to being inoculated at all, much less "continuously," with any of the available COVID-19 vaccines because they all employ fetal cell lines derived from procured abortion in testing, development or production of the vaccines. In particular:

- Johnson & Johnson/Janssen: Fetal cell cultures are used to produce and manufacture the J&J COVID-19 vaccine and the final formulation of this vaccine includes residual amounts of the fetal host cell proteins (≤0.15 mcg) and/or host cell DNA (≤3 ng).

- Pfizer/BioNTech: The HEK-293 abortion-related cell line was used in research related to the development of the Pfizer COVID-19 vaccine.

- Moderna/NIAID: Aborted fetal cell lines were used in both the development and testing of Moderna's COVID-19 vaccine.

33. Plaintiffs hold in common the following sincere religious beliefs concerning abortion-connected vaccines:

a) They oppose abortion under any circumstances, as they believe that abortion is the intrinsically evil killing of an innocent child, and thus they also oppose

the use of abortion-derived fetal cell lines for medical purposes and abortion-derived fetal stem cell research.

b) It would be a violation of their deeply held religious beliefs and moral consciences to take any of the available COVID-19 vaccines given their use of abortion-derived fetal cell lines in testing, development, or production.

c) By receiving one of the COVID vaccines currently available, all of which are abortion-connected, they believe they would be cooperating with the evil of abortion in a manner that violates their consciences and that they would sin gravely if they acted against their consciences by taking any of these vaccines.

d) They agree with the teaching of spiritual leaders, including certain Catholic bishops, who urge Christians to refuse said vaccines to avoid cooperation in abortion and to bear witness against it without compromise, and who defend the right to a religious exemption from vaccination with such vaccines.

e) They do not accept the opinion—expressed by certain other Catholic bishops, the Pope included—that there is a therapeutically proportional reason to resort to abortion-connected vaccines which can justify "remote" cooperation in abortion. They reject as a matter of religious conviction *any* medical cooperation in abortion, no matter how "remote."[9]

f) They believe in the primacy of conscience in this matter. While one may personally conclude that recourse to abortion-connected vaccines can be justified in his or her case, vaccination is not morally obligatory and *must* be

---

[9] *See*, Exhibit C (collecting statements of Catholic prelates, who call for conscientious abstention from abortion-connected vaccines).

voluntary, and those who in conscience refuse vaccination need only take other protective measures to avoid spreading the virus.[10]

g) Although they are not "anti-vaxxers" who oppose all vaccines, they believe as a matter of religious conviction that the ensouled human person, made in the image and likeness of God, is inviolable as a temple of the Holy Ghost and that civil authorities have no right to *force* anyone to be medicated or vaccinated against his or her will, whether or not the medication or vaccine is abortion-connected.

h) A risk-benefit analysis factors into each person's formulation of a conscientious religious position on the morality of vaccinations.[11] Plaintiffs are all aware of the vaccines' side effects, which can be quite serious, their fading efficacy, requiring "booster shots," their evident inability to prevent transmission or infection,[12] and the fact that natural immunity is likely more protective than injections with the available COVID-19 vaccines.[13] These medical facts inform Plaintiffs' religious conviction against involuntary or coerced vaccination as an invasion of bodily autonomy contrary to their religious beliefs. Defendants have already mandated at least one "booster

---

[10]  *See,* "Note on the Morality of Using Some Anti-COVID-19 Vaccines," https://www.vatican.va/roman_curia/congregations/cfaith/documents/rc_con_cfaith_doc_20201221_nota-vaccini-anticovid_en.html.

[11] *See*, "A Letter from the Colorado Bishops on COVID-19 Rule 2.61s," August 5, 2021 at https://cocatholicconference.org/a-letter-from-the-bishops-on-covid-19-vaccine-mandates/.

[12] On August 5, 2021, during a CNN interview, CDC Director Rochelle Walensky stated that because of the new spread of the delta variant, "what [the COVID vaccines] can't do anymore is *prevent transmission*," (emphasis added), http://www.cnn.com/TRANSCRIPTS/2108/05/sitroom.02.html; *see also* Exhibit D (reproducing transcript of this interview).

[13] *See*, Exhibit E (on the science pertaining to natural versus vaccine-induced immunity).

shot."[14] Given that Rule 2.61 requires that employers ensure that employees are "continuously" "fully vaccinated"—as many times as the government advises—Plaintiffs now reasonably fear that additional "booster shots" of the same vaccines they consider immoral will soon be demanded by the government as a condition of employment and even normal life in society, as is already the case with the original vaccines.

**The Preliminary Injunction**

34.   Because of Rule 2.61, all Plaintiffs herein were facing irreparable harm in the form of loss of employment and career path (as to the medical resident plaintiffs "Dr. M." and "Dr. P."), admitting privileges (as to the doctor plaintiffs) and damage to professional standing because of their conscientious religious refusal to be vaccinated with one of the COVID-19 vaccines as shown in the original Verified Complaint. *See* ECF No. 1 at ¶¶ 38-191.  Plaintiffs' circumstances—then and now—are repleaded or newly pleaded below.

35.   Based on Plaintiffs' claims under the Free Exercise Clause and the Supremacy Clause (respecting Title VII's direct conflict with Rule 2.61), this Court granted a TRO barring enforcement of the Mandate (ECF No. 7), followed by a preliminary injunction on October 12, 2021 (ECF No. 22).  Plaintiffs' motion to proceed pseudonymously was also granted.

36.   On account of the preliminary injunction, Plaintiffs were either granted religious exemptions from vaccination, had prior exemptions (revoked on account of Rule 2.61) restored,

---

[14]   *See*   https://covid19vaccine.health.ny.gov/information-healthcare-workers-new-york-states-covid-19-new-booster-dose-requirement-frequently  (requiring that "all healthcare facilities regulated by New York State must require personnel to receive a COVID-19 booster dose or supplemental dose as recommended by the CDC, on top of the primary series of a COVID-19 vaccine").

or were placed on interim status pending the final outcome of these proceedings, a de facto exemption, as more particularly pleaded below.

### Defendant Hochul's Religious Crusade for Vaccination

37.   After this Court granted the preliminary injunction, Defendant Hochul publicly condemned religious objectors for rejecting "what God wants" and failing to be "true believers" who say "thank you, God" for the COVID vaccine "[t]hat is from God to us." In September 2021, she spoke at two church services in Brooklyn and Harlem, explaining: "[God] made them come up with a vaccine. That is from God to us and we must say, thank you, God."[15] She added "[a]ll of you, yes, I know you're vaccinated, you're the smart ones, but you know there's people out there **who aren't listening to God and what God wants**. **You know who they are**. I need you to be my apostles."[16]   (By declaring "you know who they are," Hochul incited harassment of ungodly vaccine recusants by godly vaccine recipients, further justifying Plaintiffs' granted request to proceed pseudonymously.)

38.   As Hochul told another congregation: "How can you believe that God would give a vaccine that would cause you harm? That is not the truth. Those are just lies out there on social media. **And all of you, have to be not just the true believers, but our apostles to go out there and spread the word** that we can get out of this once and for all, if everybody gets vaccinated."[17]   New York did not "get out of this" by vaccination, as the vaccinations have failed to prevent viral spread.  *See* **French. Decl.   ¶¶ 35-37.**

---

[15] N.Y. State Governor's Office, *Rush Transcript: Governor Hochul Attends Service at Christian Cultural Center* (Sept. 26, 2021), https://perma.cc/KP48-4YVK.
[16] *Ibid.*
[17] N.Y. State Governor's Office, *Video, Audio, Photos & Rush Transcript: Governor Hochul Attends Services at Abyssinian Baptist* Church in Harlem (Sept. 12, 2021), https://perma.cc/PV76-EWAZ.

39.    Additionally, after Plaintiffs' commenced this action on September 13, 2021, and obtained a TRO the following day, Governor Hochul announced the aforementioned policy eliminating unemployment benefits for those who are terminated for refusing to receive COVID-19 vaccination, even if their refusal is grounded in religious opposition.[18]

40.    Never in the history of public health policy has a political leader made such statements or imposed an unemployment benefits disqualification in order to coerce vaccination, which indicates the level of fanaticism that gave rise to Rule 2.61 and its abrupt stripping away of the prior Health Order's provision for religious exemption.

**CHANGED FACTUAL AND LEGAL CIRCUMSTANCES**

41.    Since the grant of the preliminary injunction, the factual and legal circumstances of this case, including the status of Plaintiffs' employment, have undergone dramatic change.

**The Second Circuit's Vacatur of the Preliminary Injunction**

42.    On October 29, 2021, the U.S. Court of Appeals for the Second Circuit vacated this Court's preliminary injunction against Rule 2.61's refusal to authorize religious exemptions from New York's healthcare COVID-19 Rule 2.61 and remanded for further proceedings consistent with its forthcoming opinion. *See We the Patriots USA, Inc. et al./Dr. A. et al., v. Hochul*, Nos. 21-2179, 21-2566 (2d Cir. Oct. 29, 2021).

43.    On November 4, 2021, the Second Circuit issued an opinion supporting its order, emphasizing that "**we do not now decide the ultimate merits of Plaintiffs' legal claims** . . . [but rather] make **a limited determination** with respect to preliminary relief based on the

---

[18] N.Y. State Governor's Office, *In Preparation for Monday Vaccination Deadline, Governor Hochul Releases Comprehensive Plan to Address Preventable Health Care Staffing Shortage*, Sept. 25, 2021, Perma | In Preparation for Monday Vaccination Deadline, Governor Hochul Releases Comprehensive Plan to Address Preventable Health Care Staffing Shortage.

**limited factual record before this Court**." *We the Patriots USA, Inc. et al. v. Hochul*, 17 F.4th 266, 273 (2d Cir. 2021) (emphasis added).

44.     The Second Circuit disagreed that Rule 2.61 is non-generally applicable under the Free Exercise Clause, in essential part because Plaintiffs were allegedly required to account for the **total** "number of people seeking exemptions" for both religious and medical reasons, in order to determine whether religious and medical exemptions are "comparable" under *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). *Id.* at 287. Thus, the Second Circuit concluded that "**[w]ith a record as undeveloped on the issue of comparability as that presented here, we cannot conclude that the above vaccination requirements are *per se* not generally applicable**." *Id.*; *see also id.* ("**The record before the district court was sparse**.") (emphasis added).

45.     The Second Circuit also disagreed that Rule 2.61 violates the Supremacy Clause because it held that Title VII of the 1964 Civil Rights Act requires the opportunity to seek only religious **accommodations**—which the Second Circuit believed available only to a limited extent, meaning essentially remote work—but that Title VII allegedly affords no opportunity to seek religious **exemptions** (which the Second Circuit deemed **categorically forbidden** by Rule 2.61).

46.     The Second Circuit also noted that as to the question of irreparable harm, "this case raises difficult, apparently unusual questions" because "it is not at all clear who would pay" lost wages, as the state has sovereign immunity and Plaintiffs' private employers are arguably shielded by Rule 2.61. *Id.* at 295.

47.     Accordingly, the Second Circuit held that "we do not place any weight on the issue of remediation of Plaintiffs' financial losses at this preliminary injunction stage," and the

"**district court can consider this issue . . . upon further factual development and findings**" at the permanent injunction stage. *Id.* (emphasis added).

48.   Finally, the Second Circuit also held the public interest and balance of harms weighed against granting a preliminary injunction, allegedly because of the "strain" imposed on healthcare workers as a result of healthcare workers becoming infected with COVID-19 and needing corresponding time off to recover. *Id.* at 296.   As more particularly pleaded below, it is now indisputable that health care workers are widely being infected with COVID and are having to leave work despite being "fully vaccinated" and that the COVID vaccine mandate has not prevented this "strain**."**

49.   **Moreover, "fully vaccinated" yet still COVID-infected healthcare workers are now returning to work in New York State,** as six of the plaintiffs attest, *infra*. Since the Second Circuit's vacatur of the preliminary injunction, the entire rationale for Rule 2.61 has thus been extinguished by facts on the ground, rendering the Rule totally irrational.

50.   Respecting the issue of the supposed "strain" on the health care system, however, the Second Circuit emphasized that "[w]hether this issue will ultimately carry any weight when the district courts decide **Plaintiffs' entitlement to a permanent injunction on remand**, **we need not and do not decide**." *Id.* (emphasis added).

**The Supreme Court's denial of emergency review
and the dissent by Justice Gorsuch**

51.   On November 12, 2021, Plaintiffs filed an emergency application in the U.S. Supreme Court seeking an injunction pending appeal under the All Writs Act, 28 U.S.C. §1651. *See Dr. A. v. Hochul*, No. 21A145.

52.   On December 13, 2021, in a non-merits decision, the Supreme Court denied Plaintiffs' emergency application by a 6-3 vote. *See Dr. A. v. Hochul*, No. 21A145 (U.S. Dec. 13, 2021).

53.   Justice Gorsuch, joined by Justice Alito, issued a 14-page dissent in which he mentioned this Court by name, *see id.*, slip op. at 5 (Gorsuch, J., dissenting) and approved this Court's Free Exercise analysis.

54.   Because denial of emergency relief is not a ruling on the merits, Justice Gorsuch, observing that "[t]oday, we do not just fail the applicants," "[w]e fail ourselves," noted that the Supreme Court's denial of emergency relief is not the last word on this matter and expressed his hope that "today's ruling **will not be the final chapter** in this grim story." *Id*. at 14 (Gorsuch, J., dissenting) (emphasis added).  Accordingly, Plaintiffs will file a petition for a writ of certiorari with the U.S. Supreme Court as soon as practicable.

### Second Circuit En Banc Review

55.   On December 2, 2021, while the emergency application before the U.S. Supreme Court was still pending, Plaintiffs petitioned for rehearing and rehearing en banc with the Second Circuit to comply with the applicable deadline.

56.   On January 11, 2022—nearly one month after the Supreme Court's denial of Plaintiffs' emergency application—the Second Circuit denied Plaintiffs' petition. *See Dr. A. v. Hochul*, No. 21-2566 (2d Cir. Jan. 11, 2021) (Dkt. # 103).

### Change of Law: the CMS Mandate

57.   On November 5, 2021, the Biden Administration issued the CMS Mandate. The CMS Mandate expressly requires the availability of religious "**exemptions**," **recognizing no distinction between "exemption" and "accommodation,"** on which the Second Circuit panel

decision relied. Cf. 86 Fed. Reg. 61572 (emphasis added) (requiring that covered healthcare facilities "establish and implement a process by which staff may request an **exemption** from COVID-19 vaccination requirements based on applicable Federal law," and that "religious beliefs . . . may provide grounds for **exemption** [under] Title VII of the Civil Rights Act" (emphasis added)).

58.   On January 13, 2022, in *Biden v. Missouri*, 595 U.S. _ (Jan.   13,   2022),   Nos. 21A240, 21A241, the Supreme Court upheld the mandate by a vote of 5-to-4.

59.   The Court expressly acknowledged that for a covered healthcare facility to continue receiving Medicare and Medicaid funding, it must require COVID vaccination by staff "unless **exempt** for medical or **religious** reasons." *Biden*, 595 U.S. _, Nos. 21A240, 1A241, slip op. at 1 (emphasis added). The Supreme Court further stated "[t]he rule **requires providers to offer medical and religious exemptions**." *Id.*, slip op. at 3.[19] (emphasis added)

60.   The CMS mandate provides that "consistent with the Supremacy Clause of the Constitution, **the agency intends that this rule preempts State and local laws** to the extent the State and local laws conflict with this rule." 86 Fed Reg. 61568; *see also id.* ("We intend, **consistent with the Supremacy Clause of the United States Constitution**, that this nationwide regulation preempts inconsistent State and local laws as applied to Medicare- and Medicaid-certified providers and suppliers.") (emphasis added).

61.   As more particularly pleaded below, the CMS Mandate, by mandating the process of considering religious **exemptions,** directly preempts New York's Rule 2.61, which according

---

[19] Indeed, in defending the now-invalidated OSHA COVID-19 Rule 2.61 during oral argument earlier this month, U.S. Solicitor General Elizabeth Prelogar acknowledged that, pursuant to the OSHA Mandate's incorporation of superseding Title VII statutory law, "some people have deeply held religious beliefs and are entitled to **religious exemptions**." Supreme Court of the United States, Oral Argument Transcript, *NFIB v. Department of Labor*, *Ohio v. Department of Labor*, Nos. 21A244, 21A247, at 110:7-9 (emphasis added).

to the view of the Second Circuit "bars an employer from granting a religious **exemption**." *We the Patriots*, 17 F.4th at 292.

62.    The CMS Mandate thus provides a new and independent basis for injunctive relief that was not before the Second Circuit, permitting Plaintiffs herein to seek reinstatement of their employment or admitting privileges, as the case may be, without interference by Rule 2.61 and Defendants' attempt to continue to enforce it contrary to federal law. *See* Count IV, infra, and Memorandum of Law in Support of Plaintiffs' Second Motion for a TRO/Preliminary Injunction.

63.    Additionally, approximately two weeks after Plaintiffs filed their original Verified Complaint in this case, defendant Hochul announced that employees terminated for declining vaccination would be ineligible for unemployment insurance. While unemployment benefits are generally "reviewed on a case-by-case basis," COVID-vaccination holdouts are categorically "ineligible" for such benefits. *See* N.Y. State Governor's Office, *Governor Hochul Releases Comprehensive Plan to Address Preventable Health Care Staffing Shortage* (Sept. 25, 2021), [Perma | In Preparation for Monday Vaccination Deadline, Governor Hochul Releases Comprehensive Plan to Address Preventable Health Care Staffing Shortage](#).

64.    This policy evidences defendant Hochul's crusade against COVID vaccine religious objectors and is the basis for a new First Amendment claim, not before the Second Circuit.

**Changed Factual Circumstances**

65.    The facts that have emerged over the past three months show that Rule 2.61 is utterly ineffective, manifestly counterproductive, and patently irrational.

66.    Having provoked the firing of 37,000 healthcare workers in the state who declined to be coerced into vaccination Governor Hochul has now acknowledged there is a statewide crisis in

19

in healthcare staffing.[20]

67.    Religious exemptions would obviously help to ameliorate this crisis, but defendant Hochul, as pleaded below, **prefers to return COVID-infected yet "fully vaccinated" and "boosted" staffers to the workplace**.

68.    Rule 2.61 is a major cause of the healthcare staffing crisis defendant Hochul herself has instigated by demanding the mass firing of unvaccinated "front line heroes" who suddenly became disease-spreading pariahs, while in fact it is the "fully vaccinated" and "boosted" who are spreading the virus the covered facilities.

69.    Further, the prevailing science now shows that COVID-19 vaccination does not prevent healthcare workers from getting or transmitting the virus.  As the Omicron variant is now the dominant COVID variant throughout the country (including New York[21]), it has become a matter of public knowledge that Omicron spreads rampantly even among the vaccinated. *See* **French Decl., ¶¶ 17-56.**

70.    It is now widely acknowledged that current COVID vaccination cocktails are wholly ineffective at preventing infection or transmission of the virus—the very problems that force healthcare workers to quarantine and exacerbate the staffing crisis, *and* that supposedly necessitated the firing of all unvaccinated healthcare workers in New York (even assuming,

---

[20]   *See*   https://www.nytimes.com/2021/12/13/us/politics/supreme-court-vaccine-mandate-new-york-healthcare.html.

[21]   *See, e.g.*, Emily Davenport, "New Health Department report finds that Omicron became NYC's   dominant   variant   in   just   five   weeks,"   amNY,   Jan.   14,   2022, https://www.amny.com/lifestyle/health/coronavirus/new-health-department-report-finds-that-omicron-became-nycs-dominant-variant-in-just-five-weeks/.

arguendo, COVID vaccination still helps reduce the severity of infection).[22]  *See* **French Decl., ¶¶ 18-28**.

71.    On January 15, 2022, the CEO of Pfizer, Albert Bourla, acknowledged that "We know that the two doses of the vaccine **have very limited protection, if any**…The three doses, with the booster, offer reasonable protection against hospitalization."  Bourla failed to define "reasonable protection" and did not deny that even three-shot cocktails are not preventing infection and transmission and thus the same staff quarantines that firing unvaccinated workers was supposed to avoid.[23]

72.    On January 11, 2002 even Bill Gates acknowledged that COVID vaccines "are missing two key things…  First, they still allow infections ('breakthrough') and [Second] the duration appears to be limited. **We need vaccines that prevent re-infection have many years of duration**."[24]  In other words, "we" need actual vaccines.

73.    Given the evident failure of COVID vaccines to confer immunity from infection or prevent viral transmission, merely allowing healthcare facilities to consider religious exemptions pursuant to their explicit obligations under the CMS Mandate would not harm public health, but rather would promote it.

74.    Accordingly, in recognition of the reality that COVID vaccines do not prevent transmission of the virus, that the Omicron variant is spreading among the vaccinated and the unvaccinated alike, and that healthcare workers infected with the virus cannot be excluded from

---

[22] *See, e.g.*, WION News, "'Omicron strain infecting vaccinated,' WHO issues warning on Covid-19 variant," Dec. 21, 2021, https://www.youtube.com/watch?v=iVPTdibFhN8 (emphasis added).

[23] *Cf.* https://www.ncregister.com/blog/pfizer-and-the-vatican

[24] @BillGates (Verified Account), Twitter.com, Jan. 11, 2022, 12:20 p.m., https://twitter.com/BillGates/status/1480967846607736832 (emphasis added).

medical facilities without causing a staffing crisis, the CDC has recently announced the above-mentioned new guidance to address COVID-related staffing shortages.

75.    Under the new CDC guidance, not  only vaccinated healthcare workers infected with the virus but **even unvaccinated healthcare workers may return to work and continue to provide patient services**: five days after being infected if the employer is in a "contingency" situation (as long as the infected personnel are asymptomatic or mildly symptomatic), or **anytime**, **even with symptoms**, if the employer is in a "crisis" situation and prioritizes asymptomatic and "mildly symptomatic" workers over others.[25]

76.    After Rule 2.61 caused 37,000 healthcare workers, including plaintiffs, to lose their jobs because they would not submit to forced vaccination, on January 5, 2022, Governor Hochul announced an unprecedented program of direct payments to New York healthcare workers, including $3,000 retention payments to full-time healthcare staff, in order to "stop the current the current hemorrhaging of healthcare workers."[26] Governor Hochul is also pursuing legislation to allow doctors and nurses to relocate to New York from out of state while using their existing licenses.[27]

77.    Governor Hochul is evidently incapable of admitting the folly of gratuitously firing 37,000 health care workers for refusing to be injected with a vaccine that has not even prevented transmission of COVID-19—again, the only stated rationale for Rule 2.61, as its very title shows.

### Amendment of Rule 2.61 to Mandate "Booster" Shots

---

[25] https://www.cdc.gov/coronavirus/2019-ncov/hcp/guidance-risk-assesment-hcp.html.

[26] Governor Kathy Hochul, "Governor Hochul Announces Direct Payments to Healthcare Workers as Part of $10 Billion Healthcare Plan," Jan. 5, 2022, https://www.governor.ny.gov/news/governor-hochul-announces-direct-payments-healthcare-workers-part-10-billion-healthcare-plan.

[27] *Id.*

78.    Ignoring all science and facts to the contrary, Hochul is pressing ahead with enforcement of the useless and obviously counterproductive Rule 2.61, which now directly contradicts both the CMS mandate and the CDC's guidance, as well as Title VII.

79.    On January 21, 2022 and effective immediately, the New York State Department of Health amended Rule 2.61 to provide, pursuant to its requirement of "continuous" vaccination, a "booster" shot of the same vaccines that are not preventing transmission or infection: "Covered entities shall continuously require personnel to be fully vaccinated against COVID-19, and to have received **any booster or supplemental dose as recommended by the CDC**, absent receipt of a medical exemption." *See* **Exhibit A hereto** (emphasis added). There is apparently no limit under Rule 2.61 to the number of shots State of New York may seek to compel "as recommended by the CDC" under threat of loss of employment and professional standing.

80.    Given these factual developments, it is now all but indisputable that not only does the public interest not support Rule 2.61's denial of all religious exemptions in direct conflict with federal law, but that the public interest is harmed by the Rule as vulnerable patients across New York State go without sufficient healthcare as a result of Governor Hochul's crusade against the "unvaxed."

81.    At the same time, "fully vaccinated" health care workers are contracting COVID all over the state, and the CDC is advising that COVID-19 infected health care workers, **both vaccinated and unvaccinated**, can return to work to address a staffing crisis. In short, Rule 2.61 has proven to be a total debacle.

82.    The new factual and legal landscape favor injunctive relief for Plaintiffs pursuant to the CMS mandate, and ultimately favor permanent injunctive relief as to all claims on a more

developed record, as explicitly allowed by the Second Circuit, which was at pains to note the limited scope of its opinion at the preliminary stage of these proceedings.

## Plaintiffs' Individual Circumstances

83.    All sixteen remaining plaintiffs remain unconstitutionally aggrieved by Rule 2.61's violation of Title VII's and the CMS mandate's requirement of employer consideration of reasonable requests for religious exemption from vaccination, as well as their fundamental right to the free exercise of religion under the First Amendment, as aptly explained by this Court and Justice Gorsuch's opinions on October 14 and December 13, 2021, respectively.

84.    Before the Second Circuit vacated this Court's injunction, Plaintiffs had been granted or restored religious exemptions by their employers or were placed on interim status pending the final outcome of these proceedings. *See Appellees' Brief* in 21-2566, Doc. 38, Br. at 33 (citing A 211).

85.    Since the Second Circuit's vacatur on October 29, 2021, however, every Plaintiff except one (who received a medical exemption) has suffered termination or forced resignation by the employer.  The circumstances of each Plaintiff, both as originally pleaded and currently, are more particularly pleaded anew as follows.

## Plaintiff "Dr. A."

86.    Plaintiff A., M.D. ("Dr. A."), who is Catholic, is a board-certified Anatomic and Clinical Pathologist on staff at a private hospital in the Northern District, where he performs pathology testing and diagnosis under contract with the hospital.

87.    On August 12, 2021, Dr. A., who sought a religious exemption from COVID vaccination based on the religious beliefs enumerated in ¶ 37 (a)-(h), was informed by the hospital administration via email that the hospital would be mandating COVID-19 vaccination

for all employees and medical staff members who provide on-site care. Unvaccinated staff members could refuse the vaccine without penalty but would be required to undergo weekly testing.

88.   This policy changed on or about August 20, 2021, due to the DOH's issuance of the prior Health Order, which eliminated testing in lieu of vaccination but did allow both medical and religious exemptions.

89.   On August 27, 2021, however, the hospital policy changed again after DOH issued the Rule 2.61, removing the religious exemption provision under the prior Health Order.

90.    Knowing that religious exemptions had been banned by the DOH, on August 31, 2021, Dr. A. sent the hospital administration the required form for a medical exemption instead, which was ultimately denied.

91.   Dr. A. was granted a religious exemption after this Court's preliminary injunction was issued, only to see the exemption revoked November 22, 2021, after the injunction was vacated by the Second Circuit.

92.   On November 22, 2021, Dr. A's medical staff privileges at the hospital with which he is affiliated and his employment by the private practice group in which he was a partner were suspended, after which they were terminated.

93.   The loss of medical staff privileges has also resulted in the loss of Dr. A.'s partnership in his private practice group under the terms of the partnership agreement, causing him to lose millions of dollars in potential income over the remainder of his career until retirement.

94.   Dr. A.'s career and livelihood have been destroyed solely on account of his religious objection to COVID-19 vaccination.

25

95.    Since then, Dr. A. has been informed that several members of the staff at his former practice came down with COVID despite being "fully vaccinated" and had to miss work.

96.    Given the suspension and termination of his hospital privileges, which will have to be reported on license renewal filings, Dr. A. is at risk of disciplinary charges by the DOH that could result in loss or suspension of his license or other disciplinary action.

97.    The loss of his position and staff privileges at the hospital make it impossible for Dr. A. to conduct his practice and has rendered him unemployable anywhere in the State of New York as no other hospital would place him on staff under Rule 2.61.

98.    Because of his religious convictions concerning COVID-19 vaccination, Dr. A. has suffered, and will continue to suffer, irreparable harm to his occupation, reputation, and professional standing in the absence of injunctive relief barring enforcement of Rule 2.61.

99.    In addition to any other relief, as pleaded below, Dr. A. now seeks injunctive relief pursuant to the CMS Mandate in order to seek reinstatement of his medical staff privileges and, with this, a restoration of his partnership status.  He also reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

### Plaintiff "Nurse A."

100.  Plaintiff A., R.N. ("Nurse A."), who is Catholic, is a registered nurse, licensed in the State of New York, who works in a major medical center in the Southern District.

101.  Nurse A. has cared for numerous dialysis patients with COVID during the pandemic without need of vaccination.

102.  Under the prior Health Order, on August 20, 2021, Nurse A. received a religious exemption from COVID vaccination from her hospital, based on the religious beliefs enumerated above.

103.  On August 30, 2021, however, Nurse A. received an email revoking her religious exemption because of Rule 2.61, which email stated that her hospital "must follow NYS DOH requirements as they evolve.  This means that [the hospital] can no longer consider any religious exemptions to the COVID vaccination **even those previously approved**."

104.  Said email further warned that "employees who do not comply with the vaccination program by the deadlines above will be placed off duty for seven days without pay and given those seven days to meet the program requirements. Employees who choose not to meet the program requirements after seven days will be deemed to have opted to resign."

105.  Under threat of termination, Nurse A. submitted to injection with the Johnson & Johnson vaccine on November 20, 2021.  But she has since been informed that under Rule 2.61 as amended, she must now have a "booster" shot as a condition of continued employment, with a deadline of the first week of February.

106.  **Meanwhile, around 40% of the "fully vaccinated" staff at Nurse A.'s hospital has contracted COVID and lost time from work due to symptoms and/or the required quarantine**, which was two weeks and then was reduced to five days. Those who contracted COVID despite vaccination included a "triple-vaxxed" supervisor who tested positive and had to be sent home for a five-day quarantine.  COVID vaccination has done nothing to prevent a staffing crisis at Nurse A.'s hospital.

107.  Under the new CDC guidance noted above, in the event of a staffing crisis both vaccinated and unvaccinated health care workers infected with COVID can return to work, **even if symptomatic**.  Despite the now-pointless Rule 2.61, Nurse A.'s hospital **has been allowing COVID-infected yet "fully vaccinated" staff to return to work** five days after testing positive if they are without fever or "other major symptoms," according to the hospital's written policy

statement, which reflects the reality of the vaccines' failure—and Rule 2.61's failure—to prevent widespread COVID infection and transmission among healthcare professionals.

108.  Under Rule 2.61 the full CDC guidance is being ignored for the sake of Defendant Hochul's vaccination crusade, so that "**fully vaccinated" yet still COVID-infected nurses can return to work, but not non-infected, unvaccinated nurses**, even though the CDC guidance allows for their return to alleviate a staffing crisis.

109.  Nurse A. does not want to be coerced again into acting contrary to her religion by being forced to take a "booster" shot she believes will no more prevent her from contracting COVID than the original vaccination and has the potential to cause her serious harm.  *See* **French Decl., ¶¶ 31-40.**

110.  Termination of Nurse A.'s employment for failing to be "boosted" would be devastating to her and her family. Nurse A. would also be unemployable anywhere in the State of New York as no other hospital would hire her under Rule 2.61.

111.  Nurse A.'s termination for failure to be "boosted" would have to be reported at the time of license renewal and could well trigger disciplinary proceedings against her.  There is also the threat that the DOH or the Department of Education (DOE), which oversees licensure of nurses, will make COVID-19 vaccination, including any and all "boosters," a condition of license renewal to further coerce compliance.

112.  Nurse A. has already suffered irreparable harm from violation of her religious beliefs under coercion, and still faces the threat of imminent irreparable harm if she declines to be injected yet again with a "booster" shot of an abortion-connected vaccine she does not want, does not need, could cause her harm, and is contrary to her religion.

113. In addition to any other relief, as pleaded below, Nurse A. now seeks injunctive relief pursuant to the CMS Mandate to protect her from coerced "booster" vaccination. She further reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

## Plaintiff "Dr. C."

114. Plaintiff Dr. C., M.D. ("Dr. C."), who is Catholic, is a board-certified ophthalmologist who is an attending physician with admitting privileges at a private hospital in the Northern District, and he also directs a large private surgical practice in which he is a partner.

115. During 2020, Dr. C.'s large practice group performed almost 10,000 surgeries without a single case or outbreak of COVID-19 traceable to his practice and without vaccination of anyone on staff.

116. Prior to Rule 2.61, religious exemption and periodic testing in lieu of vaccination were allowed under the prior Health Order that Rule 2.61 superseded, as to which exemption Plaintiff Dr. C. was in discussions with hospital management.

117. On September 7, 2021, Dr. C. requested a religious exemption from vaccination from the hospital at which he has admitting privileges, based on the beliefs enumerated in ¶ 37 (a)-(h), and he was advised that the hospital was awaiting further guidance from the DOH, which meant that he was de facto exempted until further notice.

118. Plaintiff Dr. C. was then advised by said hospital that on account of Rule 2.61 he must be COVID-vaccinated by September 27, 2021, and that there is no religious exemption, but was later advised that as of September 30, 2021 he could undergo weekly testing in lieu of vaccination, which amounted to a de facto religious exemption like that had been allowed under the prior Health Order.

119.  In October 2020, Dr. C. contracted and recovered from COVID-19 as confirmed by antibody testing, and thus has acquired natural immunity, which contraindicates COVID-19 vaccination.  *See* **French Decl., ¶¶ 58-76.**

120.  After this Court's preliminary injunction was vacated, Dr. C.'s de facto religious exemption was revoked on November 16, 2021, and he has not been able to operate on patients in his own private surgery center since November 12, 2021, after his partnership board determined that it must comply with Rule 2.61.

121.  On November 23, 2021, Dr. C.'s hospital admitting privileges were suspended and on December 31, 2021, they were deemed to have lapsed.

122.  This lapse of Dr. C.'s admitting privileges triggered a 90-day compliance period in his medical practice partnership agreement under which, unless he restored his privileges so that he could perform surgeries again, he would suffer a forced redemption of his partnership interest that would cost him millions of dollars in lost income over the remainder of his working life, none of which would be recoverable in this action due to Eleventh Amendment immunity.

123.  That period would have expired on February 21, 2022, but the partnership voted to allow Dr. C. to remain an "absent member" until "further notice." This allows him to keep his partnership shares but without partnership dividends or income from major surgery, which still means the loss of millions of dollars in income unless Rule 2.61 is enjoined or repealed.  Further, Dr. C.'s "absent member" status can be revoked at any time.

124.  Because of Rule 2.61, Dr. C. is now effectively reduced to a solo practitioner who cannot perform surgery in his former surgical center. He would have to build and obtain licensure for his own private surgical center, which he is in no position to do.

125. On January 25, 2022, Dr. C. received a letter from the hospital at which he had privileges advising that, under the above-noted amendment to Rule 2.61, he must be injected not only with two shots of a COVID-vaccine (or one shot of the Johnson & Johnson vaccine) but also a "booster" shot by February 21, 2021.

126. Dr. C. has thus suffered substantial ruin of his career because he will not consent to be injected with vaccines and "boosters" that violate his sincerely held religious convictions and do not even prevent COVID-19 transmission or infection.

127. Meanwhile, at least one employee of Dr. C.'s practice, who was both double-vaccinated and "boosted," has contracted COVID-19 with moderate to severe symptoms, further evidencing Dr. C.'s belief, which partly informs his religious abstention from vaccine, that vaccines for COVID-19 do not even accomplish the purpose of Rule 2.61: "**Prevention of COVID-19 transmission** by covered entities."

128. Dr. C. is also aware that at several hospitals in the Northern District, including the one at which he had admitting privileges, "fully vaccinated" yet COVID-infected staff are allowed to return work if they are "asymptomatic."

129. Dr. C.'s loss of privileges because of his religious abstention from COVID-19 vaccination has not only wrecked his career but will also render him unemployable by any hospital anywhere in the State of New York as no other hospital would grant him admitting or staff privileges under Rule 2.61.

130. The loss of admitting privileges for refusal to follow Rule 2.61 will have to be reported at the time of license renewal and may well trigger disciplinary proceedings against Dr. C. There is also the threat that the DOH will make COVID-19 vaccination and "boosters" a condition of license renewal in a further bid to coerce compliance.

131. Dr. C. has suffered and will continue to suffer imminent irreparable harm to his occupation, reputation, and professional standing in the absence of injunctive relief barring enforcement of Rule 2.61.

132. Dr. C. has no adequate remedy at law, and any monetary damages he has are not recoverable from defendants due to Eleventh Amendment immunity.

133.  In addition to any other relief, as pleaded below, Dr. C.  now seeks injunctive relief pursuant to the CMS Mandate in order to pursue reinstatement of his hospital admitting privileges and restoration of his full partnership status. He also reserves the right to seek permanent injunctive relief pursuant to Title VII the Free Exercise Clause.

**Plaintiff "Nurse D."**

134.  Plaintiff D., R.N. ("Nurse D."), who is Catholic, is a registered nurse, licensed in the State of New York, who works at a private hospital in the Northern District.  She has two sons and a husband, and her job is a vital source income and health and dental insurance for her family.

135.  Nurse D. attempted to obtain a religious exemption from her hospital, based on the religious beliefs enumerated in ¶ 37 (a)-(h), but it was denied on account of Rule 2.61. She was advised by management that if she were not vaccinated by September 27, 2021 she would be deemed to have "voluntarily resigned."

136. In a memo issued September 7, 2021, management further advised that the employment of Nurse D. and any other employee refusing vaccination under Rule 2.61 would end on September 28, and that the separation would be "deemed" voluntary, meaning that there would be no unemployment benefits, and that all health and other benefits would terminate.

137. Nurse D.'s request for a religious exemption was "temporarily approved" on September 17, 2021, after this Court's preliminary injunction was issued.

138. Nurse D.'s religious exemption was revoked on November 16, 2021, following the Second Circuit's vacatur of the injunction, and she was given a new deadline by her employer of November 22, 2021 to receive the first shot of a COVID vaccine. After Nurse D. tested positive for COVID on November 9, 2021, from which she recovered with natural immunity, the deadline was extended to January 7, 2022.

139. When Nurse D. declined to be vaccinated by January 7, 2022, her employment was terminated. **At the time she was fired, at least 25 "fully vaccinated" nurses in her unit were out with COVID-19 infections.**

140. Termination of Nurse D's employment has been devastating to her and her family. Nurse D. has more than $50,000 of student loans from her nursing program alone.

141. Nurse D. is now unemployable anywhere in the State of New York as no other hospital would hire her under Rule 2.61.

142. Nurse D.'s termination will have to be reported at the time of license renewal and may well trigger disciplinary proceedings against her. There is also the threat that the DOH or the DOE will make COVID-19 vaccination a condition of her license renewal to further coerce compliance.

143. Nurse D. has suffered and will continue imminently to suffer irreparable harm to her occupation, reputation, and professional standing in the absence of injunctive relief barring enforcement of Rule 2.61.

144. Nurse. D. has no adequate remedy at law, and any monetary damages she has suffered such as lost income are not recoverable from these Defendants due to Eleventh Amendment immunity.

145. In addition to any other relief, as pleaded below, Nurse D. now seeks injunctive relief pursuant to the CMS Mandate, and further reserves the right to seek permanent injunctive relief pursuant to Title VII the Free Exercise Clause.

**Plaintiff "Dr. F."**

146. Plaintiff F., D.D.S., M.D. ("Doctor F."), who is Catholic, is a board-certified Oral and Maxillofacial Surgeon, licensed in dentistry and medicine in the State of New York.

147. Dr. F. is employed by a private hospital in the Northern District, where he is on staff and has admitting privileges in addition to his private practice.

148. Dr. F. and his partners have treated numerous patients who were sick with COVID without need of vaccination. Patients with COVID were not turned away but received dental treatment that was urgently needed.  Dr. F.'s clinic is vital to the region in which it is located and cannot turn away patients in need of urgent care.

149. Although he was granted a religious exemption from COVID vaccination under the prior Health Order, Rule 2.61 forced his hospital employer to revoke it and he was notified by hospital administration that if he failed to provide proof of vaccination by September 21, 2021, his hospital privileges would be suspended.

150. Dr. F. has since obtained a medical exemption from vaccination, but under Rule 2.61 a medical exemption is deemed to last only "until such immunization is found no longer to be detrimental to such personnel member's health."

34

151.  In addition to the concerns about the scientific questions pertaining to the available COVID-19 vaccines noted in ¶ 37(h), Dr. F. also knows of two people who have died, one who had a heart attack, and many others who have been injured following injection with a COVID vaccine.  These medical facts inform Dr. F's religious objection to involuntary vaccination of any kind, including COVID vaccines, although he is not "anti-vax" in general.

152.  Two of Dr. F.'s "fully vaccinated" staffers contracted COVID. No unvaccinated staffer has contracted COVID since the first wave in the spring and early summer of 2020, during which only 3 out of 15 staffers contracted COVID and recovered.

153.  Dr. F. is aware that numerous "fully vaccinated" staffers at the hospital with which he is associated have contracted COVID and that the entire staff of 30 in a practice in his medical office building across the hall—doctors, nurses, and support staff alike—have contracted COVID despite being "fully vaccinated."  At least half of those staffers have been sent home for quarantine.  From Dr. F.'s observations, it appears that COVID vaccination appears to be facilitating spread of the virus. *See* **French Decl., ¶¶ 52-55.**

154.  **Dr. F. is also aware that approximately 300 staffers have left the hospital at which he has admitting privileges rather than being coerced into vaccination, causing entire floors at the hospital to shut down**.  To hide this disaster, the hospital reports that it is at "full capacity" even though almost half of its 451 beds are empty for lack of nurses to handle the patients and entire floors have been closed.

155.  In addition to any other relief, as pleaded below, Dr. F. seeks the relief of an injunction that would require his employer to consider a religious exemption, which is not limited by time, under the CMS Mandate, and he further reserves the right to seek permanent injunctive relief pursuant to Title VII the Free Exercise Clause.

**Plaintiff "Dr. G."**

156.  Plaintiff G., M.D. ("Dr. G."), who is Catholic, is a board-certified specialist in Internal Medicine, licensed in the State of New York, who is employed by two private hospitals operated by a health service in the Western District at which he has staff and admitting privileges. Dr. G also directs an internal medicine residency program in which he instructs dozens of M.D.s who are fulfilling their residency requirements.

157.  Dr. G., who sought a religious exemption from COVID vaccination based on the beliefs enumerated in ¶ 37 (a)-(h), was informed by the Medical Affairs Department that there was no religious exemption from Rule 2.61 and that if he were not "fully vaccinated" by September 27, 2021 he would not be allowed to enter any of the buildings of the health service, including the hospitals in which he works and teaches.

158.  Dr. G.'s request for religious exemption was never decided as his employer elected to await the outcome of these proceedings.

159.  After this Court's preliminary injunction was vacated by the Second Circuit, Dr. G.'s employer informed him that he must be vaccinated by December 4, 2021, or be terminated.

160.  Under this coercion and under protest, Dr. G. received his first dose of a COVID-19 vaccine on December 2, 2021, and a second dose on January 7, 2022.

161. In Dr. G's department**, eight "fully vaccinated" physicians have contracted COVID despite being "fully vaccinated."** Yet Dr. G. is now faced with the employer's demand, under Rule 2.61, for a "booster" shot of the same vaccine that he knows, as an informed medical practitioner, has failed to prevent COVID virus transmission or infection.

162.  On January 12, 2022, Dr. G. received an email to all medical staff advising that "to comply with these updated New York State Department of Health regulations, proof of

36

appropriate COVID-19 booster vaccination is now required to maintain your CHS medical staff privileges." On January 26, 2022, Dr. G. received another email from management that he must be injected with a "booster" shot by February 21, 2022 in order to maintain his CHS medical staff privileges.

163. Dr. G. does not wish to be coerced into violating his religious beliefs again by receiving a useless and potentially harmful "booster" shot to keep his hospital positions and admitting privileges.

164. The loss of Dr. G.'s positions and admitting privileges at the hospitals with which he is affiliated would make it impossible for him to conduct his practice.

165. The threatened loss of his positions and privileges for refusing to be "boosted" with a useless vaccine, under coercion and in violation of his religious convictions, will render Dr. G. unemployable anywhere in the State of New York as no other hospital would grant him privileges under Rule 2.61.

166. The loss of privileges and the termination of his employments would have to be reported at the time of license renewal and may well trigger disciplinary proceedings against Dr. G. There is also the threat that the DOH will make COVID-19 vaccination a condition of his license renewal.

167. Dr. G. has suffered irreparable harm in being forced to violate his religious conscience to save his career, and he will imminently suffer irreparable harm to his occupation, reputation, and professional standing in the absence of injunctive relief barring enforcement of Rule 2.61's requirement of "booster" shots.

168. Dr. G. has no adequate remedy at law for any monetary damages he might suffer, which are unrecoverable from defendants due to Eleventh Amendment immunity.

169.  In addition to any other relief, as pleaded below, Dr. G. now seeks injunctive relief pursuant to the CMS Mandate to protect him from adverse consequences for refusal to submit to Rule 2.61's "booster" shot requirement. He further reserves the right to seek permanent injunctive relief pursuant to Title VII the Free Exercise Clause.

### Plaintiff "Therapist I"

170.  Plaintiff I. ("Therapist I."), who is Catholic, is a certified brain injury specialist who provides cognitive rehabilitation and other assistance to patients, groups of patients, their families and visitors at a facility located in the Northern District.

171.  In October of 2020, Therapist I. treated COVID patients as a TNA (temporary nurses' aide) on a dedicated COVID Unit in a nursing home. Therapist I. was part of a team that the parent facility set up to travel among its properties when the destination facility was in a staffing crisis. Therapist I. did not require any form of vaccination to treat these patients but rather was tested twice a week.

172.  Therapist I., who sought a religious exemption from COVID vaccination based on the beliefs noted in ¶ 37 (a)-(h), was advised by his employer, a rehabilitation center, that, because of Rule 2.61, he must receive "at least the first dose" of an abortion-connected vaccine by September 27, 2021.

173.  Therapist I.'s request for a religious objection was granted orally on September 27, 2021, following this Court's preliminary injunction.  He was then asked to file a formal written request for exemption, which he did on October 1, 2021.

174.  On November 2, 2021, the exemption was revoked based on the Second Circuit's vacatur of this Court's preliminary injunction, and Therapist I. was placed on unpaid "Mandate Leave" for 30 days with another 30 days to be allowed in the employer's discretion.

175.  On November 29, 2021, Therapist I. learned that December 2, 2021 was the "cutoff date" for those on unpaid leave for failing to be vaccinated.

176.  Although Therapist I. never received a termination letter as such, he received two mailings with COBRA paperwork, the first being in early-to-mid December and the second mailing being postmarked 12/30/21, which indicated that his employment had ended. Additionally, a job offering for his position was posed on the facility website on December 9, 2021.

177.  As early as April of 2021, a coworker from Therapist I.'s interdisciplinary team who was "fully vaccinated" tested positive, experienced a moderate-to-severe case which she described in detail upon return to work from an almost month-long home quarantine. Shortly thereafter, a second coworker who is a longtime employee working in an administration wing in a non-patient care role tested positive and was out of work for at least two weeks despite being "fully vaccinated."

178.  Therapist I. is also aware that approximately twelve other "fully vaccinated" fellow staff members have tested positive and were symptomatic and out of work for a two-week quarantine between January and November 2021. Their identifying information was disclosed at staff meetings at various supervisory levels, and they often self-disclosed to peers while at home or upon return to work.

179.  Additionally, Therapist I. is informed by third parties working at the facility that between **fifty and sixty COVID cases and quarantines among "fully vaccinated" personnel** have been documented.

180.  Having been terminated from his employment for failure to comply with Rule 2.61, Therapist I. is now at risk of action against his certification in EMS, as the DOH imposing Rule 2.61 also regulates the granting, oversight and renewal of his EMT-B certificate.

181.  Therapist I. has suffered and will imminently continue to suffer irreparable harm to his occupation, reputation, and professional standing in the absence of injunctive relief barring enforcement of Rule 2.61 and its new requirement of a "booster" shot of the same vaccines that have failed to prevent "COVID-19 transmission by covered entities."  Any monetary damages he has incurred or will suffer are not recoverable from these Defendants due to Eleventh Amendment immunity.

182.  In addition to any other relief, as pleaded below, Therapist I. now seeks injunctive relief pursuant to the CMS Mandate in order to be able to seek reinstatement under a religious exemption without requirement of a "booster" shot.  He further reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

### Plaintiff "Dr. J."

183.  Plaintiff J., D.O., who is Catholic, is a Doctor of Osteopathy ("Dr. J."), licensed in the State of New York, whose specialty is Obstetrics and Gynecology, for which she is board-certified.  She has admitting privileges at a private hospital in the Western District in addition to her private practice.

184. Dr. J. believes she has probably treated dozens of women with COVID, most of whom were asymptomatic, and may have had an asymptomatic case of COVID herself.  She works in Labor and Delivery two days per week, training residents, and cares for "unassigned patients" who don't have a doctor. All patients are tested for COVID. Sometimes if the delivery was happening quickly, Dr. J. would have to run into the room without knowing the patient's

COVID status, and there was not always time to wear proper personal protection equipment (PPE). She would find out after the fact that the patient was COVID-positive.  Dr. J. has had 5 to 8 patients who were admitted specifically due to complications of COVID in pregnancy. She assisted in their treatment even while she herself was pregnant.

185.  As an OBGYN, Dr. J. has always practiced in accord with the dictates of her personal religious convictions, including the beliefs enumerated above, and she does not perform any form of abortion or sterilization procedure, nor prescribe any contraceptive that could induce an unintentional abortion.

186.  Dr. J. practices breastfeeding. She is aware of reports of the death of breastfeeding infants following maternal vaccination, and is not aware of any studies to date that would prove safety in breastfeeding or during pregnancy, which is of particular concern to her as an OB-GYN. Her hospital's own notice of the Vaccination Mandate advises breastfeeding women hesitantly as follows: "Evidence about the safety and effectiveness of COVID-19 vaccination during pregnancy is growing… It's best to talk to your OB-GYN or pediatrician about any questions or concerns you have."

187. These medical facts, along with those recited above, inform Dr. J.'s religious conviction against involuntary vaccination as an invasion of bodily autonomy that is contrary to Catholic Church teaching, especially in the case of COVID vaccination while she is breast-feeding or pregnant, when the welfare of her child is also implicated.

188.  On September 18, 2021, following this Court's TRO, Dr. J. submitted a request for a religious exemption to the hospital at which she had admitting privileges.  The request was never granted or denied but was merely recorded as "received."

189.  After this Court's preliminary injunction was vacated, Dr. J. was advised that her admitting privileges and position as director of a residency program at her hospital would be revoked as of December 4, 2021 unless she were vaccinated as required by Rule 2.61.

190.  Faced with this threat, Dr. J. resigned her position and forfeited her admitting privileges in order to avoid problems with future employment and licensure, thereby suffering irreparable harm on account of her religious beliefs.

191.  Dr. J. remains under the threat that the DOH will make COVID-19 vaccination a condition of renewal or threaten license suspension or revocation in order further to coerce Dr. J. to be vaccinated and "boosted" with a vaccine she does not need in her informed medical judgment, does not want, and cannot take in good conscience.

192.  Dr. J. is now unable to obtain admitting privileges at any hospital in the State of New York due to Rule 2.61 and its exclusion of religious exemption for COVID vaccination and "boosters."

193.  Dr. J. has suffered and will continue to suffer irreparable harm to her occupation, reputation, and professional standing in the absence of injunctive relief barring enforcement of Rule 2.61.  Any resulting money damages from loss of her employment due to Rule 2.61 are unrecoverable due to Defendants' Eleventh Amendment immunity.  She has no adequate remedy at law.

194.  In addition to any other relief, as pleaded below, Dr. J. now seeks injunctive relief pursuant to the CMS Mandate in order to be able to seek reinstatement of her admitting privileges under a religious exemption.   She further reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

**Plaintiff "Nurse J."**

195. Plaintiff J., L.P.N. ("Nurse J."), who is Baptist, is a licensed practical nurse, licensed in the State of New York, who provides home nursing care for two private home care agencies doing business in the Eastern District.

196.  Nurse J. has cared for COVID patients on an in-home basis, including a patient who had to be hospitalized for several months, on which occasion Nurse J had to be quarantined for two weeks.

197.  In March of 2021, Nurse J. developed COVID symptoms, including loss of her sense of taste and smell for approximately eighteen months, and thus has acquired natural immunity that is superior to any vaccine-induced and rapidly waning immunity.  *See* **French Decl., ¶¶ 57-76.**

198.  While not a Catholic, Nurse J. shares the common beliefs of the plaintiffs, as enumerated above.

199.  On September 6, 2021, Nurse J. sent a letter of protest concerning Rule 2.61 to the administration of the agencies for which she works, urging them not to capitulate to the State. But on September 7, 2021, Nurse J. was advised by management that there would be no religious exemptions from vaccination, "much to our disappointment."

200.  Nurse J. requested a religious exemption, but on September 9, 2021 was advised by the executive director of one of the agencies that employ her that no religious exemption was possible due to Rule 2.61 and that "my hands are tied."

201.  On or about September 20, 2021, Nurse J. received religious exemptions from both of her employing home care agencies following this Court's TRO and preliminary injunction, but these were revoked after the preliminary injunction was vacated by the Second Circuit.

202.  Nurse J.'s employment was terminated on October 18, 2021 by one agency and on November 30, 2021 by the other. In both cases the termination took the form of an involuntary leave of absence without pay due to non-compliance with Rule 2.6.

203.  During her employment, Nurse J. knew that numerous "fully vaccinated" nurses were out sick with COVID, and she is further aware that COVID has since caused an even greater shortage of home care nurses, despite all of them being "fully vaccinated."

204.  Nurse J.'s termination will have to be reported at the time of license renewal and may well trigger disciplinary proceedings against her.  There is also the threat that the DOH or the DOE will make COVID-19 vaccination a condition of her license renewal.

205.  Nurse J. has suffered and will imminently continue to suffer irreparable harm to her occupation, reputation, and professional standing in the absence of injunctive relief barring enforcement of Rule 2.61.

206.  Nurse J. is currently unemployed, and her loss of income is not recoverable from Defendants in this action due to their Eleventh Amendment immunity. She has no adequate remedy at law.

207.  In addition to any other relief, as pleaded below, Nurse J. now seeks injunctive relief pursuant to the CMS Mandate in order to be able to seek reinstatement under a religious exemption from vaccination or "booster" shots. She further reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

### Plaintiff "Dr. M."

208.  Plaintiff M., M.D. ("Dr. M"), who is Catholic, is a medical school graduate who was in the process of completing her residency at a private hospital in the Western District.

44

209.  Because of Rule 2.61, Dr. has lost her residency and very possibly her entire career path in obstetrics and gynecology, as explained below.

210.  On August 19, 2021, during the short time the prior Health Order was in effect, Dr. M. received an email from Human Resources advising that all residents must be vaccinated for COVID-19 and that "Information regarding waivers for medical or religious reasons will be available shortly."

211. On August 25, 2021, however, Dr. M. received an email from administration warning that "disregarding the NYS Vaccination Mandate may affect your ability to continue working and training with your residency or fellowship program."  There was no indication of an allowance for religious exemptions.

212.  On August 30, 2021, Dr. M. received another email from HR advising that "Late last week, the NYS Public Health & Planning Council and the NYS Commissioner of Health **removed the religious exemption** for the recent state mandate requiring all health professionals get vaccinated for COVID-19."  Dr. M. was thus barred from obtaining the religious exemption from COVID vaccination that she had sought based on the religious beliefs enumerated above.

213. In addition to the medical concerns recited in ¶37 (h), Dr. M. has personally witnessed a medical student having a seizure after receiving the one-shot Johnson & Johnson vaccine. She collapsed to the floor and a rapid response team was summoned because she was unresponsive.  She recovered with the assistance of the team. These medical facts, as well as the mounting evidence that COVID vaccines do not prevent transmission of the virus, inform Dr. M.'s religious conviction against involuntary vaccination.

214.  On September 3, 2021, the hospital administration further advised Dr. M. by email that she must receive the "first dose" of a COVID vaccine by September 27 and that

"Disregarding the NYS Vaccination Mandate may affect your ability to continue working and training with your residency or fellowship program."

215. Dr. M. conferred with her program director to discuss her religious objection to COVID vaccination but was met only with reiteration of the warning that her residency was at risk if she did not accept vaccination.

216. Dr. M. was never granted a religious exemption despite this Court's TRO and preliminary injunction but was told to continue working until further notice, thereby being de facto exempted.

217. After this Court's preliminary injunction was vacated, Dr. M. was informed that if she was not vaccinated by December 10, 2021 her residency, and thus her medical career, would be terminated.

218. To avoid termination of residency and problems this could cause for future employment and license, Dr. M. resigned under coercion on December 10, 2021. She has since been unable to secure a residency in another state and will be unemployable as a resident anywhere in New York State due to Rule 2.61. Moreover, should she secure a residency in another state in the future, she would have to repeat her last two years of residency as if she were a first-year resident, as she has no offers for advanced positions to continue as a second year ObGyn resident. She also suffers severe damage to her career in Obstetrics and Gynecology, her first choice specialty, as she now has to reapply and be prepared to change specialties in the residency match without a guarantee of a first-year spot in her chosen specialty.

219. Dr. M. has thus suffered irreparable harm from state-coerced resignation from her residency on account of her religious beliefs, and in view of the State's new demand for a "booster" shot will imminently suffer further irreparable harm to her occupation, reputation, and

professional standing in the absence of injunctive relief barring enforcement of Rule 2.61.  Any monetary damages she has sustained are not recoverable in this action due to Eleventh Amendment immunity.  She has no adequate remedy at law.

220.  In addition to any other relief, as pleaded below, Dr. M. now seeks injunctive relief pursuant to the CMS Mandate in order to be able to seek reinstatement under a religious exemption, and further reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

**Plaintiff "Nurse N."**

221.  Plaintiff N., B.S.N, R.N.-C. ("Nurse N."), who is Catholic, is a Bachelor's-prepared, medical-surgical certified Registered Nurse, licensed in the State of New York, who works at a hospital in the Northern District.

222.  Nurse N. has had COVID-19, from which she recovered.  As a medical professional who has read the pertinent medical literature, Nurse N. knows that she has natural immunity that is superior to the vaccine-induced immunity that has already faded, that she is in no need of vaccination by any form of COVID vaccine, and that all available COVID vaccines have known and quite serious side effects, including death.  *See* **French Decl., ¶¶ 57-76**

223.  On August 19, 2021, Nurse N., under the prior regime that included the Health Order, received an exemption from COVID vaccination on the basis of anticipated pregnancy and current breastfeeding, and thus did not submit an additional request for a religious exemption, which she would have done based on the beliefs enumerated above had her request for exemption related to pregnancy and breastfeeding been denied. Nurse N.'s request for exemption was approved as a "vaccination deferral" for one year.

224.  On September 1, 2021, however, Nurse N. was notified by hospital administration that **Rule 2.61 had eliminated all exemptions for religion and pregnancy**, that her exemption was thus revoked, and that she must receive at least one dose of a COVID-19 vaccine by September 28, 2021.

225.  Following this Court's TRO and preliminary injunction, Nurse N. submitted a request for religious exemption, but was informed by the HR department that she had missed the "deadline" for requesting one even though she had indicated her need for a religious exemption by email before said "deadline." On September 22, 2021, Nurse N. was advised that she would be terminated if not vaccinated with a first dose by September 28.

226.  Nurse N.'s employment was finally terminated on October 9, 2021, following a two-week punitive suspension designed to coerce her into vaccination by October 8.

227.  Nurse N. knows that at one point in her county "fully vaccinated" patients comprised the majority of COVID cases: **As of January 6, 2022, of 163 new cases, 103 were vaccinated and 60 were not. As to hospitalizations: 12 of 21 hospitalizations were vaccinated, 9 were unvaccinated.  Obviously not a "pandemic of the unvaccinated."** This is why "health experts" are now calling for the useless "booster shots" now being demanded under Rule 2.61.

228.  Nurse N. is also aware that "fully vaccinated" yet still COVID-infected staffers are being allowed to return to work at a colleague's facility while non-infected but unvaccinated staffers, like Nurse N., are barred from facilities under the irrational provisions of Rule 2.61. Said colleague advises that some **50% of the "fully vaccinated" staff has contracted the virus and been forced to quarantine for five days, after which they are required to return.**

48

229.  In addition to violation of her right to the free exercise of religion, Plaintiff Nurse N. has suffered irreparable harm from loss of employment, which is essential to the support of her family, on account of her religious abstention from COVID-19 vaccination. Her lost income is not recoverable from Defendants due to Eleventh Amendment immunity.

230.  Nurse N. is now unemployable anywhere in the State of New York as no other hospital would hire her due to her conscientious refusal to obey Rule 2.61, which now requires not only vaccination but "boosting" of the same failed vaccines in violation of her religious beliefs.

231.  Nurse N. applied for unemployment benefits last October, but the Department of Labor advised her that the DOE is "examining" her claim and that the DOE will decide it— meaning that the claim will be denied under defendant Hochul's announced policy because Nurse N. was terminated for refusing vaccination.

232.  Nurse N.'s termination will have to be reported at the time of license renewal and may well trigger disciplinary proceedings against her.  Nurse N. is under threat of disciplinary proceedings by the DOE or DOH, including license suspension or revocation as a further measure of coercion to take a vaccine that in her informed medical judgment she cannot take in good conscience. She is also concerned that the DOH or the DOE will make COVID-19 vaccination a condition of her license renewal.

233. Nurse N. has suffered irreparable harm to her occupation, reputation, and professional standing and will imminently suffer further irreparable harm in the absence of injunctive relief barring enforcement of Rule 2.61.  She has no adequate remedy at law, and any loss of income she suffers cannot be recovered as damages from defendants due to Eleventh Amendment immunity.

234.  In addition to any other relief, as pleaded below, Nurse N. now seeks injunctive relief pursuant to the CMS Mandate in order to seek reinstatement under a religious exemption, and also injunctive relief barring enforcement of the challenged policy disqualifying her for unemployment benefits.  She further reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

### Plaintiff "Dr. O."

235.  Plaintiff O., M.D. ("Dr. O."), who is Catholic, is a board-certified General Surgeon, licensed in the State of New York.  He is employed by a private hospital in the Northern District.

236.  Dr. O. has treated and seen multiple patients for surgical problems (appendicitis, cholecystitis, soft tissue infections and other problems) who have had COVID.

237.  On July 13, 2021, Dr. O. was granted a religious exemption from his hospital under the prior Health Order, which allowed for religious exemptions, but this was revoked on account of Rule 2.61, removing the provision for religious exemptions.

238.  Dr. O. was advised by his employer that, because of Rule 2.61, he must be "fully vaccinated" with an abortion-connected vaccine by September 21, 2021 and that "under the emergency regulations **the NYS DOH will not permit exemptions or deferrals for sincerely held religious beliefs**…" As the employer further advised: "any colleague who was previously approved for one of the above exemptions/deferrals [including religious exemption] will be required to provide proof of [vaccination]…"

239.  Because of this Court's TRO and preliminary injunction, Dr. O. was granted a religious exemption by his employing hospital, but it was revoked immediately after the Second Circuit overturned the injunction.

240. Dr. O. was then given an ultimatum to take the first shot of a COVID vaccine by November 22, 2021 and the second by December 15, 2021, or be suspended and ultimately terminated from employment if he was not fully compliant by January 8, 2022.

241. Under this coercion, Dr. O. submitted to vaccination as he was unable to secure employment in another state.

242. Dr. O. has since been advised that he must receive a COVID "booster" shot by February 21, 2022 or within 30 days of becoming eligible for the "booster," which is five months after his second dose, or 30 days from May 14.

243. Dr. O. does not wish to be forced to violate his conscience again under coercion to receive a "booster" he believes will be no more effective at "prevention of COVID-19 transmission by covered entities" than the original vaccination.

244. The loss of Dr. O.'s position and admitting privileges at the hospital with which he is affiliated would make it impossible for him to conduct his practice.

245. The threatened loss of his positions and privileges for refusing to be "boosted" with a useless vaccine, under coercion and in violation of his religious convictions, would render Dr. O. unemployable anywhere in the State of New York as no other hospital would hire or grant him privileges under Rule 2.61.

246. The loss of privileges and the termination of his employment for refusal to be "boosted" would have to be reported at the time of license renewal and might well trigger disciplinary proceedings against Dr. O.  There is also the threat that the DOH will make COVID-19 vaccination a condition of his license renewal.

247.  The loss of admitting privileges for refusal to be "boosted" would also jeopardize Dr. O.'s board certification as a general surgeon, which cannot be maintained without hospital admitting privileges if he wishes to remain clinically active.

248.  In addition to any other relief, as pleaded below, Dr. O. now seeks injunctive relief pursuant to the CMS mandate in order to seek a religious exemption from any "booster" vaccination. He further reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

**Plaintiff "Dr. P."**

249.  Plaintiff P., D.O. ("Dr. P."), who is Catholic, is a third-year obstetrics and gynecology resident at private hospital in the Western District.

250.  Midway through her first year of training, the COVID-19 pandemic broke out, and Dr. P. cared for many patients infected with the virus, often with limited or no PPE.  No vaccination was needed or required for her to treat patients safely.

251.  In March 2020, Dr. P. was assigned to an ICU rotation, standard for a first-year resident, during which she helped care for the sickest patients in the hospital, many suffering from COVID. It was during this time that Dr. P. herself became sick with the virus, from which she recovered before returning to work.

252.  As a Catholic, Dr. P. intends to practice medicine in line with the moral teachings of the Church, including the beliefs enumerated in ¶ 37 (a)-(h), which is why she chose her current residency program, in reliance on which she and her husband moved from Texas to New York.

253.  As a medical doctor who has recovered from COVID, Dr. P. knows that she has natural immunity, shown by numerous studies to be superior to the vaccine-induced immunity

that is already fading; that the COVID vaccines now available do not limit viral transmission, as shown by the rising demand for "booster shots" (including a fourth shot in Israel); and that vaccinating a naturally immune person can do more harm than good by provoking a hyper-immune response called Antibody Dependent Enhancement ("ADE").  *See* **French Decl., ¶¶ 90-91.**  These medical facts inform her conscientious religious decision to abstain from COVID-19 vaccination.

254.  On August 19, 2021, during the short time the prior Health Order was in effect, Dr. P. received an email from Human Resources advising that all residents must be vaccinated for COVID-19 and that "Information regarding waivers for medical or religious reasons will be available shortly." This email also stated that "disregarding the NYS Vaccination Mandate may affect your ability to continue working and training with your residency or fellowship program."

255.  On August 30, 2021, Dr. P. received another email from HR advising that "Late last week, the NYS Public Health & Planning Council and the NYS Commissioner of Health **removed the religious exemption** for the recent state mandate requiring all health professionals get vaccinated for COVID-19."

256.  On September 7, 2021, Dr. P. was directed to meet with the OB/GYN department chair, who attempted to pressure her into being vaccinated with the suggestion that, as she had been advised on August 19, "disregarding the NYS Vaccination Mandate may affect your ability to continue working and training with your residency or fellowship program."

257. Dr. P.'s hospital never granted or denied religious exemptions but rather continuously deferred a decision pending the outcome of these proceedings, thus exempting her de facto.

258.  After this Court's preliminary injunction was vacated, however, Dr. P. was told that she must be vaccinated by December 4, 2021, or else be terminated from her residency, losing her career as a doctor.  Under this coercion, Dr. P. submitted to vaccination on December 3, 2021.

259.  Of the fifteen residents in Dr. P.'s program, **six "fully vaccinated" residents have tested positive for COVID-19 and have had to take a ten-day leave to avoid infecting the other residents, staff and patients—showing that COVID vaccination does nothing to prevent COVID infection or transmission of the virus to others**.

260.  Dr. P. has suffered irreparable harm from state-coerced violation of her conscience. She does not wish to suffer further irreparable harm by being coerced into violating her conscience again by submitting to the State's new demand for a "booster" shot that will be no more effective than the initial vaccination at "prevention of COVID-19 transmission by covered entities."

261.   In addition to any other relief, as pleaded below, Dr. P. now seeks injunctive relief pursuant to the CMS Mandate in order to be able to seek a religious exemption from "booster" vaccination. She further reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

**Plaintiff "Dr. S."**

262.  Plaintiff S., D.D.S. ("Dr. S."), who is Catholic, is a board-certified Oral and Maxillofacial surgeon who, in addition to his private practice, is an attending physician with admitting privileges at a hospital in the Northern District.

263.  Dr. S. and his partners have treated numerous patients who were sick with COVID without need of vaccination, and Dr. S. thus contracted COVID in December 2020 and lost his

sense of taste and smell. His naturally acquired immunity was confirmed by an antibody test. In addition to his specifically religious objections to COVID vaccination, he would never take any COVID shot for fear of Antibody Dependent Enhancement ("ADE") disorder, a threat that informs his conscientious religious abstention from vaccination based on a risk-benefit assessment. *See* **French Decl., ¶¶ 90-91.**

264. On August 17, 2021, under the then-applicable DOH vaccination requirement, which included the prior Health Order, Dr. S. received a religious exemption from COVID-19 vaccination. The exemption was based on his religious convictions as a Catholic, including the beliefs enumerated in ¶ 37 above.

265. On September 1, however, Dr. S.'s religious exemption was revoked due to the issuance of Rule 2.61, and he was notified by hospital administration that if he failed to provide proof of vaccination by September 21, 2021, his hospital privileges would be suspended.

266. On September 15, 2021, Dr. S.'s religious exemption was restored following this Court's TRO, which was followed by this Court's preliminary injunction.

267. On November 22, 2021, however, the restored religious exemption was again revoked following the Second Circuit's decision vacating this Court's injunction, and Dr. S's hospital admitting privileges and staff membership were also revoked.

268. Dr. S. can no longer bring his patients to his former hospital for major operations, and he can no longer treat patients there, nor even admit them under his supervision. Consequently, his practice scope has been severely restricted by this penalty, with only in-office surgical procedures being possible without hospital admitting privileges.

269. Without hospital admitting privileges, no major oral or maxillofacial surgery is permitted, despite Dr. S.'s board certification for such surgeries, and the region he serves is consequently deprived of already scarce competent surgical assistance for serious conditions.

270. The loss of hospital admitting and staff privileges has rendered Dr. S. unemployable by any hospital anywhere in the State of New York as no other hospital would grant him admitting privileges under Rule 2.61.

271. The termination of hospital privileges threatens Dr. S.'s board certification, which cannot be maintained without those privileges. Further, the termination of privileges for refusing to follow Rule 2.61 will have to be reported at the time of Dr. S's next license renewal and may well trigger disciplinary proceedings against Dr. S.  There is also the threat that the DOH will make COVID-19 vaccination a condition of license renewal.

272. On account of Rule 2.61's religiously discriminatory impact, Dr. S. has suffered irreparable harm to his occupation, reputation, and professional standing. Any monetary losses he suffers from being unable to perform major surgeries are not recoverable from Defendants due to Eleventh Amendment immunity.  He has no adequate remedy at law.

273. In addition to any other relief, as pleaded below, Dr. S. now seeks preliminary injunctive relief pursuant to the CMS Mandate in order to seek restoration of his hospital privileges and also be protected against the State's new demand for a manifestly useless and potentially very harmful "booster" vaccination. Dr. S. further reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

### Plaintiff "Nurse S."

274. Plaintiff S., R.N. ("Nurse S."), who is Catholic, is a registered nurse employed by a hospital in the Northern District.

275.  Nurse S. has treated a patient who had recovered from COVID but still decided to be vaccinated.  After receiving the second dose of the vaccine, this patient needed high-flow oxygen to survive and was not able to get out of bed or even turn over without exacerbation of her condition.

276. On August 15, 2021, before Rule 2.61 removed religious exemptions, Nurse S. applied for a religious exemption from the employing hospital, based on the beliefs enumerated above in ¶ 37. Nurse S.'s request for religious exemption advised in particular that she could not take any of the available COVID-19 vaccines because of their connection to aborted fetal cell lines, citing the analysis of each vaccine by the Charlotte Lozier Institute. Nurse S. advised that it "is my Catholic duty to refuse the injection."

277.  In addition to the medical concerns recited above, Nurse S. intends to have children, and she is aware that there is a lack of data on the effect of the available COVID vaccines on pregnancy and post-partum development of children, given that the vaccines have been available for less than year. These medical facts inform Nurse S.'s religious conviction against involuntary vaccination.

278.  On September 1, 2021, Nurse S. was advised by the hospital administration that due to Rule 2.61, as of August 26, 2021 the State would not permit exemptions for sincerely held religious beliefs, that "we are required to comply with state law," and that every member of the staff must have at least one dose of a two-dose COVID vaccine, or a single dose vaccine by September 21, 2021.

279.  Nurse S. was granted a religious exemption from COVID vaccination on September 18, 2021, following this Court's TRO, which was followed by this Court's preliminary injunction.

280. Nurse S.'s religious exemption was revoked on November 22, 2021 after the Second Circuit vacated the injunction, and she was suspended from her job until she consented to be vaccinated.

281. Nurse S., who is just beginning her nursing career, faced imminent termination of her employment and also being rendered unemployable as a nurse anywhere in New York State due to Rule 2.61, as well as possible license suspension or disciplinary proceedings due to termination for "insubordination."

282. Under this coercion, Nurse S. submitted to vaccination and returned to work on December 27, 2021, receiving her second dose on January 8, 2022.

283. She is now advised, however, that she must also submit to a "booster" shot by February 21, 2022, or five months after initial vaccination, which in her case would be on or about June 8, 2022.

284. Since Nurse S.'s return to work, **a majority of her "fully vaccinated" co-workers have contracted COVID-19, gotten sick, and been required to quarantine, causing a staffing crisis at the hospital.**

285. Nurse S. has already suffered irreparable harm from state-coerced vaccination against her religious beliefs, and in view of the State's demand for a "booster" shot she is once again faced with the State's attempt to coerce her into violating her religious beliefs under penalty of loss of employment and further irreparable harm to her career, reputation, and professional standing.

286. In addition to any other relief, as pleaded below, Nurse S. now seeks injunctive relief pursuant to the CMS Mandate in order to be able to seek a religious exemption from

"booster" vaccination, and further reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

### Plaintiff "Physician Liaison X."

287. Plaintiff X. ("Physician Liaison X"), who is Catholic, was a physician liaison manager for a major cancer center in the Southern District. Her job was 100% remote during the 18 months preceding this suit.

288. In August 2021, however, Physician Liaison X.'s employer began mandating COVID vaccinations for all employees, but with religious and medical exemptions allowed under the prior Health Order.

289. That policy changed on September 1, 2021, when her employer announced by email that Rule 2.61 had eliminated all religious exemptions, that the employer could no longer grant religious exemptions, and that any religious exemptions granted would be ..

290. Physician Liaison X. was thus barred from obtaining the religious exemption she sought, based on the religious beliefs enumerated in ¶ 37 above.

291. Despite this Court's TRO and preliminary injunction, Physician Liaison X. never received the religious exemption she requested, which was kept "under review," thereby creating a de facto exemption.

292. On December 3, 2021, Physician Liaison X.'s employment was terminated because of her refusal to be vaccinated. **Yet on her five-member team, three "fully vaccinated" members had already contracted COVID, one of whom was "boosted."** Physician Liaison X also contracted COVID in September 2021, taking one vacation day to recover.

293. Physician Liaison X. has thus suffered irreparable harm to her occupation, reputation, and professional standing, any loss of income being unrecoverable as damages due to Defendants' Eleventh Amendment immunity.  She has no adequate remedy at law.

294.  In addition to any other relief, as pleaded below, Physician Liaison X. now seeks preliminary injunctive relief pursuant to the CMS Mandate in order to seek reinstatement as well as a religious exemption from the State's new demand for a manifestly useless and potentially harmful "booster" vaccination. She also reserves the right to seek permanent injunctive relief pursuant to Title VII and the Free Exercise Clause.

## COUNT I

### VIOLATION OF THE FREE EXERCISE CLAUSE
### OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)

295.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-294 above as if fully set forth herein.

296.     The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

297.     Plaintiffs have sincerely held religious beliefs that compel them to refuse vaccination with abortion-connected vaccines.

298.     Plaintiffs reallege the discussion of their sincerely held religious beliefs as set forth in all the preceding paragraphs.

299.     Rule 2.61, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by requiring the revocation of religious exemptions previously granted by their employers or by prohibiting them from seeking and receiving exemption and accommodation

for their sincerely held religious beliefs from their employers, with several of the employers citing Rule 2.61 as the grounds for refusing even to consider exemption requests.

300.    Rule 2.61, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels them to abandon their beliefs or violate them under coercion, and forces Plaintiffs to choose between their religious convictions and the State's patently unconstitutional value judgment that their religious beliefs are of no account and cannot be considered by employers.

301.    Rule 2.61 strips Plaintiffs, adult medical professionals, of the right to religious exemption secured by state statute even for a 17-year-old college students, who are exempt from numerous vaccines if they "object[] to immunization due to his/her religious beliefs." *See* Public Health Law § 2165, Immunization Requirements for Students.

302.    Rule 2.61 even eliminates the protection for religion and the allowance of religious exemptions under the prior Health Order, which was revised to exclude religious accommodation on or about August 26, 2021.

303.    Rule 2.61, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

304.    Rule 2.61, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their    occupations, professional standing, licenses, reputations, and ability to support their families.

305.    Rule 2.61, on its face and as applied, is neither neutral nor generally applicable as it grants the possibility of medical exemptions for reasons of secular "health" but bars religious exemptions according to the State's unconstitutional value judgment that physical health is more important than spiritual health.

306.    Rule 2.61, on its face and as applied, thus targets Plaintiffs' religious beliefs for disparate and discriminatory treatment.

307.    Rule 2.61, on its face and as applied, was clearly designed to slam shut what Defendants undoubtedly viewed as a large potential "escape hatch" from their planned regime of brute coercion to be vaccinated under penalty of personal and professional destruction, which regime has no precedent in the history of the United States.  This is shown by Rule 2.61's abrupt excision of religious protection and religious accommodation from the prior Health Order, issued only days before. A

308.  The intent of Rule 2.61 is clearly to leave religious believers with no choice but to violate their religious beliefs to keep their jobs and avoid professional destruction and financial ruin. As pleaded above, five plaintiffs—Nurse A., Dr. G., Dr. O., and Dr. P—have, quite understandably, succumbed to this coercion, only to be informed that now they must be injected with a "booster shot" or find themselves in exactly the same position they hoped to escape by acceding to the State's unconstitutional demands.

309.  Rule 2.61, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests based on physical health, while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs.

310.    Rule 2.61, on its face and as applied, is a religious gerrymander that, only days after promulgation of the Health Order allowing religious exemptions, excluded sincerely held religious beliefs from any form of accommodation while permitting state-favored medical exemptions.

311.    There is no legitimate, rational, or compelling interest in Rule 2.61's exclusion of exemptions and accommodations for sincerely held religious beliefs, especially given the

following facts: (a) both those exempted for reasons of "health" **and "fully vaccinated staffers"** are contracting and spreading COVID (the prevention of which is the only reason for Rule 2.61) than those who would be exempted for reasons of religion; (b) the available COVID-19 vaccines are clearly failing to prevent transmission or infection, so that  equally useless "booster shots" are now being promoted; (c) even the vaccinated must continue to wear masks as if they were not vaccinated because they can still be infected **or infect others**; (d) naturally immune persons who have recovered from COVID have superior immunity and do not need vaccination; (e) vaccinating  naturally immune people may harm them by causing a hyperimmune response; and (f) vaccinated persons are being admitted to the hospital along with unvaccinated persons.

312.    Rule 2.61 is not the least restrictive means of achieving an otherwise permissible government interest, which could be achieved by the same protective measures (masking, testing, quarantining, etc.) already being required of the vaccinated and the unvaccinated alike (including those exempted for health reasons).

313.    Rule 2.61, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social and economic consequences pleaded above.

314.    Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional liberties and sincerely held religious beliefs.

**COUNT II**

**VIOLATION OF THE SUPREMACY CLAUSE OF
THE UNITED STATES CONSTITUTION
(42 U.S.C. ¶ 1983))**

315.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-294 as if fully set forth herein.

316.     The Supremacy Clause provides:

> **This Constitution, and the Laws of the United States** which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Lawsof any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 22 (emphasis added).

317.     Rule 2.61, both facially and as applied, compels employers of health care workers in the State of New York to disregard Title VII's protection against employment discrimination on account of religion, forbidding any accommodation of religious belief whatsoever and even requiring the revocation of previously granted religious exemptions from COVID vaccination.

318.     Rule 2.61 thus requires actions that federal law forbids, which renders Rule 2.61 null and void. *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 486 (2013).

319.     All of Plaintiffs' employers have 15 or more employees and are subject to the requirements of Title VII.

320.     By attempting to preclude application of Title VII in the State of New York in the case of COVID vaccination, Rule 2.61 patently violates the Supremacy Clause.

321.     In particular, Rule 2.61 purports to negate Title VII's requirement that employers provide reasonable accommodations to individuals with sincerely held religious beliefs, and even flatly prohibits religious exemption or accommodation requests, as the employers noted above have indicated.

322.     By purporting to place themselves and their mandate outside the protections of both Title VII and the First Amendment, Defendants have violated the basic constitutional principle that "federal law is as much the law of the several States as are the laws passed by their legislatures." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added).

323.     Rule 2.61, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social and economic consequences pleaded above.

324.     Plaintiffs have no adequate remedy at law for the continuing deprivation of their statutory rights under Title VII as secured by the Supremacy Clause.

## COUNT III

### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTHAMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)

325.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-294 above as if fully set forth herein.

326.     The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs' right to equal protection under the law.

327.     Rule 2.61, on its face and as applied, is an unconstitutional abridgment of Plaintiffs' right to equal protection, is not neutral, and specifically targets Plaintiffs' sincerely

held religious beliefs for discriminatory and unequal treatment as compared with the medical exemptions favored by the State's impermissible, anti-religious value judgment.

328.    Rule 2.61, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' right to equal protection because it permits the State to treat Plaintiffs differently from similarly situated healthcare workers solely on the basis of Plaintiffs' sincerely held religious beliefs.

329.    Rule 2.61, on its face and as applied, singles out Plaintiffs for selective treatment based upon their sincerely held religious objections to the COVID-19 vaccines.

330.    Rule 2.61, on its face and as applied, creates a system of classes and categories that improperly accommodates exemptions for the class of healthcare workers concerned with bodily health while denying exemption to the class of health care workers concerned with spiritual health above bodily health, including all the plaintiffs herein.

331.    Rule 2.61, reversing the State's policy of only days before, arbitrarily and capriciously attempts to deny Plaintiffs and others similarly situated the protection for religion and the requirement of religious accommodation under both the Human Rights Law of the State of New York and the Human Rights Law of the City of New York, as well as the parallel the protections of Title VII, while leaving untouched protections under the same statutes for other protected classes, including by allowing exemptions for reasons of "health" but not religion.

332.    Rule 2.61 arbitrarily and capriciously denies to adult medical workers with expert knowledge of vaccination and its risks the same religious exemption from vaccination available to any college student under Public Health Law § 2615.

333.    By purporting to negate statutorily required religious accommodations from consideration in the State of New York, defendants, via Rule 2.61, have singled out for

disparate treatment the specific class of healthcare employees whose motive for seeking exemption from vaccination is religious rather than medical.

334.     Further, several of the plaintiffs, as pleaded above, previously had COVID and, on information and belief, have natural immunity at a level no less than, and likely far more than, the immunity purportedly offered by available COVID vaccines.

335.     There is no rational, legitimate, or compelling interest in Rule 2.61's application of different standards to different, similarly situated groups in the field of healthcare.

336.     Rule 2.61, on its face and as applied, discriminates between religion and nonreligion by allowing nonreligious exemptions to Rule 2.61 while prohibiting religious exemptions.

337.     Rule 2.61, on its face and as applied, is a "status-based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996). Rule 2.61, on its face and as applied, "identifies  persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633.

338.     Rule 2.61, on its face and as applied, by allowing medical exemptions while denying religious exemptions, is a "disqualification of a class  of persons from the right to seek specific protection [for their religious beliefs]." *Id.*

339.     "A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek [an exemption from the COVID-19 Rule 2.61] is itself a denial of equal protection of the laws in the most literal sense." *Id.* Rule 2.61, on its face and as applied, is such a measure.

340.     Rule 2.61, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social and economic consequences pleaded above.

341.  Plaintiffs have no adequate remedy at law for the continuing deprivation of their rights under the Equal Protection Clause.

## COUNT IV

### INJUNCTIVE RELIEF UNDER
### THE CMS MANDATE (86 Fed. Reg. 61572)

342.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-341 above as if fully set forth herein.

343.     As pleaded above, the CMS mandate requires all entities receiving Medicare and Medicaid to ensure that all personnel receive COVID-19 vaccination, but also provides that there must be a process for considering and allowing **religious exemptions** from vaccination consistently with Title VII.

344.     The CMS Mandate gives rise to Plaintiffs' entitlement to equitable relief, including injunctive relief, to rectify the direct conflict between Rule 2.61 and the CMS Mandate by prohibiting enforcement of Rule 2.61 so as to preclude religious exemptions from COVID-19 vaccination for medical professions who provide in-person care.   *See* **Memorandum of Law in Support of Plaintiffs' Second Motion for a TRO/Preliminary Injunction.**

345.     The CMS Mandate preempts Rule 2.61 by reason of both conflict preemption and field preemption.

346.    Alternatively, the CMS Mandate's interpretation of Title VII is controlling under the doctrine of *Chevron* deference, and thus Title VII itself (under the CMS interpretation) preempts Rule 2.61. *See* Memorandum of Law.

347.    Under *Chevron* "Step One,"  the agency's view is clearly "based on a permissible construction of the statute," *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency*, 846 F.3d 392, 507 (2d Cir. 2017), in that it requires a process for religious exemptions from vaccination,  is supported by a reasoned explanation (i.e., "Federal law" requires it), and because it is "reasonable policy choice for the agency to make" (i.e., in order to comply with Federal law *and* to avoid the further hemorrhaging of healthcare staff—a problem the Mandate expressly sought to ameliorate).

348.    Accordingly, this Court should "accord deference to the agency's interpretation," *id*., and thus alternatively hold that under CMS's interpretation, Title VII itself newly preempts Rule 2.61.

## COUNT V

### VIOLATION OF THE FREE EXERCISE CLAUSE
### OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION
### (Denial of Unemployment Benefits)
### (42 U.S.C. § 1983)

349.  Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-294 above as if fully set forth herein.

350. The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

351. Plaintiffs have sincerely held religious beliefs that compel them to refuse vaccination with abortion-connected vaccines.

352.  Plaintiffs reallege the discussion of their sincerely held religious beliefs as set forth in all the preceding paragraphs.

353.  Defendants' gerrymandering of the rules governing unemployment benefits to deny benefits to those terminated for refusing COVID-19 vaccinations is in essence an impermissible denial because of one's religious beliefs because it prejudges that religious reasons for refusing vaccination can never amount to good cause for losing one's job.

354.  Denial of unemployment benefits on the basis that one's religious beliefs does not amount to "good cause" for refusing work triggers strict scrutiny and violates the Free Exercise Clause.  *Sherbert v. Verner*, 374 U.S. 398, 401, 403-04 (1963).

355.  There is no legitimate, rational, or compelling interest for Defendants' rule denying unemployment benefits to Plaintiffs, and Nurse N. in particular, for refusing to take the vaccinations due to their sincerely held religious beliefs.

356.  Defendants' rule denying unemployment benefits to Plaintiffs and others terminated for refusing to take the vaccinations due to their sincerely held religious beliefs has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to plaintiff Nurse N. from violation of her sincerely held religious beliefs and the occupational, professional, social and economic consequences pleaded above.

357.  Additionally, plaintiffs Nurse A., Dr. G., Dr. O., Nurse S. and Dr. P. face potential termination and consequent disqualification for unemployment benefits if they decline the now-demanded "booster" shot on grounds of religion.

358.  Said plaintiffs have no adequate remedy at law to prevent continuing violation of their sincerely held religious beliefs, and loss of income is not recoverable in this action due to Eleventh Amendment immunity.

359. Said plaintiffs will suffer irreparable harm in the absence of injunctive relief barring enforcement of the State's policy of unemployment benefits disqualification for those who decline vaccination on religious grounds.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for relief as follows as to all Counts:

(A). A statewide temporary restraining order and/or preliminary injunction, followed by a permanent injunction, restraining and enjoining the Defendants, their officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with Rule 2.61 such that:

(1) Rule 2.61 is suspended in operation to the extent that the defendants, via the Department of Health or otherwise, are barred by the CMS Mandate from enforcing any requirement that employers deny religious exemptions from COVID-19 vaccination, that they revoke any exemptions employers had already granted before Rule 2.61, or that they reject reinstatement with a religious exemption of any health care workers, including plaintiffs herein, who were fired because of Rule 2.61.

(2) Defendants, via the Department of Health or otherwise, are barred by the CMS Mandate from interfering in any way with the granting of religious exemptions, or reinstatement of fired employees, including laintiffs, who seek reinstatement with a religious exemption from COVID-19 going forward.

(3) Defendants, via the Department of Health or otherwise, are barred by the CMS Mandate from taking any action, disciplinary or otherwise, against the licensure,

certification, residency, admitting privileges or other professional status or qualification of any Plaintiffs on account of their seeking or having obtained a religious exemption from mandatory COVID-19 vaccination.

(B) A statewide temporary restraining order and/or preliminary injunction, followed by a permanent injunction, restraining and enjoining the Defendants, their officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the rule forbidding unemployment benefits as a result of being terminated for refusing COVID-19 vaccinations.

(C) Additional permanent injunctive relief restraining and enjoining Defendants, their officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with Rule 2.61 such that:

(1) Rule 2.61 is suspended in operation to the extent that Defendants, via the Department of Health or otherwise, are barred from enforcing any requirement that employers deny religious exemptions from COVID-19 vaccination or that they revoke any exemptions employers already granted before Rule 2.61 superseded the prior Health Order to exclude religious exemptions, including the exemptions already granted to certain Plaintiffs herein.

(2) Defendants, via the Department of Health or otherwise, are barred from interfering in any way with the granting of religious exemptions from COVID-19 vaccination going forward, or with the operation of exemptions already granted under the prior Health Order.

72

(3) Defendants, via the Department of Health or otherwise barred from taking any action, disciplinary or otherwise, against the licensure, certification, residency, admitting privileges or other professional status or qualification of any Plaintiffs on account of their seeking or having obtained a religious exemption from mandatory COVID-19 vaccination.

(D). A declaratory judgment declaring that Rule 2.61, both on its face and as applied by Defendants, is unconstitutional, unlawful, and unenforceable in that:

(1) Rule 2.61 violates the Free Exercise Clause of the First Amendment by depriving Plaintiffs and others similarly situated of the free exercise of religion under a measure that is neither neutral nor generally applicable but rather favors secular over religious reasons for exemption from COVID-19 vaccination and specifically targets for elimination the religious exemptions provided only days earlier under the superseded Health Order;

(2) Rule 2.61 violates the Supremacy Clause by purporting to strip Plaintiffs and others similarly situated of statutory and constitutional protections for religion and religious accommodation under federal law;

(3)  Rule 2.61 violates the Equal Protection Clause of the Fourteenth Amendment by purporting to strip Plaintiffs and others similarly situated of state and federal statutory protection from discrimination in the matter of vaccination solely because of the religious grounds on which Plaintiffs seek protection.

(E) A declaratory judgment declaring that denial of unemployment benefits to Plaintiffs and others terminated for refusing to take the vaccinations due to their sincerely held religious beliefs, is unconstitutional in that such a rule violates the Free Exercise.

(F). An award of reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988; and

(G). Such other and further relief as the Court deems equitable and just under the circumstances.

MICHAEL G. MCHALE, ESQ.
(Bar No. 701887)
Counsel
THOMAS MORE SOCIETY
10506 Burt Circle, Ste. 110
Omaha, NE 68114
Telephone: 402-501-8586
mmchale@thomasmoresociety.org
*Counsel for Plaintiffs*

Stephen M. Crampton
Senior Counsel
THOMAS MORE SOCIETY
309 W. Washington, S
Chicago, IL 60606
(312) 782-1680
scrampton@thomasmoresociety.org
*Counsel for Plaintiffs*

CHRISTOPHER A. FERRARA, ESQ.
(Bar No. 51198)
Special Counsel
THOMAS MORE SOCIETY
148-29 Cross Island Parkway
Whitestone, Queens, New York 11357
Telephone: (718) 357-1040
cferrara@thomasmoresociety.org
*Counsel for Plaintiffs*

Dated:  January 30, 2022