UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DR. A., NURSE A., DR. C.,
NURSE D., DR. F., DR. G.,
THERAPIST I., DR. J.,
NURSE J., DR. M.,
NURSE N., DR. O., DR. P.,
DR. S., NURSE S., and
PHYSICIAN LIAISON X.,

    Plaintiffs,

  -v-        1:21-CV-1009

KATHY HOCHUL, Governor of
the State of New York, in her
official capacity, MARY T.
BASSETT, Commissioner of the
New York State Department of
Health, in her official capacity,
and LETITIA JAMES, Attorney
General of the State of New York,
in her official capacity,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:       OF COUNSEL:

THOMAS MORE SOCIETY   CHRISTOPHER FERRARA, ESQ.
Attorneys for Plaintiffs
148-29 Cross Island Parkway
Whitestone, NY 11357

THOMAS MORE SOCIETY   MICHAEL McHALE, ESQ.
Attorneys for Plaintiffs
10506 Burt Circle, Suite 110
Omaha, NE 68114

| | |
|---|---|
| THOMAS MORE SOCIETY<br>Attorneys for Plaintiffs<br>P.O. Box 4506<br>Tupelo, MS 38803 | STEPHEN M. CRAMPTON, ESQ. |
| HON. LETITIA JAMES<br>New York State Attorney General<br>Attorneys for Defendants Hon. Kathy<br>   Hochul and Howard A. Zucker<br>The Capitol<br>Albany, NY 12224 | KASEY K. HILDONEN, ESQ.<br>RYAN W. HICKEY, ESQ.<br>Ass't Attorneys General |

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

On August 26, 2021, the New York State Department of Health adopted an emergency regulation that required most healthcare workers to be fully vaccinated against COVID-19. N.Y. COMP. CODES R. & REGS. tit. 10, § 2.61(c) (2021). New York was far from alone in its decision to implement novel regulations for certain sectors of its workforce. States all over the country implemented similar COVID-19 vaccination requirements. So too did the federal government. Challenges to these new mandates generated a tidal wave of litigation that quickly washed over the state and federal courts.

This lawsuit was on the leading edge of the wave. As relevant to this litigation, § 2.61 eliminated religious exemption language included in the

State's first iteration of this emergency regulation. The sixteen[1] plaintiffs who have filed this suit are medical professionals with a sincere religious objection to the existing vaccines. They are (or were) employed by hospitals, nursing homes, and other entities that are subject to § 2.61.

On September 13, 2021, plaintiffs filed this 42 U.S.C. § 1983 action against New York State Governor Kathy Hochul ("Hochul"), then-New York State Health Commissioner Howard A. Zucker ("Zucker"), and New York State Attorney General Letitia James ("James"). Plaintiffs' three-count complaint alleged § 2.61 violates their constitutional rights because it forbids employers from considering religious exemptions under processes guaranteed by federal law. Plaintiffs sought to enjoin defendants from enforcing § 2.61 "to the extent it categorically requires health care employers to deny or revoke religious exemptions from COVID-19 vaccination mandates."

On September 14, 2021, this Court issued a temporary restraining order ("TRO") to that effect, *Dr. A. v. Hochul*, 2021 WL 4189533 (N.D.N.Y.) and, after further briefing from the parties, converted the TRO into a preliminary injunction on October 12, 2021, *Dr. A. v. Hochul*, –F. Supp. 3d–, 2021 WL 4734404 (N.D.N.Y.). Because "the issues in dispute [were] of exceptional

---

[1] The action began with seventeen plaintiffs, but "Technologist P.," who moved to Florida after being terminated from her job in New York, has withdrawn as a plaintiff.

importance to the health and the religious freedoms of our citizens," the Court recognized that "an appeal may very well be appropriate." *Id.* at \*10.

Defendants agreed with the Court's assessment. They sought emergency relief in the Second Circuit, which heard oral argument and then entered an order vacating the preliminary injunction on October 29, 2021. *We The Patriots USA, Inc. v. Hochul*, 2021 WL 5103443 (2d Cir.). Thereafter, the panel issued an opinion that explained its rationale for granting vacatur. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir.) (per curiam), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021). Plaintiffs sought rehearing before the Second Circuit and then petitioned the Supreme Court for certiorari, which was eventually denied. 142 S. Ct. 552 (mem.) (Dec. 13, 2021).

On January 30, 2022, plaintiffs filed a first amended verified complaint as of right. The amended pleading names as defendants Hochul, James, and replaces Zucker with current New York State Health Commissioner Mary T. Bassett ("Bassett"), who assumed office after Zucker's resignation. The first amended complaint reasserts the three § 1983 official-capacity claims alleged in the initial pleading. However, the amended complaint also adds two new claims. In count four, plaintiffs allege § 2.61 is preempted by a COVID-19 vaccination regulation recently issued by the federal government. And in count five, plaintiffs allege defendants have unlawfully disqualified them from eligibility for State unemployment insurance benefits.

On January 30, 2022, plaintiffs filed a renewed motion for a TRO and a preliminary injunction based on these two new claims for relief. Plaintiffs sought to enjoin defendants from enforcing (a) § 2.61 "against their attempts to seek reinstatement to lost positions under the overriding religious exemption provisions of the [new federal regulation]"; and (b) "the Governor's unemployment benefits disqualification."

On January 31, 2022, the Court denied plaintiffs' request for a TRO but ordered briefing on their renewed request for a preliminary injunction. The motion is now fully briefed and will be considered on the basis of the submissions without oral argument.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To win relief, the movant must ordinarily demonstrate: (1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest. *Page v. Cuomo*, 478 F. Supp. 3d 355, 362–63 (N.D.N.Y. 2020).

However, in cases like this one, where the movants seek to enjoin government action taken in the public interest pursuant to a statutory or

regulatory scheme, the less rigorous "serious questions" component of this legal standard is unavailable. *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014). As the Second Circuit has explained, "[t]his exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Id.* (citation omitted).

Defendants' opposition memorandum invokes a second exception to the general rules governing preliminary injunctive relief. Defs.' Opp'n, Dkt. No. 47-41, 13–14.[2] As defendants correctly note, a heightened standard can also apply when the requested injunction (1) is "mandatory"; *i.e.*, it will alter the status quo by compelling some positive action; or (2) "will provide the movant with substantially all of the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Page*, 478 F. Supp. 3d at 363. When either condition is met, the movant must make a "clear" or "substantial" showing of a likelihood of success on the merits, and must also make a "strong showing" of irreparable harm. *Id.*

Upon review, however, it is not clear why this heightened requirement should apply to plaintiffs' renewed request for injunctive relief. As before,

---

[2] Pagination corresponds to CM/ECF.

any injunction entered against the enforcement of § 2.61 would be prohibitory in nature. *See, e.g.*, *Hund v. Cuomo*, 501 F. Supp. 3d 185, 207 (W.D.N.Y. 2020). And as before, any injunction could be undone if defendants prevail, either in an interlocutory appeal or at a trial on the merits. *Cf. We The Patriots, USA, Inc.*, 17 F.4th at 279 n.13.

Defendants have not offered any reason why this heightened standard has been triggered, either. *See generally* Defs.' Opp'n. Accordingly, the ordinary rules applicable to "prohibitory" injunctions will be applied. *See, e.g.*, *Hund*, 501 F. Supp. 3d at 207 (rejecting application of heightened standard where plaintiff sought to enjoin application of COVID-19 Executive Order).

## III. DISCUSSION[3]

Plaintiffs' renewed request for injunctive relief relies on the two claims that are newly asserted in the first amended complaint. In count four, plaintiffs allege § 2.61 is preempted by a separate COVID-19 vaccination requirement recently issued by the federal government. And in count five, plaintiffs allege defendants have disqualified them from eligibility for State unemployment benefits in violation of their rights under the Free Exercise Clause.

---

[3] The parties' familiarity with the basic background set forth in *Dr. A* is presumed and will not be repeated here except to the extent necessary to resolve the pending motion.

### A. <u>Likelihood of Success on the Merits</u>

To warrant preliminary injunctive relief, plaintiffs must show a likelihood of success on the merits of at least one of their constitutional claims. *See, e.g.*, *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018).

### 1. <u>Preemption & the Supremacy Clause</u>

The Supremacy Clause declares that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl 2.

Although it "is not the source of any federal rights and certainly does not create a cause of action," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (cleaned up), the Supreme Court has long recognized that "if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted," *id.* at 326 (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)).

"In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to

the achievement of federal objectives." *N.Y. SMS Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (cleaned up).

Plaintiffs' renewed motion for injunctive relief asserts "conflict" and "field" theories of preemption based on the impact of a federal COVID-19 regulation issued by the U.S. Department of Health and Human Services ("HHS") after the Second Circuit issued its opinion in *We The Patriots USA, Inc. v. Hochul*.

Effective on November 5, 2021, HHS issued an interim final rule that requires healthcare facilities that participate in the federal Medicare and Medicaid programs to ensure that their covered staff are fully vaccinated against COVID-19. 86 Fed. Reg. 61555–61627 (2021). The parties jointly refer to this interim final rule as the "CMS Mandate."

The CMS Mandate includes a section entitled "vaccine exemptions." 86 Fed. Reg. at 61572. This section of the CMS Mandate acknowledges there are "Federal laws, including the ADA, section 504 of the Rehabilitation Act, section 1557 of the ACA, and Title VII of the Civil Right Act, that prohibit discrimination based on race, color, national origin, religion, disability and/or sex, including pregnancy." *Id*.

The CMS Mandate recognizes that "in some circumstances, employers may be required by law to offer accommodations for some individual staff members." 86 Fed. Reg. at 61572. Accordingly, the CMS Mandate requires covered healthcare facilities to "establish and implement a process by which

- 9 -

staff may request an exemption from COVID-19 vaccination requirements based on an applicable Federal law." *Id.* at 61572.

The CMS Mandate states that it is intended to "preempt[ ] State and local laws to the extent the State and local laws conflict with this rule." 86 Fed. Reg. at 61613. However, this preemption provision is limited to "any State or local law providing for exemptions to the extent such law provides broader grounds for exemptions than provided for by Federal law." *Id.*

Plaintiffs argue that § 2.61 is preempted because it directly conflicts with the CMS Mandate. In plaintiffs' view, § 2.61 "prohibits exactly what the CMS Mandate requires"; *i.e.*, the CMS Mandate contemplates "exemptions" in appropriate cases even though the Second Circuit's construction of § 2.61 categorically forbids them. *We The Patriots USA, Inc.*, 17 F.4th at 292 ("Section 2.61 does not require employers to violated Title VII because, although it bars an employer from granting a religious *exemption* from the vaccination requirement, [but] it does not prevent employees from seeking a religious *accommodation . . . .*").

Upon review, plaintiffs have failed to establish that they are likely to succeed on the merits of this conflict preemption claim. As an initial matter, there is a general presumption against a finding of preemption under the Supremacy Clause when it comes to "state or local regulation of matters

- 10 -

related to health and safety." *Hillsborough Cnty., Fla. v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 715 (1985).

Plaintiffs emphasize that the State's implementation of § 2.61 instigated the healthcare staffing crisis that soon led Governor Hochul to declare a state of emergency. That may be true. But whether or not it represents sound public policy, § 2.61's vaccination requirement falls within the State's traditional regulatory role on matters of health and safety. *See* Lutterloh Decl., Dkt. No. 47. Under those circumstances, the Supreme Court has warned that preemption "is not to be lightly presumed." *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987).

To be sure, plaintiffs are correct that the CMS Mandate speaks in terms of both "accommodation" and "exemption." And plaintiffs are also correct to note that the recent Supreme Court opinion that rejected a pair of challenges to the validity of the CMS Mandate referred to "exemptions" rather than "accommodations." *Biden v. Missouri*, 142 S. Ct. 647 (2022).

But these features of the CMS Mandate and its accompanying litigation fall far short of establishing a likelihood of success on the merits of a conflict preemption claim. Notably, *Biden v. Missouri* involved a challenge to the HHS Secretary's authority to issue the CMS Mandate in the first instance. Although the Supreme Court's opinion made reference to the fact

that the CMS Mandate includes "exemption" language, the Court did not consider the question of religious accommodation at all.

Absent a direct ruling on that particular legal issue, the Second Circuit's pre-existing conclusion; *i.e.*, that § 2.61 "does not require employers to violate Title VII" despite forbidding "exemptions," must still control. *Cf. Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (enumerating circumstances in which intervening ruling might warrant departure from the law of the case).

Nor does the text of the CMS Mandate explicitly require the availability of exemptions for religious objectors. Instead, the CMS Mandate "recognize[s]" that "[c]ertain allergies, recognized medical conditions, or religious beliefs, observances, or practices <u>may</u> provide grounds for exemption" under "existing Federal law." Based on that recognition, the CMS Mandate instructs covered employers to "establish and implement a process by which staff may request an exemption based on an applicable Federal law." The Mandate further instructs covered employers to comply with all applicable anti-discrimination laws, including Title VII, in deciding whether they are "required by law to offer accommodations for some individual staff members."

Of course, Title VII requires covered employers to reasonably accommodate an employee's sincerely held religious beliefs. While an employer is not obligated to act in a manner that poses an "undue hardship" on its business, 42 U.S.C. § 2000e(j), state or local laws that "purport to

require or permit" the commission of an unlawful act are not a valid defense to a Title VII claim, § 2000e-7. Thus, it may well be that an employer's categorical refusal to consider an exemption (as opposed to some other form of accommodation) could be shown to violate a religious objector's federal rights.

However, the remedy for that harm would most likely be found in filing a properly exhausted Title VII claim. Nowhere does the text of the CMS Mandate express a requirement that an employee with a sincere religious objection be provided an exemption instead of some other accommodation, whether under Title VII or any other federal anti-discrimination law. To the contrary, the CMS Mandate repeatedly emphasizes that, whatever path the employer chooses to take with a particular employee's request, it must be sure to comply with applicable federal law, including Title VII.

Nor can plaintiffs establish a likelihood of success on the merits of their field preemption claim. The CMS Mandate has an explicit-but-limited preemption provision: "to the extent that State-run facilities that receive Medicare and Medicaid funding are prohibited by State or local law from imposing vaccine mandates on their employees, there is direct conflict between the provisions of this rule (requiring such mandates) and the State or local law (forbidding them)."

In other words, the CMS Mandate does not preempt the field of healthcare vaccination requirements. Instead, the CMS Mandate preempts only those

state or local laws that afford *broader* from the vaccine requirement than are permitted or required under federal law. The limited reach of this provision makes sense in light of the fact that the Medicaid and Medicare programs are administered by the state and federal governments through "a cooperative program of shared financial responsibility." *Rebaldo v. Cuomo*, 749 F.3d 133, 139 (2d Cir. 1984).

A much more robust showing would be required to permit the conclusion that the CMS Mandate was intended to preempt the field and displace state law in this area. *See, e.g.*, *N.Y. City Health & Hosps. Corp. v. WellCare of N.Y., Inc.*, 801 F. Supp. 2d 126, 141 (S.D.N.Y. 2011) ("Field preemption occurs where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law.").

In sum, plaintiffs have failed to establish a likelihood of success on the merits of either species of their preemption claim.[4] *N.Y. SMSA Ltd. P'Ship*, 612 F.3d at 104 (citation omitted) ("By their nature, field preemption and conflict preemption are usually found based on implied manifestations of congressional intent.").

---

[4] Plaintiffs also argue that the CMS Mandate's "interpretation" of Title VII should be afforded *Chevron* deference. Pls.' Mem. at 20. But that argument must be rejected because, as defendants point out, the CMS Mandate does not contain any such interpretation. Instead, it refers employers to the EEOC, the federal agency tasked with administering Title VII.

## 2. **The Free Exercise Clause**

Alternatively, plaintiffs argue that the State has imposed a rule forbidding the provision of unemployment insurance benefits to those terminated for refusing COVID-19 vaccination. Pls.' Mem. at 27. According to plaintiffs, this rule effectively singles out religious objectors for less favorable treatment in violation of the Free Exercise Clause. *Id*.

The Free Exercise Clause "protect[s] religious observers against unequal treatment" and "laws that impose special disabilities on the basis of religious status." *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2254 (2020) (citation omitted). And as plaintiffs note, the Supreme Court has on at least three separate occasions "invalidated state unemployment compensation rules that conditioned the availability of benefits upon an applicant's willingness to work under conditions forbidden by his religion." *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872. 877 (1990).

Even so, plaintiffs have not established a likelihood of success on the merits of this claim. As an initial matter, plaintiffs appear to have failed to name as a defendant the responsible State official for purposes of their request for equitable relief: state law designates the Commissioner of Labor as the agent responsible for administration of the State's unemployment insurance law. N.Y. LABOR LAW § 530.

That issue aside, plaintiffs have failed to establish that any of them have been or will be denied unemployment benefits on the basis of their sincerely held religious beliefs. For instance, the operative complaint alleges that:

> Nurse N. applied for unemployment benefits last October, but the Department of Labor advised her that the [Department of Education] is "examining" her claim and that the [Department of Education] will decide it—meaning that the claim will be denied under defendant Hochul's announced policy because Nurse N. was terminated for refusing vaccination.

Am. Compl. ¶ 230.

The first half of this paragraph might be a factual allegation, but the second half is speculation at this juncture. More importantly though, even assuming one or more plaintiffs were actually denied unemployment insurance based on their refusal to be vaccinated in accordance with § 2.61, the burden would then fall on plaintiffs to demonstrate that the State singled out *religious* objectors (as opposed to those who might have refused vaccination on other grounds) to satisfy *Smith*'s "valid and neutral law of general applicability" test. In short, plaintiffs have failed to establish a likelihood of success on the merits of this constitutional claim.

## B. <u>Irreparable Harm</u>

Plaintiffs have also failed to demonstrate irreparable harm in the wake of the Second Circuit's decision in this litigation.[5]  A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction."  *Page*, 478 F. Supp. 3d at 363.  "To satisfy the irreparable harm requirement, [the plaintiff] must demonstrate that absent a preliminary injunction he will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Id*.

Plaintiffs contend that they have shown irreparable harm because their "monetary losses on account of termination or suspension of admitting privileges cannot be remedied by money damages, as employers would arguably be protected by Rule 2.61 and the State is immune to damages under the Eleventh Amendment."

The problem with this argument is that the Second Circuit has already explicitly rejected it.  *We The Patriots USA, Inc.*, 17 F.4th at 295 ("Because Plaintiffs' economic harms under Title VII could be remedied with money damages, and reinstatement is a possible remedy as well, we conclude that Plaintiffs have failed to demonstrate that they will suffer irreparable harm

---

[5] Because plaintiffs have failed to show a likelihood of success on the merits, they cannot rely on the presumption of irreparable harm that would attach to a constitutional claim.  *We The Patriots USA, Inc.*, 17 F.4th at 294.

absent injunctive relief."). Although the Second Circuit did note that "this case raises difficult, apparently unusual questions" about the irreparable harm element, the panel ultimately declined to "place any weight" on plaintiffs' claimed harms for the purpose of awarding preliminary relief. *Id*. Accordingly, plaintiffs' motion for a preliminary injunction must be denied.

## IV. CONCLUSION

Plaintiffs have failed to establish that they are likely to succeed on the merits of their preemption claims because it is far from clear that the CMS Mandate conflicts with § 2.61. Plaintiffs have also failed to show irreparable harm in light of the Second Circuit's controlling guidance. In short, plaintiffs have not established that an employer cannot reasonably accommodate a religious objector in accordance with Title VII, the CMS Mandate, and § 2.61.

Therefore, it is

ORDERED that

Plaintiffs' motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.

Dated: February 23, 2022
       Utica, New York.

David N. Hurd
U.S. District Judge